IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610

**SUSAN DEHERRERA**, and **JOSE GUERRERO**,

    Plaintiffs,

v.

**HUERFANO COUNTY**, a municipality,
**JEFF BENSMAN**, in his individual capacity,
**TERRY SANDOVAL**, in his individual capacity,
**SAM JENSEN**, in his individual capacity,

    Defendants.

---

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

---

Plaintiffs Susan DeHerrera and Jose Guerrero (collectively, "Plaintiffs"), by counsel, respond to Defendants Huerfano County and Sam Jensen's (collectively, "Defendants") Motion to Dismiss Amended Complaint (the "Motion") as follows:

### I.    FACTUAL ALLEGATIONS

Plaintiffs reside in a recreational vehicle on an undeveloped parcel of property in Huerfano County (the "Property"). ECF 20 ¶ 13. On July 14, 2021, while licensed contractor retained by Plaintiffs were on the Property installing a well pump, Jeff Bensman, the Chief Code Enforcement Officer for the County Land Use Department ("LUD"), barreled onto the Property in an unmarked vehicle and parked at the site that the contractor was working. *Id.* at ¶ 18. If code enforcement staff's access to the property is denied by the property owner at any time, the County Code Enforcement Policy (the "Policy") directs that the field investigation must be conducted from public roads or other area where the officer's presence is lawful. ECF No 20-1 p. 11. However, if an officer is denied access to the property but believes that entry is necessary to conduct the

1

investigation, he must consult with the County Court Judge to obtain an administrative search warrant. *Id.*

When Plaintiffs asked Bensman why he was parked on the Property, Bensman told them that it was none of their business and hastily drove off. *Id.* at ¶¶ 19–20. Moments later, Bensman returned to the Property with LUD building inspector Terry Sandoval. *Id.* at ¶ 20. Bensman and Sandoval exited their vehicles and approached Plaintiffs at the wellsite; at which point, Plaintiffs noticed that Bensman was now sporting a firearm, handcuffs, and a bandolier of bullets. *Id.* at ¶¶20-21.

Ms. DeHerrera then told Bensman and Sandoval that they did not have a right to be on the Property and demanded they leave the Property. *Id.* at ¶23. Bensman and Sandoval ignored Ms. DeHerrera and continued to investigate the wellsite. *Id.* at ¶¶24–25. Mr. Guerrero then positioned himself between Ms. DeHerrera and Bensman to prevent any physical altercation. *Id.* at ¶26. Without warning, Bensman clenched Mr. Guerrero's arm from behind, spun him around, and drove his finger into Mr. Guerrero's chest, which ultimately caused injury to Mr. Guerrero. *Id.* at ¶¶27-28, 32. Bensman later went on to misrepresent himself as an "officer of the court" capable of jailing Plaintiffs, as Sandoval merely stood by and watched these events unfold. *Id.* at ¶¶30-31, 34–35. Despite multiple demands by Plaintiffs that they leave the Property, Bensman and Sandoval continued their investigation for nearly one hour before leaving. *Id.* at ¶35, 37, 43.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III.   ARGUMENT

The Complaint states plausible claims for relief under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourth Amendment Rights. It is reasonable to infer from the Complaint that Plaintiffs were deprived of their right to be free from unreasonable searches and seizures and excessive force, which were clearly established at the time of the challenged conduct, in violation of conduct violated § 1983.[1] Moreover, Jensen is not entitled to qualified immunity because the defense is not adequately presented. Therefore, because the Complaint states plausible claims for relief pursuant to § 1983, and because Jensen is not entitled to qualified immunity, the Court should deny the Motion.

**A.   The Complaint Plausibly Alleges an Unconstitutional Search in Violation of the Fourth Amendment.**

Plaintiffs' First Claim alleges that Bensman and Sandoval's conduct at the Property, without an administrative search warrant or probable cause, deprived Plaintiffs of their right to be free from unreasonable searches. It is plausible to infer from Bensman and Sandoval's conduct, violative of the Fourth Amendment, as well as the Policy, that Defendants degree of involvement in those constitutional violations are sufficient to impose liability under § 1983. Therefore, the Complaint plausibly alleges an unconstitutional search that violated Plaintiffs' Fourth Amendment rights.

---

[1] Plaintiffs concede that the Complaint does not state plausible claim for relief under C.R.S. § 13-21-131, as each of Plaintiffs' Claims are stated only as applying to 42 U.S.C. § 1983.

3

  **1. A Search of the Property Occurred.**

  The Fourth Amendment prohibits unreasonable searches by government agents. U.S. Const. Amend. IV. A "search" occurs when, in an attempt to find something or obtain information, a government agent intrudes a constitutionally protected area either by means of a physical trespass at common law, or an invasion of privacy, the expectation of which society deems reasonable. *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). The home is a constitutionally protected area, and it includes not only what lies inside of the home, but also its curtilage: the area immediately surrounding and intimately tied to the home. *Collins v. Virginia*, 138 S. Ct. 1663, 1674 (2018). When a government agent, without a warrant, physically intrudes on the curtilage of the home, and the circumstances objectively reveal a purpose to gather evidence, a presumptively unreasonable search has occurred. *Florida v. Jardines*, 569 U.S. 1, 8–10.

  A warrantless physical intrusion on the curtilage of the home is a search if the government agent's actions exceed the scope of conduct implicitly allowed by a licensee on the property of another at common law. *Id.* at 6. This implied license "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. Government agents are entitled to do the same without implicating the Fourth Amendment because it is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469 (2011).

  Here, a search occurred because Bensman and Sandoval's conduct exceeded the scope of conduct implicitly allowed by a licensee on the property of another at common law. Like the conduct typically permitted of a licensee, the Policy permits code enforcement officers to enter a property to conduct a field investigation but circumscribes that authority if the property owner denies those officers access to the property. Like a licensee who has not received an invitation to linger longer, the only conduct that Bensman and Sandoval were permitted to engage in after

4

Plaintiffs demanded they leave was to do just that—leave. Instead, Bensman and Sandoval "lingered longer" by ignoring Plaintiffs' demands, investigating the Property, and inciting physical violence.

Defendants argue that the challenged conduct was not a search under the Fourth Amendment by virtue of the plain-view doctrine. Under the plain-view doctrine, a valid warrantless search or seizure requires that the officer "have a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136–37 (1990)). The textbook situation when this exception applies is when a police officer, in the course of going door-to-door in a neighborhood to solicit information concerning an investigation, observes illegal contraband inside the home from a window adjacent to the door. Because the officer's conduct is within the scope of a licensee on the property of another at common law, his physical possession at the door of the home is not a physical trespass and thus, not a search.

Defendants' argument presupposes a crucial element of this doctrine; namely, that the government agent's presence must be lawful. Here, at the time of the challenged conduct, Bensman and Sandoval did not have a lawful right of access to the Property. Although the Policy provides that "Code Enforcement staff may enter upon private property to conduct a field investigation without authority to enter," it also provides that if the property owner refuses access at any time, the investigation cannot be conducted from the property without a warrant. ECF 20-1, p.10-11. Plaintiffs demanded that Bensman and Sandoval leave the Property quickly after they entered, thereby making their subsequent investigation a search. ECF 20, Amend. Compl. ¶¶21–22.

Therefore, because Bensman and Sandoval's actions exceeded the scope of permissible conduct of a licensee on the property of another at common law, on the curtilage of the Property at the wellsite, Bensman and Sandoval's conduct amounted to warrantless and presumptively unreasonable search.

5

### 2. The Search was Unreasonable Because No Exception to the Warrant Requirement Applies.

The Fourth Amendment generally requires warrants. *See* U.S. Const. Amend. IV. To overcome the presumption of an unreasonable search, the government bears the burden of proving that the search was nonetheless reasonable, which occurs "*only* if it falls within a specific exception to the warrant requirement." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (emphasis added). In their Motion, Defendants do not allege any specific exception. Instead, Defendants argue that the search was reasonable because of the minimally intrusive nature of the challenged conduct, which is insufficient to meet their burden.

These judicially crafted exceptions are categorical; they are determined by balancing the individual's privacy and liberty interests against the government's law enforcement and safety interests—and ruling in favor of the weightier of the two. *Terry v. Ohio*, 392 U.S. 1, 8–10, 27 (1968). These exceptions predominantly apply—not to searches of the home or its curtilage—but searches of persons and automobiles; sometimes, on less than the probable cause. *E.g.*, *Delaware v. Prouse*, 440 U.S. 648, 655 (1979).

Contrary to what Defendants' argument implies, there is no "*de minimis*" or minimal intrusion exception that renders the search in this case reasonable. To the extent that Defendants contend that *Artes-Roy v. City of Aspen*, 31 F.3d 958 (10th Cir. 1994) stands for that proposition, it is inconsistent with the Supreme Court's modern jurisprudence on the matter. *Carpenter*, 138 S. Ct. at 2221 (presumptively unreasonable search is reasonable "*only* if it falls within a specific exception to the warrant requirement."). Rather, the minimally intrusive nature of a search is merely a factor that supports finding the government's interest is weightier than a person's liberty interest when the Supreme Court recognizes a categorical exception to the warrantless searches of persons and automobiles; the underlying rationale of which is inapposite to the home. *See Collins*, 138 S. Ct. at 1672 (Supreme Court is hesitant to recognize a new exception if "it is effectuated by

6

unlawful trespass."). And thus, because the circumstances do not imitate any other recognized exception to warrantless searches of the home or its curtilage, the presumptively unreasonable search is therefore, unreasonable.

**B.  The Complaint Plausibly Alleges *Monell* and Supervisor Liability Theories Under § 1983.**

Plaintiffs' Second Claim alleges that Defendants' failure to train, supervise, and discipline its employees caused the deprivation of Plaintiffs' Fourth Amendment rights. To survive a motion to dismiss a claim for *Monell* liability under § 1983 for the actions of a municipal employee, the complaint must demonstrate that it is plausible: "(1) that a municipal employee committed a constitutional violation," *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); (2) that a municipal policy or custom was the moving force behind the constitutional violation," *id.*; and (3) that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury," *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).[2] As demonstrated throughout this Motion, the first element is met because the Complaint plausibly alleges that Bensman and Sandoval's challenged conduct violated Plaintiffs' Fourth Amendment Rights.

A municipal "policy" or "custom" can be proven through a formal regulation or policy statement, or a failure to adequately train or supervise employees. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).  Here, the Complaint plausibly alleges that the Policy was a moving force behind the violation of Plaintiffs' Fourth Amendment rights. At the time of the challenged conduct, the Policy explicitly advised that code enforcement officers were free to enter upon private property to conduct a field investigation, without consent or a warrant. By enacting a

---

[2] Plaintiffs incorrectly named "Huerfano County" as the proper Defendant in this matter. *See* C.R.S. § 30-11-103, 105. This is a technical defect that may be cured by amending the operative complaint and substituting the proper defendant in this action. *Est. of Lillis v. Correct Care Sols., LLC*, No. 16-cv-03038-KLM, 2018 WL 10954152, at *7 (D. Colo. Oct. 22, 2018). Should Plaintiffs Claims against the County survive the Motion, Plaintiffs will move the Court for leave to name the proper entity.

standard for entry on to private property that is in clear contradiction with the heightened protections and safeguards the Fourth Amendment affords to the home and curtilage, it is plausible that the sanctioning of such conduct would inevitably lead to Fourth Amendment violations. This is further shown by the fact that the Policy does not make consent to investigate the property without a search warrant a mandatory requirement, but instead a discretionary one.

The Complaint also plausibly alleges that the custom of code enforcement officers unlawfully investigating private property was due to a failure to adequately train and supervise employees. Throughout the duration of his tenure, Bensman "never asked for permission" to access or stay on the Property, reasoning that it was unnecessary based on his training under the Policy and by LUD's former counsel. Compl. ECF 18-1 ¶42.

It is also plausible that Defendants failure to properly train and supervise code enforcement officers' unauthorized use of force in the scope of employment was a custom that caused the deprivation of Plaintiffs' Fourth Amendment Rights. Throughout his employment, Bensman carried a weapon and projectiles capable of inflicting serious bodily injury and deadly force, despite those items being not issued by LUD nor authorized by the Policy. Based on Bensman's high-ranking position, it is plausible that the County and Jensen knew that Bensman was carrying these instruments capable of violating constitutional rights. The County and Jensen's knowledge is further supported by Bensman's reference to the carrying of a firearm, handcuffs, and bullets as something that "we" found necessary in the scope of his employment. ECF 20 ¶57.

With knowledge that Bensman unlawfully investigated private properties and carried instruments capable of physical restraint and force in violation of the Fourth Amendment, the County and Jensen deliberately chose to disregard the risk of this harm. At no point during the tenure of Bensman's employment did Jensen or the County properly train, discipline, or supervise Bensman to curb this conduct.

Therefore, the Complaint plausibly alleges that an official policy was the moving force for the deprivation of Plaintiffs' Fourth Amendment rights; of which the risk of harm was known by the County and Jensen was substantially certain to occur but consciously disregarded.

C. **The Complaint Plausibly Alleges a § 1983 Claim Against Jensen for Failure to Intervene.**

Plaintiffs' Third Claim as to Jensen alleges that, with knowledge of the substantial likelihood that Bensman's use of a gun, bullets, and handcuffs in the scope of his employment would result in the use of excessive force, Jensen failed to intervene to and reduce the likelihood of those Fourth Amendment violations. Generally, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). Jensen argues that here, a failure-to-intervene claim is not plausible because the Complaint does not assert an individual claim for excessive force. No authority cited by Jensen holds such, as all that is required to survive a Rule 12(b)(6) motion is that it is plausible from the complaint that excessive force was used. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1155–56 (10th Cir. 2008). Jensen next argues that even if the Complaint states a plausible excessive force claim, it does not state a plausible failure-to-intervene claim because it does not allege that Jensen had any opportunity to prevent the harm alleged. Here, the Complaint contains sufficient allegations showing that it is plausible excessive force was used, and that it is plausible that Jensen failed to intervene in violation of §1983.

1. **The Complaint Plausibly Alleges that Bensman Used Excessive Force.**

In the context of § 1983 claims, allegations of excessive force implicate the Fourth right against unreasonable seizures. *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020). A "seizure" occurs in one of two ways: (1) when a government actor, by intentional means of physical force or show of authority, terminates or restrains a person's freedom of movement, and the person actually submits; or (2) in the absence of an unambiguous intent to restrain or terminate the

9

person's movement, or if submission takes the form of passive acquiescence, when the police's conduct communicates to a reasonable person that he is not at liberty to ignore the police presence or otherwise terminate the encounter. *Brendlin v. California,* 551 U.S. 249, 254–55 (2007).

Here, the Complaint plausibly alleges that Bensman seized Mr. Guerrero. The actions taken by Bensman in his capacity as a code enforcement officer, like a law enforcement officer, is "clearly state action." *United States v. Price*, 383 U.S. 787, 799 (1966). As Bensman ignored Plaintiffs' multiple requests to leave the Property, and as Mr. Guerrero tried to prevent a physical altercation, Bensman grabbed Mr. Guerrero's arm, forcefully spun his body around, and poked Mr. Guerrero's chest, ultimately causing a hematoma to form in Mr. Guerrero's arm. ECF 20-3.

The physical force applied by Bensman to Mr. Guerrero, although temporary, was a restraint on Mr. Guerrero's freedom of movement. Mr. Guerrero's submission to this restraint on his freedom is evidenced by virtue of the sheer force Bensman applied to Mr. Guerrero's arm, combined with the thrust applied to spin him around. Bensman's adamance to remain on the Property and investigate, despite Plaintiffs' repeated demands to leave, his misrepresentation as a officer of the court, and his threat to take Mr. Guerrero to jail, would also communicate to reasonable person that they were not at liberty to terminate the encounter. Therefore, Bensman's conduct constituted a Fourth Amendment seizure, which lacked reasonable suspicion or probable cause, thereby making the seizure unreasonable.

### 2. Bensman Used Excessive Force When He Unreasonably Seized Mr. Guerrero

In unreasonably seizing Mr. Guerrero, Bensman used excessive force because his conduct was not objectively reasonable. Whether a seizure was accomplished by excessive force hinges on whether the degree of force was "objectively reasonable." *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). To determine whether the degree of force used was objectively reasonable, a court considers and balances the following factors: "(1) the severity of the crime at issue; (2)

whether the individual poses an immediate threat to the safety of the officers or others; and (3) whether the individual is actively resisting arrest or attempting to evade arrest by flight." *Donahue*, 948 F.3d at 1196.

The first factor considers whether the use of force is commensurate with the suspected offense. *Id.* Here, although Bensman identified himself as an "officer of the court" and threatened to take Mr. Guerrero to jail, he at no point identified any crime he believed Plaintiffs to be committing; instead, he simply made vague reference to a complaint he was investigating. ECF 18-1 ¶¶34, 36, 39. No degree of land use violation would justify Bensman accosting Mr. Guerrero in the manner he did; particularly when Mr. Guerrero was simply trying to prevent a physical altercation.

The second factor considers whether any heightened use of force is justified based on the seized person being armed, repeatedly ignoring commands, or making hostile motions towards the officer or others. *Id.* Here, Mr. Guerrero was not armed, did not ignore commands, and did not make hostile motions toward Bensman. As to the third factor, Mr. Guerrero was not actively resisting arrest or attempting to evade arrest by flight.

Therefore, because all three factors weigh in support of finding that the degree of force used by Bensman was not objectively reasonable, Bensman's unreasonable seizure of Mr. Guerrero was accomplished through use of excessive force.

### 3.     Jensen Failed to Intervene

The Tenth Circuit has acknowledged that supervisors may be liable for a subordinate's constitutional deprivations if there is an affirmative link between the supervisor's actions and the alleged constitutional deprivations. *Fogarty*, 523 F.3d at 1164. On a Rule 12(b)(6) motion, a showing of an affirmative link is satisfied if it the complaint plausibly alleges that the supervisor

11

set in motion a series of acts by others that the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury. *See id.*

Here, viewing the factual allegations in a light most favorable to Plaintiffs, Jensen knew that Bensman routinely openly carried a firearm, bullets, and handcuffs in the scope of his employment. ECF 20 ¶56. Because Bensman was not authorized to use any level of force in the scope of his employment, Jensen knew or reasonably should have known that permitting Bensman to routinely tout a gun and bandolier of bullets (which can be used to effect deadly force) and handcuffs (which can be used to restrain a person's freedom of movement) as part of his uniform would result in Bensman utilizing those instruments to violate others' Fourth Amendment rights through unlawful seizures and use of excessive force. Therefore, the Complaint states a plausible claim against Jensen for failure-to-intervene based on Bensman's use of excessive force.

### D. Jensen is Not Entitled to Qualified Immunity Because the Defense Has Not Been Adequately Presented

Although Jensen purports to assert qualified immunity as a defense to Plaintiffs' First and Third Claims for Relief, Jensen is not entitled to qualified immunity because the defense has not been adequately presented. When qualified immunity is invoked in a Rule 12(b)(6) Motion, the burden shifts to Plaintiff burden arises to show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the challenged conduct. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). However, that burden arises only after the defense has been "adequately presented." *Halik v. Darbyshire*, No. 20- cv-01643-PAB-KMT, 2021 WL 4305011, at *4–5 (D. Colo. Sept. 22, 2021); *see Tillmon v. Douglas County*, 817 F.App'x 586, 589 (10th Cir. 2020) (unpublished).

Here, Defendants recite the elements for qualified immunity and argue that the Complaint does not plausibly allege a Fourth Amendment violation under the First Claim and does not

12

plausibly allege a failure to intervene under the Third Claim because the Complaint lacks an enumerated claim for excessive force. ECF 21 p. 8–9. These arguments simply relate to the plausibility of the First and Third Claims, and not whether the Complaint shows that Defendants violated a constitutional right that was clearly established at the time of the challenged conduct. Defendants' recitation of the elements of qualified immunity, without *any* supporting argument, does not adequately present the defense. *Ward v. Pueblo County*, No. 1:23-cv-00473-CNS-MDB (D. Colo. July 25, 2023) (attached as Exhibit 1). Moreover, the fact that an officer who fails to intervene to prevent the use of excessive force may be liable under § 1983 is clearly established law. Therefore, Defendant is not entitled to qualified immunity because the defense has not been adequately presented and the unconstitutionality of the conduct was clearly established.

## IV.   CONCLUSION

Therefore, Plaintiffs respectfully request that the Court deny the Motion.

Dated: September 21, 2023

>	*/s/ Tanner W. Havens*
> Tanner W. Havens, Atty. Reg. #56413
> Ethan M. Sumida, Atty. Reg. #56515
> RELEVANT LAW – Colorado Springs
> 1311 Interquest Pkwy. Suite 110
> Colorado Springs, CO 80921
> Phone: (719) 960-4396
> esumida@relevantlaw.com
> *Attorney for Plaintiffs*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Leslie L. Schluter
Sophia A. N. Fernald
DANGER SCHLUTER WRBER LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
lschluter@lawincolorado.com
sfernald@lawincolorado.com
*Attorneys for Defendants Huerfano County and Sam Jensen*

William T. O'Connell III, Esq.
Wells, Anderson & Race, LLC
woconnell@warllc.com
*Attorneys for Terry Sandoval*

Matthew J. Hegarty, Esq.
Hall & Evans, LLC
hegartym@hallevans.com
*Attorneys for Jeff Bensman*

                                                */s/ Katelyn Van Gilder*
                                                Paralegal