IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00473-CNS-MDB

ESTATE OF RICHARD WARD, by and through its personal representative Kristy Ward Stamp
and
KRISTY WARD STAMP,

       Plaintiffs,

v.

PUEBLO COUNTY, COLORADO;
DEPUTY CHARLES MCWHORTER, in his individual and official capacity;
DEPUTY CASSANDRA GONZALES, in her individual and official capacity;
DEPUTY JACOB MAHAN, in his individual and official capacity;
DEPUTY CHRISTINE SPENCER, in her individual and official capacity;
DEPUTY NICOLAS BERUMEN, in his individual and official capacity;
DEPUTY ROBERT QUINTANA, in his individual and official capacity; and
SERGEANT JOSH RAGAN, in his individual and official capacity,

       Defendants.

---

## ORDER

---

    This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 and Fed. R. Civ. P. 8 (ECF No. 17). For the following reasons, the Court DENIES IN PART and GRANTS IN PART the motion.



Plaintiff's Exhibit 1_001

## I. FACTS[1]

On February 22, 2022, Richard Ward accompanied his mother and her boyfriend to pick up Mr. Ward's younger brother from school (ECF No. 1, ¶ 25). While the three of them were parked and waiting in the school's car line, Mr. Ward stepped out of the vehicle to walk around the area (*id.*, ¶ 27). As he was returning from his walk, Mr. Ward mistook another similar-looking white SUV for his mother's white SUV; Mr. Ward opened the door to that vehicle, briefly entered it and, upon realizing his error, immediately apologized to the driver and left (*id.*, ¶ 28). Mr. Ward then found and re-entered his mother's vehicle, and he related the surprising interaction he had just had to his mother and her boyfriend (*id.*, ¶ 29).

Minutes later, Deputy Charles McWhorter (Defendant McWhorter) of the Pueblo County Sheriff's Office (PCSO) approached the mother's vehicle to contact Mr. Ward, who was sitting in the back seat (ECF No. 1, ¶ 30). Defendant McWhorter seized Mr. Ward's elbow within seconds of this initial contact; Mr. Ward asked Defendant McWhorter to let go of him and explained that he was anxious around law enforcement because he had previously experienced excessive force at the hands of police (*id.*, ¶¶ 31–32). Defendant McWhorter informed Mr. Ward that he had received a report that Mr. Ward had been attempting to open nearby car doors (*id.*, ¶ 33). Mr. Ward explained his earlier mistaken encounter and calmly answered the deputy's questions (*id.*, ¶¶ 34–36). During this conversation, PCSO Deputy Cassandra Gonzales (Defendant Gonzales) arrived on scene and stood near Defendant McWhorter where she could observe (*id.*, ¶ 37).

---

[1] The following facts are drawn from Plaintiffs' Complaint and Jury Demand (ECF No. 1). For purposes of this motion, the Court accepts as true, and views in the light most favorable to the plaintiffs, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Plaintiff's Exhibit 1_002

Defendant McWhorter asked Mr. Ward if he had any identification with him; Mr. Ward responded that he might and began to dig through his pockets in an apparent effort to find an ID card (ECF No. 1, ¶ 38). Defendant McWhorter also asked Mr. Ward if he had any weapons; Mr. Ward responded that he did not think so, but that he might have a pocketknife (*id.*, ¶ 39). Defendant McWhorter instructed Mr. Ward not to pull the pocketknife out if he had it (*id.*, ¶ 40). In fact, Mr. Ward had neither a pocketknife nor any other weapon, but produced only lighters from his pockets and showed them to Defendant McWhorter (*id.*, ¶ 41). At this point, Defendant McWhorter unlocked his safety holster and pulled his service pistol up and out of the holster's locking mechanism (*id.*, ¶ 42).

As Mr. Ward continued to search for his ID card, he came upon what may have been a prescribed anti-anxiety tablet in one of his pockets and put it in his mouth (ECF No. 1, ¶ 44). Defendant McWhorter saw Mr. Ward take the pill, asked "What did you just stick in your mouth?" and, before Mr. Ward could respond, Defendant McWhorter seized Mr. Ward by his right arm and collar and dragged him from his mother's vehicle (*id.*, ¶ 45). Mr. Ward offered no physical resistance to Defendant McWhorter and repeatedly stated that he had just taken a pill (*id.*, ¶ 46). At the same moment, Defendant Gonzales seized Mr. Ward's left shoulder to assist Defendant McWhorter in pulling Mr. Ward out of the vehicle (*id.*, ¶ 50). Mr. Ward landed on the ground in a sitting position between the two deputies, and he made no attempt to rise from the ground, to strike the deputies, or to flee from them (*id.*, ¶¶ 52–53). Defendants McWhorter and Gonzales then took hold of Mr. Ward's collar and threw him to the ground face-first (*id.*, ¶ 55). Down on the ground, Defendant Gonzales applied pain compliance techniques to Mr. Ward's legs, while Defendant McWhorter engaged Mr. Ward's arms and upper torso, rolling him over so that Defendant

3

Plaintiff's Exhibit 1_003

McWhorter's body was partially on top of Mr. Ward's torso (*id.*, ¶ 58). Defendant McWhorter then drew his service pistol from its holster and fired three rounds into Mr. Ward's chest at point-blank range (*id.*, ¶ 60). Approximately twenty seconds had elapsed from the time that Defendants McWhorter and Gonzales removed Mr. Ward from the vehicle to the time that Defendant McWhorter shot Mr. Ward (*id.*, ¶ 61). And the entire sequence—from the time Defendant McWhorter arrived on scene to the time he shot Mr. Ward—lasted approximately two minutes and ten seconds (*id.*, ¶ 62).

In the immediate aftermath of the shooting, Mr. Ward was still alive and moving (ECF No. 1, ¶ 69). Despite this, neither deputy attempted to render any emergency medical aid to Mr. Ward—instead, Defendant McWhorter walked away from the scene, while Defendant Gonzales stood over Mr. Ward, offering no assistance of any kind (*id.*, ¶¶ 70–71). Approximately two minutes after Defendant McWhorter shot Mr. Ward, additional law enforcement arrived on scene (*id.*, ¶ 72). PCSO Deputy Jacob Mahan (Defendant Mahan) approached Defendant Gonzales and asked if Mr. Ward was still breathing; Defendant Gonzales responded in the negative (*id.*). No law enforcement officers on scene ever attempted to examine Mr. Ward, assess his physical condition, or provide medical assistance (*see id.*, ¶¶ 73–74, 76). Shortly thereafter, despite the efforts of emergency medical personnel to render aid, Mr. Ward was ultimately pronounced dead at the scene of the shooting (*id.*, ¶¶ 77–78).

Meanwhile, in the seconds after Defendant McWhorter shot Mr. Ward, his mother begged the deputies to tell her whether her son had just been shot, but neither responded, and Defendant McWhorter ordered the mother and her boyfriend to remain in the vehicle (ECF No. 1, ¶¶ 79–80). Similarly, when Defendant Mahan arrived on scene, the mother and her boyfriend asked whether

4

Plaintiff's Exhibit 1_004

Mr. Ward had been shot and whether he was still alive; Defendant Mahan did not respond but instead ordered the two of them to keep their hands in the air (*id.*, ¶¶ 83–85). Neither the mother nor her boyfriend were free to leave (*id.*, ¶ 88).

At some point later, Defendant Mahan handcuffed the boyfriend, searched him, seized his belongings, and placed him in a locked police vehicle (ECF No. 1, ¶ 89). Likewise, at Defendant Mahan's direction, PCSO Deputy Nicolas Berumen (Defendant Berumen) handcuffed the mother, and PCSO Deputy Christine Spencer (Defendant Spencer) searched her, seized her belongings, and placed her in a locked police vehicle (*id.*, ¶ 90). Then, at the direction of PCSO Sergeant Josh Ragan (Defendant Ragan), Defendant Berumen and PCSO Deputy Robert Quintana (Defendant Quintana) drove the boyfriend and the mother, respectively, to a PCSO facility, where they were detained and interrogated for approximately two hours before they were released (*id.*, ¶ 91). Although Mr. Ward was pronounced dead at the scene, PCSO deputies refused to inform the mother whether her son had survived the shooting until after the interrogation had concluded (*id.*, ¶ 94). Neither the mother nor her boyfriend were ever charged with any crime in connection with the events of February 22, 2022 (*id.*, ¶ 93). And while PCSO had seized a variety of personal items from the mother that day—including her vehicle, cell phone, and purse—they failed to return her property for months (*id.*, ¶ 96).

Within days of Mr. Ward's death, PCSO equipped Defendant McWhorter with a new service firearm and returned him to duty (ECF No. 1, ¶ 97). Ultimately, after investigating the events of February 22, 2022, PCSO determined that the conduct of Defendants McWhorter and Gonzales comported with PCSO-approved training, policies, customs, and practices (*id.*, ¶ 101). Pueblo County did not discipline or terminate Defendant McWhorter or Defendant Gonzales, and

5

Plaintiff's Exhibit 1_005

PCSO provided no additional training to any of the involved PCSO deputies related to Mr. Ward's killing (*id.*, ¶ 98).

Thereafter, Plaintiffs initiated this action, alleging claims under both the federal and Colorado constitutions for excessive force, battery causing wrongful death, unlawful arrest, unlawful seizure of property, and retaliation (*see* ECF No. 1, ¶¶ 114–247).

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

Plaintiff's Exhibit 1_006

## III. ANALYSIS

Broadly speaking, Defendants move to dismiss the complaint on three grounds: (1) Pueblo County is not a proper party and, even if the municipal entity were appropriately named, the complaint fails to state a plausible claim for *Monell* liability; (2) the complaint does not comport with the requirements of due process because it fails to provide reasonable notice as to which defendant committed what act against whom; and (3) the Individual Defendants are entitled to qualified immunity. The Court considers and addresses each of these arguments in turn.

### A. *Monell* Liability for Pueblo County

Defendants first move to dismiss the claims against Pueblo County on the grounds that it is not a proper party to this action and that, even if the relevant municipal entity is properly named, Plaintiffs have failed to state plausible claims of *Monell* liability (ECF No. 17 at 5–10). The Court considers these arguments in turn.

#### 1. *"Pueblo County, Colorado" as a named defendant*

Defendants first argue that Plaintiffs' claims against Pueblo County may not proceed because the municipal entity has not been appropriately named in this action (*see* ECF No. 17 at 5–7). As an initial matter, the Court agrees that Pueblo County is not a proper defendant. "In federal court, a municipal entity's '[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located.'" *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty., Colo.*, 426 F.Supp.3d 802, 809 (D. Colo. 2019) (quoting Fed. R. Civ. P. 17(b)(3)). Colorado law, in turn, expressly provides that a county "shall" sue or be sued in the name of that county's board of county commissioners. *See* C.R.S. § 30-11-105. This provision is jurisdictional in that the statute "provides the exclusive method by which jurisdiction over a county can be obtained." *Gonzales v.*

7

Plaintiff's Exhibit 1_007

*Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (quoting *Calahan v. Jefferson Cnty.*, 429 P.2d

301, 302 (Colo. 1967)). Indeed, any "'action attempted to be brought under any other designation

is a nullity, and no valid judgment can enter in such a case.'" *Id.* (quoting *Calahan*, 429 P.2d at

302).

Given this clear authority, Plaintiffs' action cannot lie against Pueblo County as currently

named. Nevertheless, this is a "technical defect" that may be cured by amending the operative

complaint and substituting the proper defendant in this action. *Est. of Lillis v. Correct Care Sols.,*

*LLC*, No. 16-cv-03038-KLM, 2018 WL 10954152, at *7 (D. Colo. Oct. 22, 2018). Accordingly,

the Court GRANTS Defendants' motion to dismiss the claims against Pueblo County, Colorado

with prejudice, but also grants Plaintiffs leave to amend the complaint to substitute the Board of

County Commissioners of Pueblo County or other appropriate defendant. *See Gonzales*, 403 F.3d

at 1182 n.7 (citing C.R.S. § 30-11-105).[2]

---

[2] Both parties appear to suggest that the relevant sheriff could be a proper party in this suit (*see* ECF No. 1 at 1 n.1;
ECF No. 17 at 7–8). This calls to mind the question earlier posed in *Chavez*—"Who is the proper defendant to a § 1983
lawsuit alleging an injury caused by a policy or practice of the county sheriff? The sheriff's office, or the county itself
(through its board of commissioners)?" *See* 426 F.Supp.3d at 808. And in answering this question, courts in this
District have split over whether a county sheriff's office is suable separately from a county's board of commissioners.
*See Watkins v. Douglas Cnty.*, No. 20-cv-01172-RM-MEH, 2020 WL 8408482, at *14–15 (D. Colo. Sept. 15, 2020),
*report and recommendation adopted*, 2021 WL 100117 (D. Colo. Jan. 12, 2021) (collecting cases and explaining split
in authority). The *Chavez* court noted that, at the motion to dismiss stage, "when a *Monell* claim is based on a sheriff-
made policy, any distinction between suing the sheriff's office versus suing the county becomes purely theoretical."
*See* 426 F. Supp. 3d at 813. The Court agrees with *Chavez*'s reasoning, given particularly that both parties indicate
the sheriff could be a party to this suit. Accordingly, at this time the Court need not determine as a matter of law
whether the sheriff is separately suable from the county, and concludes that it is appropriate for Plaintiffs to name both
the board of county commissioners and relevant sheriff in this action. If discovery later reveals that only the sheriff
was involved in promulgating the policies at issue in this case, the Court will revisit the question of which defendants
should be properly named or dismissed. The Court also notes that Plaintiffs have expressed willingness to substitute
the "Board of County Commissioners of Pueblo County" and/or "Sheriff David J. Lucero in his official capacity" as
parties (ECF No. 1 at 1 n.1).

Plaintiff's Exhibit 1_008

### 2. Municipal liability under Monell

Next, Defendants argue that even if the appropriate municipal entity had been named, Plaintiffs have failed to state plausible claims of *Monell* liability against it because they have not identified any official "policy" or "custom" that caused the injuries alleged in the complaint (ECF No. 17 at 8–10). Viewing the complaint's allegations in the light most favorable to Plaintiffs, the Court agrees as to Plaintiffs' "ratification" theory, but it disagrees as to Plaintiff's "failure to train" theory.[3]

In order to state a claim for *Monell* liability under § 1983 for the actions of a municipal employee, a plaintiff must allege sufficient facts to demonstrate that it is plausible: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional violation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). Taken together, then, in order to state a *Monell* claim under

---

[3] The Court's analysis proceeds under the assumption that "Pueblo County, Colorado" will be substituted with the board of county commissioners and/or relevant sheriff.

Plaintiff's Exhibit 1_009

§ 1983, the plaintiff must allege "(1) official policy or custom, (2) causation, and (3) state of mind."
*Schneider*, 717 F.3d at 769.

A municipal "policy" or "custom" may take one of the following forms:

- A formal regulation or policy statement;

- An informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;

- The decisions of employees with final policymaking authority;

- The ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or

- The failure to adequately train or supervise employees, as long as the failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotations and alterations omitted).

In view of these standards, and as mentioned above, Plaintiffs appear to proceed on two separate theories of *Monell* liability—ratification and failure to train. The Court addresses each of these theories below.

### a. Ratification

Plaintiffs argue that Pueblo County's ratification of the Individual Defendants' conduct—i.e., by taking no disciplinary actions against the Individual Defendants after Mr. Ward's death—demonstrates that their conduct was in line with an official policy or custom (ECF No. 28 at 13–14; *see* ECF No. 1, ¶¶ 98–103 (alleging that Pueblo County reviewed the incident and did not discipline the Individual Defendants for their actions)). In support, Plaintiffs rely upon multiple cases in this District indicating that a policy or custom may be inferred if a policymaker takes no

10

Plaintiff's Exhibit 1_010

steps to discipline, retrain, or terminate its subordinates after they commit constitutional violations while on duty. *See Ortega v. Denver*, 944 F.Supp.2d 1033, 1039 (D. Colo. 2013); *Moore v. Miller*, No. 10-cv-00651-JLK, 2014 WL 2207346, at *8 (D. Colo. May 28, 2014).

For two reasons, however, the Court finds that Plaintiffs have failed to sufficiently plead a *Monell* claim based on a ratification theory. First, the Tenth Circuit has indicated that, to establish the existence of an official policy or custom based on ratification, a plaintiff must allege that the subordinate's actions—and the bases for them—were ratified by final policymakers. *Bryson*, 627 F.3d at 788. Even assuming that Plaintiffs could demonstrate the existence of an official policy based on Pueblo County's failure to discipline the Individual Defendants, Plaintiffs have not identified the final policymakers who allegedly ratified the Individual Defendants' conduct; rather, their allegations of ratification all refer to Pueblo County generally (*see* ECF No. 1, ¶¶ 98–103 (alleging that "Pueblo County" concluded, as its "official final decision," that the PCSO deputies' conduct on scene was appropriate and did not warrant discipline)). This is insufficient to demonstrate the existence of an "official policy" for purposes of *Monell* liability. *See Erickson v. City of Lakewood*, Colo., 489 F.Supp.3d 1192, 1207 (D. Colo. 2020) (collecting cases).

Second, and beyond the failure to allege that the conduct at issue was approved by any official policymaker, Plaintiffs' ratification theory fails for the independent reason that they have not plausibly alleged causation. On this point, the Tenth Circuit has observed that "basic principles of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow *caused* that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009); *see also Waller v. City & Cnty. of Denver*, 932 F.3d, 1277, 1289 (10th Cir. 2019) (quoting *Cordova*'s linearity principle in discussion of "failure-to-investigate" claim's plausibility). The

11

Plaintiff's Exhibit 1_011

Tenth Circuit has also applied this causation principle to ratification-based municipal liability claims. *See Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005) ("[T]he ratification *must* be the moving force, or cause, of the alleged constitutional violation." (citation omitted)); *see also Bryson*, 627 F.3d at 790 (concluding that ratification theory was not viable where a city "was not even aware of [a police department employee's] unconstitutional actions with respect to [p]laintiff" and "no [city] decisionmakers learned of any defects" in plaintiff's case until defects "came to light" in post-conduct investigation); *Est. of Burnett v. City of Colorado Springs*, No. 21-cv-01708-WJM-MDB, 2022 WL 2904705, at *12 (D. Colo. July 22, 2022) ("The final decisionmakers' approval must precede the violative action, and the Tenth Circuit has rejected ratification based on conduct after the violation has occurred." (citing *Cordova*, 569 F.3d at 1194)). The Court finds the reasoning of these cases persuasive.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claims for *Monell* liability to the extent that they rely on a theory of ratification.

### b. Failure to Train

Closely related, Plaintiffs argue that Pueblo County may be subject to *Monell* liability under a "failure to train" theory (ECF No. 28 at 14–15; *see* ECF No. 1, ¶¶ 104–111 (alleging that Pueblo County failed to adequately train and supervise PCSO deputies in the constitutional use of deadly force and the avoidance of excessive force)).

Here, the Court is mindful that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Erickson*, 489 F.Supp.3d at 1207 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Nevertheless, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible." *City of*

12

Plaintiff's Exhibit 1_012

*Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). To prevail on a failure to train theory, a plaintiff must allege that the "need for more or different training was so obvious, and the inadequacy so likely to result" in the alleged constitutional violation, that it reasonably can be said to have been deliberately indifferent to the need for additional training." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (quotations and alterations omitted); *see also Lynch v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 786 F. App'x 774, 785 (10th Cir. 2019) ("[I]t is not enough for a plaintiff to show 'general deficiencies' in training.").

Here, Plaintiffs allege that the Individual Defendants acted consistently with how they were trained, and that Pueblo County's failure to discipline the Individual Defendants confirms this. While a close call, the Court finds that Plaintiffs have pleaded sufficient factual content to survive dismissal on this basis.[4] To begin, the complaint identifies specific failures in the Individual Defendants' training—namely, that "Pueblo County trains and tolerates its officers to use deadly force even under circumstances where the officer or a third party is not in imminent risk of death or serious bodily injury," and that "Pueblo County fails to adequately train its law enforcement officers in practices necessary to ensure excessive force is avoided, including principles of de-escalation and threat assessment" (ECF No. 1, ¶¶ 104, 105). Alleging that Pueblo County failed to provide training regarding appropriate uses of force is neither conclusory nor generalized—the complaint clearly specifies the factual circumstances about which Pueblo County failed to train its law enforcement officers. *See Est. of Finn v. City & Cnty. of Denver*, No. 1:21-cv-02160-CNS-

---

[4] Separate but closely related, Plaintiffs correctly observe that "a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage," and that requiring more specificity about Pueblo County's training program "could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support" (ECF No. 28 at 15 (quoting *Walker v. Zepeda*, No. 1:11-cv-01242-DME-CBS, 2012 WL 13285403, at *5 (D. Colo. May 29, 2012))).

Plaintiff's Exhibit 1_013

SKC, 2023 WL 1879305, at *4–7 (D. Colo. Feb. 10, 2023) (denying motion to dismiss where plaintiff "specifie[d] the exact factual circumstance about which the City failed to provide any training," to wit, arrestees spitting at officers).

Moreover, the Court agrees with Plaintiffs that Pueblo County's alleged defective training on appropriate uses of force caused Mr. Ward's injury (*see* ECF No. 1, ¶¶ 108–111). For instance, Plaintiffs plausibly allege that his death was a predictable result of Pueblo County's failure to train Defendants McWhorter and Gonzales (*see id.*, ¶¶ 130, 132–33). Interpreting these allegations in the light most favorable to Plaintiffs, the complaint sufficiently alleges that the inadequacy of Pueblo County's training was obvious and likely to result in the injury or death of someone in Mr. Ward's position, and that Mr. Ward's injury could have been prevented by providing training on appropriate uses of force. *See Porro*, 624 F.3d at 1328; *cf. Bark*, 2011 WL 1884691, at *3 (concluding plaintiff failed to allege plausible failure to train claim where he did not "explain how the [alleged] incidents . . . could have been avoided with different or better training.").

Therefore, the Court DENIES Defendants' motion to dismiss Plaintiffs' claims for *Monell* liability to the extent that they rely on a failure to train theory.

**B. The Pleading Sufficiency of Claims Four through Nine**

Defendants next move to dismiss Claims Four through Nine pursuant to Fed. R. Civ. P. 8, arguing that the complaint "fails to state *which* Defendant committed *what* act with sufficient detail to allow Defendants to answer or otherwise respond" (*see* ECF No. 17 at 10–12 (emphases in

Plaintiff's Exhibit 1_014

original)). Viewing the complaint's allegations in the light most favorable to Plaintiffs, the Court agrees with Defendants in part.[5]

Rule 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the notice pleading standard, the statement need only give a defendant notice of the claim and the grounds on which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Context matters in notice pleading," and "[f]air notice under Rule 8(a)(2) depends on the type of case." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quotation omitted). And relevant here, "group pleading" refers to collective allegations against individual government employees. *Carrado v. Daimler AG*, No. 17-cv-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018). "Group pleading violates Rule 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants." *Id.* (citation omitted).

Here, Defendants rely on the Tenth Circuit's reasoning in *Robbins* to argue that Plaintiffs in this case have made undifferentiated allegations against the Individual Defendants, such that the complaint fails to give each defendant notice of what he or she allegedly did wrong (see ECF No. 17 at 11–12). True enough, the *Robbins* court held that because § 1983 suits often involve claims against both government entities and individual actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249–50 (emphases in original).

---

[5] These claims appear to relate to the PCSO deputies' conduct toward the mother after Mr. Ward was shot, and they seek relief under both the federal and Colorado constitutions for unlawful arrest (Claims Four and Five), unlawful seizure (Claims Six and Seven), and retaliation (Claims Eight and Nine).

Plaintiff's Exhibit 1_015

For at least two reasons, however, Defendants' reliance on *Robbins* is somewhat misplaced. First, unlike the *Robbins* complaint which did not isolate the alleged acts of each defendant, *see* 519 F.3d at 1250, the complaint in this case does identify the actions of each individual officer while on scene (*see* ECF No. 1, ¶¶ 86–91). Second, to the extent that the complaint in this case also includes allegations against unspecified "PCSO personnel" (*see id.*, ¶¶ 95, 96), other courts have allowed pleading against a collective group of defendants where it would be "unfair to require Plaintiff to . . . identify which specific Defendant committed which specific act during the incident in question . . . based on the circumstances alleged." *See Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *6 (D. Colo. May 18, 2011). In *Bark*, the plaintiff alleged claims against a group of officers for allegedly searching his home without probable cause. *Id.* at *1. There, the court did not require the plaintiff to specifically identify which officer had said or done what during the search because all the allegations related to a single incident, all the defendants were alleged to have been present for the incident, and the defendants allegedly acted in concert. *Id.* at *5. The *Bark* court then distinguished its result from *Robbins*, stating that it was "not a case where the allegations against the individual Defendants are 'entirely different in character and therefore . . . mistakenly grouped into a single allegation." *Id.*

Here, Plaintiffs allege Claims Five (Colo. Const. art. II, § 7 Unlawful Arrest), Six (Fourth Amendment Unlawful Seizure), Seven (Colo. Const. art. II, § 7 Unlawful Seizure), and Nine (Colo. Const. art. II, § 10 Retaliation) against "All Individual Defendants." Under the circumstances, the Court finds that the complaint provides the Individual Defendants with the notice of the conduct at issue in those claims as required by Rule 8(a)(2). More specifically, that all of the Individual Defendants were employed by the same law enforcement agency, showed up

16

Plaintiff's Exhibit 1_016

on scene in the wake of Mr. Ward's shooting, and allegedly acted in concert in the search, property seizure, and detention of the mother and her boyfriend makes it more reasonable for Plaintiffs to assert collective allegations against the Individual Defendants for purposes of these claims. *See Flow Valve, LLC v. Forum Energy Techs., Inc.*, No. CIV-13-1261-F, 2014 WL 3567814, at *3 (W.D. Okla., July 18, 2014) ("The alleged relationship among the defendants makes it understandable that claims would be linked by common allegations."). The Court therefore DENIES Defendants' motion as to Claims Five, Six, Seven, and Nine.

Claims Four (Fourth Amendment Unlawful Arrest) and Eight (First Amendment Retaliation) in the complaint are a different story, however—Plaintiffs allege these claims against "All Defendants." The defendants named in this action are seven PCSO deputies and a municipal entity, Pueblo County. Yet, Claim Four, for instance, alleges that "*Defendants* did not at any time have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Kristy Ward Stamp had committed or was committing any violation of the law prior to handcuffing her, taking her to the Sheriff's Office, and custodially interrogating her for hours" (ECF No. 1, ¶ 171 (emphasis added)). Similarly, Claim Eight alleges that, "By unlawfully arresting Plaintiff and wrongfully seizing and keeping her property, *Defendants* sought to punish Plaintiff for exercising her First Amendment rights, to silence her, and to deter her from speaking in the future" (*id.*, ¶ 225 (emphasis added); *see also id.*, ¶¶ 222, 224, 226). For both of Claims Four and Eight, the allegedly tortious acts committed by the Individual Defendants while on scene and the acts committed by Pueblo County (i.e., as the Individual Defendants' employer, and the purported final policymaker for purposes of *Monell* liability) "are entirely different in character and therefore are mistakenly grouped in a single allegation." *Robbins*, 519 F.3d at 1251. Put differently, given the complaint's

17

allegation of Claims Four and Eight against "All Defendants," the complaint attributes collective conduct to a municipal defendant that, logically, could not have participated in any torts allegedly committed on scene. *See Carrado*, 2018 WL 4565562, at *3. Accordingly, the Court GRANTS Defendants' motion and dismisses Claims Four and Eight without prejudice for impermissible group pleading.

### C. The Individual Defendants' Entitlement to Qualified Immunity

Finally, at the end of their motion to dismiss, the Individual Defendants make a passing argument that they are entitled to qualified immunity (ECF No. 17 at 12–14). Defendants spend three paragraphs reciting the elements of qualified immunity and then assert, without *any* supporting argument, that they are entitled to the doctrine's protection. Defendants' motion does not adequately raise the qualified immunity defense.[6]

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F.Supp.3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins,* 519 F.3d at 1249). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional

---

[6] Relatedly, the Court notes that because Defendants have asserted a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, they are subject "to a more challenging standard of review than would apply on summary judgment," because at this stage, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to Plaintiffs. *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

18

Plaintiff's Exhibit 1_018

or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's

unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks

omitted).

Generally, once the defendant has invoked the defense of qualified immunity, the plaintiff

bears the burden to satisfy both prongs of the qualified immunity test as set forth above. *Puller v.*

*Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). Here, however, the Court cannot conclude that

Defendants' cursory argument is sufficient to create that burden. *See Halik v. Darbyshire*, No. 20-

cv-01643-PAB-KMT, 2021 WL 4305011, at *4–5 (D. Colo. Sept. 22, 2021) (explaining that

plaintiff's burden arises only after the qualified immunity defense has been "adequately

presented").

On this point, the Court finds *Tillmon v. Douglas County*, 817 F.App'x 586, 589 (10th Cir.

2020) (unpublished), instructive. In *Tillmon*, the Tenth Circuit considered an interlocutory appeal

of the district court's decision not to rule on the defendants' qualified immunity defense. The

*Tillmon* court explained that:

> if a defendant adequately raises qualified immunity and the district
> court declines to rule on the defense, then we typically remand and
> direct the district court to decide qualified immunity. But if a
> defendant does not adequately present the defense to the district
> court, then the defense is not preserved for appellate review and we
> affirm the district court.

*Id.* (citations omitted). The *Tillmon* court then concluded that, although the defendants argued on

appeal that they had "adequately raised qualified immunity in their motion to dismiss," their

"analysis of qualified immunity in th[e] motion was cursory at best" because their "argument

consisted of a single paragraph briefly discussing the law of qualified immunity." *Id.*; *see A*

*Brighter Day, Inc. v. Barnes*, 860 F.App'x 569, 575-76 (10th Cir. 2021) (unpublished) (finding

Plaintiff's Exhibit 1_019

one-sentence qualified immunity argument "underdeveloped" and declining to review the merits because it "was neither pressed nor passed upon"); *Riley v. Spangler*, No. 1:20-cv-00983-KWR-SCY, 2021 WL 5881999, at *8 (D.N.M. Dec. 13, 2021) (collecting cases); *see also Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1234 (10th Cir. 1997) (finding an argument underdeveloped when "[o]nly the final three sentences in [the relevant] paragraph ma[d]e any argument whatsoever"); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

To be sure, and as Defendants correctly observe, the burden to overcome the qualified immunity defense is entirely Plaintiffs' (*see* ECF No. 17 at 13 (citations omitted)). That burden only arises, however, after the defense has first been "adequately presented." *Halik*, 2021 WL 4305011, at *4–5. Here, Defendants invoke, without elucidation, qualified immunity's shield from civil liability. But Defendants' brief, incantatory remarks do not lend themselves to meaningful analysis, and for this reason the Court's analysis is equally brief: Defendants' mention of qualified immunity, without more, does not demonstrate their entitlement to it. Accordingly, the Court DENIES Defendants' motion to dismiss on this ground.[7]

---

[7] The Court further notes that Plaintiffs have alleged Claims Two, Five, Seven, and Nine under C.R.S. § 13-21-131, which provides a state-law remedy where a peace officer deprives an individual of rights secured by article II of the Colorado Constitution. Because this provision expressly abrogates qualified immunity as a defense to liability under the statute, *see* C.R.S. § 13-21-131(2)(b), the Individual Defendants may not invoke qualified immunity in response to these claims.

Plaintiff's Exhibit 1_020

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 and

Fed. R. Civ. P. 8 (ECF No. 17) is GRANTED IN PART and DENIED IN PART, as follows:

1. All claims against Pueblo County are DISMISSED WITH PREJUDICE. The Court grants

   Plaintiffs leave to amend their complaint within 14 days to (a) substitute the appropriate

   parties, and (b) cure the deficiencies in the claims against these parties as set forth above.

2. Claims Four and Eight are DISMISSED WITHOUT PREJUDICE pursuant to Rule 8(a)(2).

3. Defendants' motion to dismiss is DENIED in all other respects.

   DATED this 25th of July 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

Plaintiff's Exhibit 1_021