IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610

**SUSAN DEHERRERA**, and **JOSE GUERRERO**,

    Plaintiffs,

v.

**HUERFANO COUNTY**, a municipality,
**JEFF BENSMAN**, in his individual capacity,
**TERRY SANDOVAL**, in his individual capacity,
**SAM JENSEN**, in his individual capacity,

    Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT JEFF BENSMAN'S MOTION TO DISMISS AMENDED COMPLAINT**

---

Plaintiffs Susan DeHerrera and Jose Guerrero (collectively, "Plaintiffs"), by counsel, respond to Defendant Jeff Bensman's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") as follows:

    I.    **FACTUAL ALLEGATIONS**

Plaintiffs reside in a recreational vehicle on an undeveloped parcel of property in Huerfano County (the "Property"). ECF 20 ¶13. On July 14, 2021, while licensed contractors retained by Plaintiffs were on the Property installing a well pump, Bensman, the Chief Code Enforcement Officer for the County Land Use Department ("LUD"), barreled onto the Property in an unmarked vehicle and parked at the site that the contractors were working. *Id.* at ¶18. If code enforcement staff's access to the property is denied by the property owner at any time, the County Code Enforcement Policy (the "Policy") directs that the field investigation must be conducted from

1

public roads or other area where the officer's presence is lawful. ECF 20-2[1] p. 11. However, if an officer is denied access to the property but believes that entry is necessary to conduct the investigation, he must consult with the County Court Judge to obtain an administrative search warrant. *Id.*

When Plaintiffs asked Bensman why he was parked on the Property, Bensman told them that it was none of their business and hastily drove off. *Id.* at ¶¶19–20. Moments later, Bensman returned to the Property with LUD building inspector Terry Sandoval. *Id.* at ¶20. Bensman and Sandoval exited their vehicles and approached Plaintiffs at the wellsite; at which point, Plaintiffs noticed that Bensman was now sporting a firearm, handcuffs, and a bandolier of bullets. *Id.* at ¶¶20-21.

Ms. DeHerrera then told Bensman and Sandoval that they did not have a right to be on the Property and demanded they leave the Property. *Id.* at ¶23. Bensman and Sandoval ignored Ms. DeHerrera and continued to investigate the wellsite. *Id.* at ¶¶24–25. Mr. Guerrero then positioned himself between Ms. DeHerrera and Bensman to prevent any physical altercation. *Id.* at ¶26. Without warning, Bensman clenched Mr. Guerrero's arm from behind, spun him around, and drove his finger into Mr. Guerrero's chest, which ultimately caused injury to Mr. Guerrero. *Id.* at ¶¶27-28, 32. Bensman later went on to misrepresent himself as an "officer of the court" capable of jailing Plaintiffs, as Sandoval merely stood by and watched these events unfold. *Id.* at ¶¶30-31, 34–35. Despite multiple demands by Plaintiffs that they leave the Property, Bensman and Sandoval continued their investigation for nearly one hour before leaving. *Id.* at ¶35, 37, 43.

---

[1] Citations to ECF 20-1 cited in Plaintiff's filing at ECF 34 were intended to cite to ECF 20-2.

## II.     LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

## III.     ARGUMENT

The Complaint states a plausible claim for relief against Bensman under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourth Amendment rights. It is reasonable to infer from the Complaint that Plaintiffs were deprived of their right to be free from unreasonable searches, which was clearly established at the time of the challenged conduct, in violation of § 1983. Bensman is not entitled to qualified immunity because it is not adequately presented in the Motion, and because his conduct violated clearly established law. Therefore, because the Complaint state a plausible claim for relief pursuant to § 1983, and because Bensman is not entitled to qualified immunity, the Court should deny the Motion.

### A. The Complaint Plausibly Alleges an Unconstitutional Search in Violation of the Fourth Amendment.

The Complaint alleges that Bensman's conduct at the Property deprived Plaintiffs of their right to be free from unreasonable searches. A Fourth Amendment search occurred by nature of

Bensman's physical trespass on the Property, which exceeded the scope of conduct permitted of a licensee on the property of another at common law. The search was unreasonable because it was conducted without an administrative search warrant or probable cause, and in violation of the Policy. Therefore, the Complaint plausibly alleges an unconstitutional search that violated Plaintiffs' Fourth Amendment rights.

### 1. A Search of the Property Occurred.

The Fourth Amendment prohibits unreasonable searches by government agents. U.S. CONST. amend. IV. A "search" occurs when, in an attempt to find something or obtain information, a government agent intrudes a constitutionally protected area either by means of a physical trespass at common law, or an invasion of privacy, the expectation of which society deems reasonable. *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). The home is a constitutionally protected area, and it includes not only what lies inside of the home, but also its curtilage: the area immediately surrounding and intimately tied to the home. *Collins v. Virginia*, 138 S. Ct. 1663, 1674 (2018).

When a government agent, without a warrant, physically intrudes on the curtilage of the home, and the circumstances objectively reveal a purpose to gather evidence, a presumptively unreasonable search has occurred. *Florida v. Jardines*, 569 U.S. 1, 8–10 (2013). A physical intrusion on the curtilage of the home is a search if the government agent's actions exceed the scope of conduct implicitly allowed by a licensee on the property of another at common law. *Id.* at 6. This implied license "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8. Government agents are entitled to do the same without implicating the Fourth Amendment because it is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469

(2011).

Here, a search occurred because Bensman's conduct exceeded the scope of conduct implicitly allowed by a licensee on the property of another at common law. Like the conduct typically permitted of a licensee, the Policy permits code enforcement officers to enter a property to conduct a field investigation but circumscribes that authority if the property owner denies those officers access to the property. The Policy's directive in this situation is mandatory, not permissive: "If the property owner refuses access at any time, the investigation *shall* be conducted from public roads or property where permission to enter has been granted." ECF 20-2, p.11 (emphasis added). Like a licensee who has not received an invitation to linger longer, the only conduct that Bensman and Sandoval were permitted to engage in after Plaintiffs demanded they leave was to do just that—leave. Instead, Bensman and Sandoval "lingered longer" by ignoring Plaintiffs' demands, investigating the Property, and inciting physical violence.

Bensman's argument that a search did not occur because no reasonable expectation of privacy was violated conflates Fourth Amendment jurisprudence, as "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test." *Jones*, 565 U.S. at 409. A Fourth Amendment search occurs when a government agent trespasses on a constitutionally protected area or violates a reasonable expectation of privacy for the purpose of finding something or obtaining information. *Id.* at 408 n.5 ("A trespass on 'houses' or 'effects,' or a *Katz* invasion of privacy, is not alone a search unless it is done to obtain information; and the obtaining of information is not alone a search unless it is achieved by such a trespass or invasion of privacy."). Thus, Bensman's argument that Plaintiffs did not have a reasonable expectation of privacy in the curtilage of their home is irrelevant. *Collins*, 138 S. Ct. at 1672 (reaffirming the "distinct privacy interest in one's home or curtilage"); *California v. Ciraolo*,

476 U.S. 207, 212–213 (1986) (holding that the curtilage of the home is "where privacy expectations are most heightened").

Bensman's argument that a search did not occur because his and Sandoval's conduct occurred in an open field is similarly flawed. Bensman cites to the Tenth Circuit's decision in *Hatfield* for the proposition that a search does not occur when a government agent obtains information by observation of the curtilage from a vantage point in an adjacent field. *United States v. Hatfield*, 333 F.3d 1189, 1196 (10th Cir. 2003). The proposition is not an incorrect statement of law; however, it is inapposite to this case.

Here, Bensman and Sandoval were physically on the Property to investigate. The vantage point of their investigation on the curtilage of the Property was not from an "open field," but rather, from the actual curtilage of the Property. There is nothing before the Court to support Bensman's claim that the information obtained by Bensman on the curtilage of the Property could have been obtained from a lawful vantage point. It is reasonable to infer that the information could only have been obtained by entering on the curtilage of the Property given that Bensman and Sandoval drove on to the Property from a public throughway to perform their investigation.

The information Bensman and Sandoval sought was not obtained from a lawful vantage point but from a trespass on the curtilage of the Property. Bensman correctly acknowledges that discovering information while engaged in a course of conduct permitted by a licensee on the property of another at common law is not itself a search. ECF 35, p.10. However, Bensman's argument incorrectly assumes that Bensman was acting within the scope of such permitted conduct. As the Supreme Court has made clear, a warrantless physical intrusion on the curtilage of the home is a search if the government agent's actions exceed the scope of conduct implicitly allowed by a licensee on the property of another at common law. *Jardines*, 569 U.S. at 6. This

implied license "typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 8.

Here, the moment Plaintiffs demanded that Bensman and Sandoval leave the Property and continued to remain on the property and investigate, they exceeded the scope of their implied license. Moreover, Bensman and Sandoval exceeded the scope of conduct permitted by the Policy, which directed that they *must* leave the property and obtain a search warrant if they wish to reenter the property once a property owner denies access. Plaintiffs demanded that Bensman and Sandoval leave the Property quickly after they entered, thereby making their subsequent investigation a search. ECF 20, Amend. Compl. ¶¶21–22.

Contrary to Bensman's contentions, the Policy did not afford him discretion to engage in the conduct here that violated Plaintiffs' Fourth Amendment rights. Once Plaintiffs demanded that Bensman and Sandoval leave the Property, their continued presence on the Property and investigatory efforts were outside the scope of the Policy and the implied conduct permitted of a licensee on the property of another at common law. It is irrelevant that the well-site on the curtilage of the Property was an undeveloped parcel of land, as "the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion." *United States v. Ross*, 456 U.S. 798, 822 (1982).

Therefore, because Bensman's conduct exceeded the scope of permissible conduct of a licensee on the property of another at common law, on the curtilage of the Property at the wellsite, his conduct amounted to warrantless and presumptively unreasonable search.

**2. The Search was Unreasonable Because No Exception to the Warrant Requirement Applies.**

The Fourth Amendment generally requires warrants. *See* U.S. CONST. amend. IV. To overcome the presumption of an unreasonable search, the government bears the burden of proving

that the search was nonetheless reasonable, which occurs "*only* if it falls within a specific exception to the warrant requirement." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (emphasis added). In his Motion, Bensman alleges only "assuming *arguendo*" that if his conduct amounted to search under the Fourth Amendment, any violation was *de minimis*. Bensman's sole statement as to the minimally intrusive nature of his conduct, in addition to its falsity, is insufficient to meet his burden to show that the search was reasonable.

These judicially crafted exceptions are categorical; they are determined by balancing the individual's privacy and liberty interests against the government's law enforcement and safety interests—and ruling in favor of the weightier of the two. *Terry v. Ohio*, 392 U.S. 1, 8–10, 27 (1968). These exceptions predominantly apply—not to searches of the home or its curtilage—but searches of persons and automobiles; sometimes, on less than the probable cause. *E.g.*, *Delaware v. Prouse*, 440 U.S. 648, 655 (1979).

Contrary to what Bensman's argument implies, there is no "*de minimis*" or minimal intrusion exception that renders the search in this case reasonable. *Carpenter*, 138 S. Ct. at 2221 (presumptively unreasonable search is reasonable "*only* if it falls within a specific exception to the warrant requirement."). Rather, the minimally intrusive nature of a search is merely a factor that supports finding the government's interest is weightier than a person's liberty interest when the Supreme Court recognizes a categorical exception to the warrantless searches of persons and automobiles; the underlying rationale of which is inapposite to the home. *See Collins*, 138 S. Ct. at 1672 (Supreme Court is hesitant to recognize a new exception if "it is effectuated by unlawful trespass.").

Therefore, because Bensman's statement as to the minimally intrusive nature of his conduct is insufficient to meet his burden, and because he has raised no other exceptions to the Fourth

Amendment that would make the search here reasonable, the Complaint contains sufficient factual allegations to reasonably infer that his conduct amounted to an unreasonable search in violation of Plaintiffs' Fourth Amendment rights and a plausible claim for relief under § 1983.

**B. Bensman is Not Entitled to Qualified Immunity Because the Defense Has Not Been Adequately Presented**

Bensman is not entitled to qualified immunity because the defense has not been adequately presented. When qualified immunity is invoked in a Rule 12(b)(6) Motion, the burden shifts to Plaintiff to show that the defendant (1) violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the challenged conduct. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). However, that burden arises only after the defense has been "adequately presented." *Halik v. Darbyshire*, No. 20- cv-01643-PAB-KMT, 2021 WL 4305011, at *4–5 (D. Colo. Sept. 22, 2021); *see Tillmon v. Douglas County*, 817 F.App'x 586, 589 (10th Cir. 2020) (unpublished).

The presentation of Bensman's qualified immunity defense is limited to the following: one sentence in a footnote in which Bensman states that he is providing only a "high-level overview of when the qualified immunity applies" and is willing to adequately present the defense if the Court so requires, ECF 35, n.3; and one paragraph totaling less than 100 words, in which Bensman states that the facts of cases previously cited in his Motion show that the challenged conduct here was not a violation of clearly established law, ECF 35, p.11-12. Yet, the Motion does little to explain how the facts of the cases he claims support his defense are distinguishable from the factual allegations in the Complaint.

Bensman's "high-level overview" of his qualified immunity defense cannot shift the burden to Plaintiffs. Nor can Bensman, as he offers, wait for the Court to instruct him that an adequate presentation of the defense is necessary and do so in his reply. It would defy all notions

9

of fundamental fairness for Bensman's "high-level overview" of his defense to require Plaintiffs to engage in the specific, fact-intensive burden of proving that the challenged conduct violated clearly established law. Bensman's recitation of the elements of qualified immunity, without *any* supporting argument, does not adequately present the defense. *Ward v. Pueblo County*, No. 1:23-cv-00473-CNS-MDB (D. Colo. July 25, 2023) (filed at ECF 34-1).

To the extent the Court finds the defense adequately presented, Bensman is nonetheless not entitled to qualified immunity. In the context of a motion to dismiss, a defendant is not entitled to qualified immunity if the complaint's well-pleaded factual allegations and related inferences, taken in a light most favorable to the party asserting the injury, plausibly allege that the challenged conduct violated a clearly established constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004). Demonstrating a clearly established right does not require citing a case with identical facts, but must at least place the constitutional issue beyond debate. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020); *Mullenix v. Luna*, 577 U.S. 7, 16 (2015); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."). This does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. *Malley v. Briggs*, 45 U.S. 335, 344–45 (1986); *see Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (defendants "can still be on notice that their conduct violates established law even in novel factual circumstances," so long as the law provided "fair warning" their conduct was unconstitutional).

Here, it was clearly established that Bensman continuing his investigatory efforts on the Property, without a warrant or probable cause, after being demanded to leave, was a violation of Plaintiffs Fourth Amendment rights. "After all, some things are so obviously unlawful that they

10

don't require detailed explanation[,] and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

Here, it has been clearly established since 2013 that a government agent conducting a warrantless physical intrusion on the curtilage of the home is permitted "to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. Bensman did not receive an invitation to linger longer after entering the Property. Rather, Plaintiffs promptly demanded that he and Sandoval leave. Bensman's continued investigatory conduct after the demand was outside of the clearly established scope of permissible conduct in that situation.

Therefore, Bensman is not entitled to qualified immunity because the defense has not been adequately presented; but to the extent it is, it was clearly established at the time of his conduct that his investigation exceeded the scope of permissible conduct without a warrant or probable cause and violated Plaintiffs' Fourth Amendment rights.

## IV. CONCLUSION

The Complaint plausibly alleges that Bensman conducted an unreasonable search in violation of the Fourth Amendment when he investigated the curtilage of the Property, without a warrant or probable cause, by exceeding the scope of permissible conduct of a licensee on the property of another at common law. No exception to the Fourth Amendment's general requirement of warrants makes the search here reasonable. Bensman is not entitled to qualified immunity because he has failed to adequately present the defense and because his conduct was in violation of clearly established law. Therefore, Plaintiffs respectfully request that the Court deny the Motion.

Dated: October 13, 2023

                                              */s/ Tanner W. Havens*
                                              Tanner W. Havens, Atty. Reg. #56413
                                              Ethan M. Sumida, Atty. Reg. #56515
                                              RELEVANT LAW – Colorado Springs
                                              1311 Interquest Pkwy. Suite 110
                                              Colorado Springs, CO 80921
                                              Phone: (719) 960-4396
                                              esumida@relevantlaw.com
                                              *Attorney for Plaintiffs*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Leslie L. Schluter
Sophia A. N. Fernald
DANGER SCHLUTER WRBER LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
lschluter@lawincolorado.com
sfernald@lawincolorado.com
*Attorneys for Defendants Huerfano County and Sam Jensen*


William T. O'Connell III, Esq.
Wells, Anderson & Race, LLC
woconnell@warllc.com
*Attorneys for Terry Sandoval*


Matthew J. Hegarty, Esq.
Hall & Evans, LLC
hegartym@hallevans.com
*Attorneys for Jeff Bensman*

                */s/ Katelyn Van Gilder*
                Paralegal