IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 23-CV-01610

SUSAN DEHERRERA and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity, and
SAM JENSEN, in his individual capacity,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO DISMISS**

---

The Defendants in this case are Huerfano County, Colorado, and three individual enforcement workers for the County. Plaintiffs allege Defendants violated their rights under the Fourth Amendment by twice entering their property without permission. Defendants have filed motions to dismiss. Docs. 21, 35, 36. Because the motions rest on material factual disputes outside the complaint as to some counts, the motions are granted in part and denied in part.

### BACKGROUND

Susan DeHerrera and Jose Guerrero resided in an RV on an undeveloped plot of land in Huerfano County, Colorado. Doc. 20 at 4. They were having a pump installed on their land, which drew the attention of defendants Jeff Bensman and Terry Sandoval, Chief Code Inspector,

and Building Inspector, respectively. Doc. 20 at 3, 5. On the account of plaintiffs, on July 14, 2021, Mr. Bensman and Mr. Sandoval drove onto their land in violation of county policy and without a warrant to investigate the pump construction, and behaved rather aggressively while there. *Id.* 5. Mr. Bensman returned on August 2, 2021 to aggressively serve a summons to Guerrero immediately outside his RV. *Id.* at 8.. Though not a peace officer, Mr. Bensman took after the appearance of an old western law man, carrying a personally owned single action revolver and handcuffs on a leather gun belt holding spare rounds. Doc. 20-5.

Plaintiffs make three claims arising from this conduct. They allege that (1) Bensman and Sandoval violated their Fourth Amendment rights to be free from unreasonable searches, (2) Huerfano County and Bensman's supervisor, Sam Jensen, failed to train, supervise, and discipline their employees, and (3) each individual defendant violated a duty to intervene to prevent the constitutional violations. Defendants have moved to dismiss all claims.

## LEGAL STANDARD

All of the motions to dismiss are brought pursuant to Federal Rule of Civil Procedure 12(b)(6). A court's role in addressing such motions is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation marks omitted). The court will not, however, accept conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs,*

11 F.4th 1151, 1159 (10th Cir. 2021). A complaint need not contain detailed factual allegations to state a claim for relief, but the facts alleged must be enough to raise a right to relief beyond mere speculation. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

**DISCUSSION**

Defendants have filed three separate motions to dismiss, but there is a lot of overlap. The County and Mr. Jensen filed a motion, focusing on the requirements for holding local governments liable in these circumstances. Mr. Bensman and Mr. Sandoval each filed their own motion arguing that there was no constitutional violation because there is no expectation of privacy in the areas the code officers entered. Each individual defendant has invoked qualified immunity.[1]

### I.  Colorado Statutory Claim

The motions argue that Plaintiffs cannot state a claim under Colorado's Enhance Law Enforcement Integrity Act, which removes qualified immunity as a defense for rights deprivation lawsuits, codified at Colo. Rev. Stat. § 13-21-131. But while the complaint does mention that statute briefly (*see* Doc. 20 at ¶ 2), Plaintiffs concede that they do not bring a claim or seek relief under that statute. See Doc. 34 at 3 n.1. Given that concession, they will not be permitted to rely on that statute going forward. But since none of Plaintiffs' claims for relief depend on that statute, there is nothing to dismiss on this basis.

---

[1] There is some argument about whether plaintiffs have adequately raised qualified immunity. They have. Raising qualified immunity does not require an exhaustive summary of case law; such discussion is the burden of plaintiffs.

## II. Unlawful Search

The core of Plaintiffs' case is that Defendants violated the Fourth Amendment when Mr. Bensman and Mr. Sandoval entered Plaintiffs' property without permission. The core of the Defendants' motions to dismiss, particularly as to the first claim, is that doing so was not a constitutional violation.

The Defendants admit that the officers went onto Plaintiff's private property without a warrant or permission. They argue, however, that defendants had no reasonable expectation of privacy in the open field where defendants drove, and that Mr. Bensman had implied permission to serve the summons, which took place on curtilage.

As Defendants note, government agents can enter private property "to conduct an investigation . . . and restrict their movements to places visitors can be expected to go (e.g., walkways, driveways, porches)," and "observations made from such vantage points are not covered by the Fourth Amendment." *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003) (citing 1 LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 2.3(f), at 506-08 (3d. ed. 1996)). *See also Carloss*, 818 F.3d at 992 ("'[H]ouses,' for Fourth Amendment purposes, include a home's curtilage, and a home's 'front porch is the classic exemplar' of curtilage.").

But as the *Hatfield* Court explained, "there is no reasonable expectation that a home and its curtilage will be free from ordinary visual surveillance." *Hatfield*, 333 F.3d at 1195 ("The touchstone of the Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'"). And when the property is an "open field" rather than the home or curtilage, the Supreme Court has held that "the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth

Amendment." *Oliver v. United States*, 466 U.S. 170, 183-84 (1984); *see also Rieck v. Jensen*, 651 F.3d 1188, 1189, 1191-94 (10th Cir. 2011) (holding that opening closed gate with "No Trespassing" sign did not violate Fourth Amendment).

This issue, then, boils down to whether Defendants simply conducted "ordinary visual surveillance" from "open fields" on Plaintiffs' property or went beyond that into curtilage or private areas. *See Hester v. United States,* 265 U.S. 57, 59 (1924) ("[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."). This is a fact-intensive inquiry, however, as it requires consideration of "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987); *see also Hatfield*, 333 F.3d at 1194 ("The openness and accessibility of a driveway to the public has been an important factor that courts have used to conclude that an owner does not have a reasonable expectation of privacy and that police observations made from the driveway do not constitute a search."). At this stage, given the presumptions that must be made in favor the Plaintiffs, there are too many potentially disputed facts to make that determination as a matter of law.

Defendants argue that the complaint itself and its exhibits are sufficient to resolve the issue, but I disagree. The line between protected curtilage and open fields is not finely drawn in most circumstances, and certainly is not definitively established by the complaint and its attachments here. I agree that those attachments are properly considered, *see*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), but as to this point at least, they change little. It may be that Mr. Bensman and Mr. Sandoval never intruded into Plaintiffs' curtilage or otherwise went into an area that triggers Fourth Amendment scrutiny. But that determination requires more information about the property and the Defendants' actions than is before me at this early stage of the case. And entering the curtilage for investigative purposes likely violates any implied consent from a property owner. *See Florida v. Jardines*, 569 U.S. 1, 8-9 (2013). As alleged, the Fourth Amendment claim is sufficiently pleaded.

Likewise, it is impossible to say, based on the Complaint's allegations alone, whether the conduct of Mr. Bensman and Mr. Sandoval was "ordinary visual surveillance" or went beyond that. Since both of these may be material facts, the motions are denied to the extent they argue the complaint is insufficient to show a Fourth Amendment violation.[2]

The same factual uncertainties prevent me from granting the motions on the basis of qualified immunity at this stage of the case. "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Without a better understanding of the details of the property, its surroundings, and the circumstances of the two visits, it is impossible to say whether a reasonable officer would have understood the actions alleged here violated the Fourth Amendment. Since deciding who is right requires answering

---

[2] Even assuming Defendants are right that there is an exception for *de minimus* intrusions into private areas (*see, e.g.*, Doc. 21 at 6), there are factual allegations about that, too. *See, e.g.*, Doc. 20 at 8 (noting hour long presence along with menacing demeanor and physical violence).

factual questions beyond the scope of the complaint, the motions to dismiss Plaintiffs' first claim for relief must be denied. *See Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (when qualified immunity is raised in a motion to dismiss, the defendant is subject "to a more challenging standard of review than would apply on summary judgment" because the court considers "the defendant's conduct as alleged in the complaint").

### III. Duty to train, supervise, and discipline

Plaintiffs' second claim for relief is against Defendants Jensen and Huerfano County only. It alleges that Mr. Jensen, and by extension the County, failed to adequately train Mr. Bensman and Mr. Sandoval, investigate allegations of their misbehavior, and discipline them for their violations. Doc. 20 at 13-14.

To the extent this claim is based on a policy of allowing code enforcement officers to conduct warrantless searches without regard to whether the search was to be conducted in permissible "open fields" areas, or in private areas, the motion to dismiss is denied. The Complaint alleges that Mr. Jensen and the County tacitly or overtly sanctioned Mr. Bensman and Mr. Sandoval's practice of not acquiring warrants as called for in official written policy. Doc. 20 at 14. It includes the written policy, which states that code officers must obtain administrative warrants to enter property where they have been denied access, without limitation. Doc. 20-2 at 10-11. Mr. Bensman testified previously that he never obtained such a warrant for the property in question because he understood it was never required. Doc. 20-4 at 31. This is sufficient at this stage to permit the inference that this was done pursuant to policy.

Mr. Bensman argues that his conduct accorded with the County's written policy. Doc. 35 at 11. To the extent that Mr. Bensman and Mr. Sandoval's actions varied, there is evidence it was by unwritten policy

dictated by a county attorney. *See, e.g.,* Doc. 20-4 at 31. This then boils down to the same question as the first claim: if the unwritten policy propounded to code enforcement officers allowed intrusion without consent or warrant into not just open fields, but curtilage or other private areas, the claim would be viable against the County. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). That may not be the case, but as explained above, it is too soon to tell, so the County's motion is denied on this basis.

To the extent this claim is based on allegations of deliberate indifference to the use of excessive force, however, it is insufficient to state a claim. The argument itself appears to be based on "Defendant Bensman's constructive impersonation of a peace officer and menacing use of personal firearms, handcuffs, and bandoliers of bullets." *Id.* at 15. But there is no allegation that Mr. Bensman or anyone else ever actually used those items to injure or impose force on Plaintiffs, so they have no relevance to an excessive force claim. Three factors dictate whether an officer used excessive force: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Surat v. Klamser*, 52 F.4th 1261, 1274 (10th Cir. 2022) (cleaned up, citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). The awkwardness of applying these factors here illustrates how inapposite the claim is. Mr. Bensman is not a peace officer, Doc. 20 at 9, and was not dealing with a crime, nor arrest, nor flight.

The only allegation that might support an excessive force allegation is that Mr. Bensman grabbed and poked his finger at Mr. Guerrero. Doc. 20 at 6. But that has nothing to do with the law-enforcement equipment Mr. Bensman carried. And more importantly, there is no non-conclusory allegation that would support the inference that either the County or Mr. Jensen had a policy of encouraging or tolerating code officers'

grabbing of property owners' arms, or had reason to know it was likely to happen without additional training.[3] Thus, Claim 2 is dismissed as it relates to allegations of use of excessive force.

## IV. Duty to Intervene

Plaintiffs' third claim is that each individual defendant had a duty to intervene to prevent the other individual defendants from violating the Plaintiffs' rights. Doc. 20 at 15-16. It is clearly established that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens when they observe or have reason to know: "(1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, (10th Cir. 2008) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d. Cir. 1994)). This claim ordinarily only attaches to law enforcement, not code enforcement officials. *See e.g.*, *Ali v. McAnany*, 262 F. App'x 443, 446 (3rd Cir. 2008). This does not square with the allegations of this case. Aside from not involving a law enforcement officer, there are no allegations that anyone had a realistic opportunity to step in.

As with the second claim, it is a bit hard to decipher what exactly is the focus of this claim. Part of it points again to "Defendant Bensman's constructive impersonation of a peace officer and menacing use of personal firearms, handcuffs, and bandoliers of bullets." *Id*. at 15. But while

---

[3] To the extent Plaintiffs' argument is that the County and Mr. Jensen should have known that Mr. Bensman would use excessive force because he liked to carry weapons and related accoutrements, they provide no support for that assumption and it is not sufficient to justify a reasonable inference. *See Twombly*, 550 U.S. at 555.

- 9 -

that approach to code enforcement may cross the line between amusing and troubling (*see* Doc. 20-5), as noted above, it does not amount to excessive force or a constitutional violation as alleged here. So none of the others had a duty to prevent it. The rest of Claim 3 focuses on the individual defendants' failure to prevent the others from conducting the illegal search alleged in Claim 1. Doc. 20 at 16.

While Claim 1 itself survives, these derivative failure to intervene claims must be dismissed under the second prong of qualified immunity. *See White v. Pauly*, 580 U.S. 73, 78-79 (2017). While it may be clearly established that government officials can't intrude without warrant or probable cause into the curtilage of private homes, this claim requires another step: that Plaintiffs show it is clearly established that fellow code-enforcement officials have a duty to prevent their colleagues from doing so. And doing so when, as noted above, it is not entirely clear where curtilage ends and open fields begin.

Plaintiffs' responses to the motions do not meet their burden. Their responses to Mr. Bensman's and Mr. Sandoval's motions make no effort to defend this claim, so the motions can be deemed conceded as to them and granted on that basis alone. And as to Mr. Jensen, Plaintiffs' response focuses almost entirely on his alleged knowledge "of the substantial likelihood that Bensman's use of a gun, bullets, and handcuffs in the scope of his employment would result in the use of excessive force." Doc. 34 at 9. It then goes on to explain why the complaint states facts sufficient to show that Mr. Bensman used excessive force. *Id*. at 9-11. But the complaint does not actually assert a claim of excessive force. See Doc. 20. Maybe more importantly, the allegation that Mr. Jensen knew of Mr. Bensman's penchant for arming himself with a gun, bullets, and handcuffs might be important if Mr. Bensman had used those things to undertake excessive force. But, again, that is not what Plaintiffs allege;

they base this argument on Mr. Bensman's grabbing of Mr. Guerrero's arm and poking him with his finger. The allegations about Mr. Jensen's knowledge therefore are not connected to the alleged use of force.

Even if all that had been done, the motions would still have to be granted based on the second prong of qualified immunity, which requires the plaintiff to show that the defendant's conduct violated clearly established law.[4] "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). Plaintiffs have not done so here. They merely assert, without citation, that "an officer who fails to intervene to prevent the use of excessive force may be liable under § 1983 is clearly established law." Doc. 13. That's probably true, but even if a citation were provided it would not carry Plaintiffs' burden because it is far too generic an assertion. The Supreme Court has repeatedly admonished courts not to define "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, "the clearly established law must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S. at 640). Plaintiffs' assertion does not attempt to do this.

## CONCLUSION

It is **ORDERED** that:

The Motions to Dismiss, **Docs. 21, 35, 36**, are **GRANTED IN PART** and **DENIED IN PART**;

---

[4] Plaintiffs assert that Mr. Jensen failed to adequately present the qualified immunity defense. Doc. 34 at 12-13. This is hardly the case, as the motion sets forth an entire section to qualified immunity, with both general and claim-specific analysis and citation. This is more than enough to present the defense.

Plaintiffs' First Claim for Relief may proceed;

Plaintiffs' Second Claim for Relief may proceed as it relates to a policy of permitting unconstitutional searches of private property;

Plaintiffs' Third Claim for Relief is **DISMISSED**.

DATED: March 29, 2024

BY THE COURT:

Daniel D. Domenico
United States District Judge