# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01610-DDD-MDB

SUSAN DEHERRERA, and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity,
SAM JENSEN, in his individual capacity

    Defendants.

---

## DEFENDANT TERRY SANDOVAL'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Terry Sandoval, by and through counsel, William T. O'Connell, III of Thompson, Coe, Cousins & Irons, LLP, and pursuant to Fed.R.Civ.P. 56, hereby moves for summary judgment on Plaintiffs' Amended Complaint and Jury Demand ("Complaint")[Doc. No. 20] and as grounds therefor states as follows:

## INTRODUCTION

On July 13, 2021, Huerfano County Building Inspector Terry Sandoval received a complaint from the Huerfano County Health Department regarding the improper installation of a cistern/well on a 160-acre undeveloped parcel of property in Huerfano County ("County"). In response to the complaint, Mr. Sandoval traveled to the property in a County vehicle. Upon arrival,

Mr. Sandoval observed two trucks from a water project company, one of which was equipped with a crane, two company employees, a large dirt pile and two RVs/trailers in the distance.

Shortly after his arrival, Mr. Sandoval attempted to speak to Plaintiff Jose Guerrero; however, Mr. Guerrero began yelling at him to get off the property. Mr. Sandoval advised Mr. Guerrero that he was the Building Inspector and had the right to be on the property. Mr. Sandoval then briefly spoke to Plaintiff Susan DeHerrera and the water company employees before leaving the property. During his approximate ten-minute visit to the property, Mr. Sandoval never approached either RV/trailer, never threatened or used physical force and never damaged the property. In sum, Mr. Sandoval's actions on the day in question amounted to ordinary visual surveillance from open fields on the 160-acre parcel.

Plaintiffs' sole remaining claim against Mr. Sandoval is one for unlawful search pursuant to the Fourth Amendment. As described below, Mr. Sandoval is entitled to qualified immunity because Plaintiffs cannot establish that Mr. Sandoval violated their clearly established constitutional rights.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

**Plaintiffs Susan DeHerrera & Jose Guerrero**

1. On July 13, 2021, Plaintiffs Susan DeHerrera and Jose Guerrero lived in a recreational vehicle ("RV") on a 160-acre undeveloped parcel of property designated for agricultural use in Huerfano County. (Complaint, ¶ 13; Exhibit 1 to Complaint).

2. The 160-acre undeveloped parcel of property ("property") bears the following legal description: TWP 28S RNG 67W SEC 14: SW4160 AC MOL 276-228 264-86 359-964 364-819

2

361324 361326 380277 396620 399754 418652 418653 419731 419732 426396 426397. (Exhibit 1 to Complaint).

**Defendant Terry Sandoval**

3. Defendant Terry Sandoval was employed as the Huerfano County ("County") Chief Building Inspector from January 2019 to February 2023. (Affidavit of Terry Sandoval, ¶ 1, attached hereto as **Exhibit A**).

4. As Chief Building Inspector, Mr. Sandoval's duties included administering "a comprehensive building plan check, and inspection program in the County's unincorporated areas through the enforcement of Federal, State and County codes, ordinances and regulations" and assuring "the consistent and fair enforcement of Federal, State and County building codes, ordinances and administrative orders." (Job Description, p. 1, attached hereto as **Exhibit B**).

5. As Chief Building Inspector, Mr. Sandoval had no supervisory responsibility over County Code Enforcement Officer Defendant Jeff Bensman. As County Building Inspector, Ms. Sandoval has no reporting obligations to Mr. Bensman. (**Exhibit A**, ¶ 2).

**July 13, 2021**

6. On July 13, 2021, Mr. Sandoval received a complaint from the County Health Department regarding the improper installation of a cistern/well on the property. (**Exhibit A**, ¶ 3).

7. In response to the complaint, Mr. Sandoval, who was unarmed, drove a white County vehicle out to the property. (**Exhibit A**, ¶¶ 4, 7).

8. Plaintiffs lived in a beige and brown RV/trailer on the property. (Deposition of Plaintiff Jose Guerrero, 107:15-20, attached hereto as **Exhibit D**).

9. Plaintiffs' RV and the immediate area surrounding the RV were not fenced in or otherwise enclosed. (Deposition Exhibits 9, 13 and 19, attached hereto as **Exhibit G**).

10. Plaintiffs were storing a white RV/trailer on the property for another individual. (Deposition of Plaintiff Susan DeHerrera, 85:10 - 86:5, 86:24 – 87:1; attached hereto as **Exhibit C**; **Exhibit G**).

11. When he arrived at the property, Mr. Sandoval saw two Water Works Plus trucks, one of which was equipped with a crane, two Water Works Plus employees, a large dirt pile and two RVs/trailers in the distance. (**Exhibit A**, ¶ 5).

12. A blue cistern, to be installed in the well, was also visible. (**Exhibit C**, 83:1-84:10).

13. The dirt pile was dug up by Mr. Guerrero for installation of the well. (**Exhibit C**, 82:17 – 25; 93:6 - 10; **Exhibit G,** Deposition Exhibits 9 & 13).

14. The wellsite was approximately twenty feet or more from Plaintiffs' RV. (**Exhibit C**, 191:19 – 25).

15. Mr. Sandoval parked his County vehicle near the end of the dirt pile, approximately twenty feet from the wellsite. (**Exhibit A**, ¶ 6; **Exhibit C**, 177:24 – 178:9).

16. The area surrounding the wellsite was not included within an enclosure surrounding Plaintiffs' RV. (Deposition Exhibits 10, 16 and 17, attached hereto as **Exhibit F**).

17. Mr. Bensman parked his vehicle behind Mr. Sandoval's vehicle. (**Exhibit A**, ¶ 8).

18. After Mr. Bensman walked up to Mr. Sandoval's vehicle, Mr. Sandoval got out of his County vehicle. (**Exhibit A**, ¶ 9).

19. Mr. Sandoval and Mr. Bensman were confronted by Mr. Guerrero. (**Exhibit A**, ¶ 9; Bensman bodycam, 01:45 – 02:07, attached hereto as **Exhibit E**).

20.     Mr. Sandoval attempted to speak to Mr. Guerrero; however, Mr. Guerrero began yelling at Mr. Sandoval to get off the property. (**Exhibit A**, ¶ 10; **Exhibit E**, 01:45 – 02:07).

21.     Mr. Sandoval informed Mr. Guerrero that he was the Building Inspector and had the right to be on the property. (**Exhibit A**, ¶ 11; **Exhibit E**, 01:45 – 02:07).

22.     Mr. Sandoval subsequently spoke to Plaintiff Susan DeHerrera and advised her that he had received a complaint from the County Health Department. (**Exhibit A**, ¶ 12; DeHerrera video, 02:46 – 04:51, attached hereto as **Exhibit H**).

23.     Mr. Sandoval then briefly spoke to the Water Works Plus employees before leaving the property. (**Exhibit A**, ¶ 13; **Exhibit E**, 06:30 – 06:45).

24.     Mr. Sandoval did not enter Plaintiffs' RV during his visit to the property. (**Exhibit A**, ¶ 14; **Exhibit C**, 169:19 - 22).

25.     Mr. Sandoval never approached Plaintiffs' RV, which was approximately forty feet away from where Ms. Sandoval spoke to Plaintiffs and the Water Works Plus employees, during his short visit to the property. (**Exhibit A**, ¶ 15; **Exhibit C**, 169:19 - 22; **Exhibit F,** Deposition Exhibit 16).

26.     Ms. DeHerrera was never concerned that Mr. Sandoval would enter Plaintiffs' RV. (**Exhibit C**,170:16 - 21).

27.     Mr. Sandoval did not engage in any physical force during his visit to the property. (**Exhibit A**, ¶ 16).

28.     Mr. Sandoval never threatened to use physical force during his visit to the property. (**Exhibit A**, ¶ 17; **Exhibit C**,164:16 – 18).

29. Mr. Sandoval was at the property for approximately ten minutes on the day in question. (**Exhibit A**, ¶ 18; **Exhibit C**, 118:14 – 119:22; 164:8 - 11; **Exhibit E**).

30. Mr. Sandoval did not damage the property during his ten-minute visit. (**Exhibit C**, 170:25 – 171:6).

## ARGUMENT

### I. MR. SANDOVAL IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE HE DID NOT VIOLATE PLAINTIFFS' CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

#### A. Qualified Immunity

When a public official is sued in his individual capacity for discretionary actions he took under color of law that allegedly violated the constitutional rights of the plaintiff, the official may claim the defense of qualified immunity. If a public official asserts a qualified immunity defense, the plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008).

Under the first prong, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003). Under the second prong, the plaintiff must establish that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See White v. Pauly,* 137 S. Ct. 548, 551 - 552 (Jan. 9, 2017) ("existing precedent must have placed the statutory or constitutional question beyond debate."); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). The plaintiff cannot prevail unless both prongs are adequately established; however, for a defendant to prevail, inadequacy with respect to either prong will suffice. *See Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010).

6

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on the substantive law regarding that right. *See*, *e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). The protection afforded by qualified immunity is broad. Only if "no [official] of reasonable competence" would have acted under the facts presented is qualified immunity unavailable. *Malley v. Briggs*, 475 U.S. 335, 346, n.9 (1986). As a result, "officials will not be liable for mere mistakes of judgment, whether the mistake is one of fact or one of law." *Butz v. Economu*, 438 U.S. 478, 507 (1978).

While the first part of Plaintiff's "heavy two-part burden" may be straightforward enough, the second part requires additional elucidation, as it is sometimes misunderstood and misapplied."[F]or a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 137 S. Ct. at 551 (internal citations omitted). Although it is of course not necessary to point to a prior case with identical facts, the unconstitutionality of a particular defendant's specific alleged violation of a plaintiff's asserted right "must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012)(nested internal quotation marks omitted)(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Thus, a novel factual scenario presenting "a unique set of facts and circumstances" should be viewed as "an important indication…that [the official's] conduct did not violate a 'clearly established' right." *White*, 137 S. Ct. at 552.

Plaintiffs cannot defeat Mr. Sandoval's entitlement to qualified immunity by relying on the generalized notion that it was clearly established in July 2021 that a search of private property without a warrant is violative of the Fourth Amendment. Indeed, the United States Supreme Court

7

has repeatedly emphasized, and admonished district and circuit courts, that "clearly established law" must not be defined "at a high level of generality," but rather, must be "particularized" to the facts of the case at issue. *Id.* (quoting *Ashcroft*, 563 U.S. at 742, and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S.Ct. at 551.

### B. Constitutional Violation - Fourth Amendment: Unlawful Search

Mr. Sandoval's entry on the property without an administrative warrant was permissible under the "open fields" doctrine. The Fourth Amendment's protections do not extend to "open fields," even where entry may be considered a trespass. *Oliver v. United States*, 466 U.S. 170, 173 (1984); *Rieck v. Jensen*, 651 F.3d 1188, 1191 (10th Cir. 2011) ("[T]he Supreme Court has made it clear that the Fourth Amendment does not track property law.") "[T]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage" and need not be either "'open' nor a 'field' as those terms are used in common speech." *Oliver*, 466 U.S. at 180 n.11. Curtilage is defined as "the land immediately surrounding and associated with the home…the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Id.* at 180. (internal citations omitted).

As the Court observed in the Order Granting in Part and Denying in Part Motions to Dismiss [Doc. No. 47], the dispositive issue on Plaintiffs' unlawful search claim against Mr. Sandoval and Mr. Bensman "boils down to whether Defendants simply conducted 'ordinary visual surveillance' from 'open fields' on Plaintiffs' property or went beyond that into curtilage or private areas." [Doc. No. 47, p. 5, internal citation omitted]. Although "curtilage" is not mentioned in

8

Plaintiffs' Amended Complaint, Plaintiffs' Response to Mr. Sandoval's Motion to Dismiss identifies the well-site as the area of the property alleged to be curtilage. (Response [Doc. No. 39], p. 6 ("It is reasonable to infer from the Complaint that with one RV on the Property, a wellsite to obtain water was intimately and psychologically tied to the home."), p. 7 ("It is irrelevant that the well-site on the curtilage of the Property was an undeveloped parcel of land…")).

Examination of the four factors analyzed in a curtilage case, identified in *United States v. Dunn*, 480 U.S. 294, 301 (1987), demonstrates that Mr. Sandoval conducted ordinary visual surveillance from open fields who never intruded into the curtilage or private areas during his brief visit to the property.

### a. The proximity of the area claimed to be curtilage to the home

Plaintiffs' RV and the immediate area surrounding the RV were not fenced in or otherwise enclosed. (SUMF, ¶ 9). Mr. Sandoval parked his County vehicle near the end of a dirt pile, dug up by Mr. Guerrero for installation of the well, approximately twenty feet from the wellsite. (SUMF, ¶ 15). The wellsite was approximately twenty feet or more from Plaintiffs' RV. (SUMF, ¶ 14). During his approximate ten-minute visit to the property, Mr. Sandoval never got within forty feet of Plaintiffs' RV. (SUMF, ¶ 25).

### b. Whether the area is included within an enclosure surrounding the home

The area surrounding the wellsite was not included within an enclosure surrounding Plaintiffs' RV. Rather, the area is entirely exposed and in full view of any individual passing by the area. (SUMF, ¶ 16).

### c. The nature of the uses to which the area is put

The only use Plaintiffs made of the exposed undeveloped area was installation of a well/cistern. (SUMF, ¶¶ 9 - 16).

### d. The steps taken by the resident to protect the area from observation by people passing by

Plaintiffs did not take any steps to protect the wellsite from observations by individuals passing by the area. Indeed, any visitor to the property could be expected to access the wellsite area given that it was not included within an enclosure surrounding Plaintiffs' RV. (SUMF, ¶¶ 9 - 16). *See e.g., United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003)("When the police come on to private property to conduct an investigation . . . and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.").

In sum, Mr. Sandoval never intruded into the curtilage or any private areas during his approximate ten-minute visit to the property. Instead, Mr. Sandoval conducted ordinary visual surveillance from open fields. *See e.g.*, *Widgren v. Maple Grove Twshp.*, 429 F.3d 575, 579-580 (6th Cir. 2005)(no Fourth Amendment violation when a zoning administrator went past "no trespassing" signs, through open fields to visually observe a zoning violation); *Conrad v. City of Berea*, 243 F.Supp. 3d 896, 906 (N.D. Ohio 2017)(building inspector allowed to pass through fields to visually observe building code violations). Accordingly, Plaintiffs cannot establish that Mr. Sandoval violated their Fourth Amendment rights and their unlawful search claim against him should be dismissed with prejudice.

### C. <u>Clearly Established</u>

As described above, Mr. Sandoval's conduct did not violate Plaintiffs' Fourth Amendment rights. Even if his conduct somehow did violate Plaintiffs' constitutional rights, Plaintiffs cannot demonstrate that every reasonable official in Mr. Sandoval's position would have known that his conduct in July 2021 was unconstitutional. A County Building Inspector who 1) traveled to a 160-acre undeveloped parcel of property in response to a complaint from the County Health Department, 2) upon arrival observed two trucks from a water project company, one of which was equipped with a crane, two company employees, a large dirt pile and two RVs/trailers in the distance, 3) spent some ten minutes on the property while never approaching, let alone entering, the plaintiffs' residence, 4) never threatened or used physical force and 5) never damaged the property would not have understood that his actions violated the Fourth Amendment. Accordingly, Plaintiffs cannot establish that their Fourth Amendment rights were clearly established at the time of Mr. Sandoval's alleged misconduct and their unlawful search claim against him should be dismissed with prejudice.

### D. <u>De minimis violation</u>

Even if Mr. Sandoval's actions violated Plaintiffs' clearly established Fourth Amendment rights, any such violation was plainly de minimis. Mr. Sandoval was on the property for approximately ten minutes. (SUMF, ¶ 29). During that time, Mr. Sandoval never approached Plaintiffs' RV. (SUMF, ¶ 25). Mr. Sandoval never threatened to use physical force, let alone engaged in any physical force. (SUMF, ¶ 28). Finally, Mr. Sandoval did not damage the property in any respect during his short visit. (SUMF, ¶ 30). Given the de minimis nature of any violation of Plaintiffs' Fourth Amendment rights, Plaintiffs' unlawful search claim against Ms. Sandoval

11

fails and should be dismissed with prejudice. *See Artes-Roy v. City of Aspen*, 31 F.3d 958, 962-63 (10th Cir. 1994) (compiling cases holding that a constitutional violation was de minimis); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)("Any deprivation of Wise's visitation rights was so insubstantial in duration and effect to rise to a federal constitutional level.").

## II. MR. SANDOVAL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM

"[P]unitive damages are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (citing *Smith v. Wade,* 461 U.S. 30, 56 (1983)). Punitive damages are inappropriate where a plaintiff cannot show that the defendant either acted with malice or knew his actions were unconstitutional. *Jolivet*, 966 F.2d at 577. "The fact that a defendant's actions were objectively unconstitutional is not considered when determining whether to award punitive damages." *Id*. "An award of punitive damages requires an assessment of the defendant's *subjective* state of mind." *Id*.

Mr. Sandoval is entitled to summary judgment on Plaintiffs' punitive damages claim (Complaint, Prayer for Relief, D) because there is no evidence that he acted with malice, evil intent or motive, or knew that his actions were unconstitutional, which they were not, for the reasons described in Section I.

## CONCLUSION

For the reasons described above, this Court should enter summary judgment in favor of Defendant Terry Sandoval and dismiss Plaintiffs' Amended Complaint and Jury Demand against him with prejudice.

Dated this 21ST day of March 2025.

                                                          Respectfully submitted,

                                                          *s/ William T. O'Connell, III*
                                                          William T. O'Connell, III
                                                          Thompson, Coe, Cousins & Irons, LLP
                                                          1700 Broadway, Suite 900
                                                          Denver, CO 80290
                                                          T: 303-830-1212
                                                          Email: woconnell@thompsoncoe.com

                                                          **ATTORNEY FOR DEFENDANT**
                                                          **TERRY SANDOVAL**

                                                          I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

      I hereby certify that on March 21, 2025, a true and correct copy of the above and foregoing **DEFENDANT TERRY SANDOVAL'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Taylor G. Minshall, Esq.
Relevant Law – Colorado Springs
1311 Interquest Parkway, Suite 110
Colorado Springs, CO 80921
tminshall@relevantlaw.com
***ATTORNEYS FOR PLAINTIFFS***

Matthew J. Hegarty, Esq.
Hall & Evans, LLC
1001 17th Street, Ste. 300
Denver, CO 80202
hagartym@hallevans.com
***ATTORNEYS FOR DEFENDANT***
***JEFFREY BENSMAN***

Leslie L. Schluter, Esq.
Dagner Schluter Werber LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
lschluter@lawincolorado.com
***ATTORNEYS FOR DEFENDANTS***
***HUERFANO COUNTY AND SAM JENSEN***

                                            *s/ Barbara McCall*
                                            Barbara McCall, Legal Assistant