IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01610-DDD-MDB

SUSAN DEHERRERA; and
JOSE GUERRERO,

       Plaintiffs,

v.

HUERFANO COUNTY, a municipality;
JEFF BENSMAN, in his individual capacity;
TERRY SANDOVAL, in his individual capacity; and
SAM JENSEN, in his individual capacity,

       Defendants.

---

## MOTION FOR SUMMARY JUDGMENT FROM DEFENDANT JEFFREY BENSMAN

---

       Defendant Jeffrey Bensman ("Defendant"), via counsel, Hall & Evans, L.L.C., and pursuant to Fed.R.Civ.P. 56, submits his Motion for Summary Judgment and seeks judgment as a matter of law on all of Plaintiffs' claims, stating as follows:[1]

## I. <u>INTRODUCTION</u>

       Susan DeHerrera and Jose Guerrero ("Plaintiffs") attempt against Defendant a single claim for alleged unlawful search of the subject real property ("Property") in Huerfano County, Colorado ("County"), in violation of their federal constitutional rights under 42 U.S.C. § 1983. This claim cannot survive. Given the open-fields

---

[1] Pursuant to D.C.COLO.LCivR 7.1(b)(3), no conferral was required on this Motion.

doctrine and lack of curtilage, the undisputed material facts confirm Defendant didn't actually conduct a search in visiting the Property that day. Also, where an account a public employee acted unlawfully is materially, "blatantly" contradicted by video evidence, that account needn't be credited as factual on summary judgment because no reasonable jury could believe it. *See generally **Scott v. Harris***, 550 U.S. 372 (2007). Plaintiffs' own version of events is materially and blatantly contradicted by Defendant's video and, hence, cannot receive the imprimatur of fact. Thus, Defendant is entitled to judgment as a matter of law in his favor and against Plaintiffs.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")[2]

1.    On July 13, 2021, Defendant used a body-worn camera recorder ("BWC") to video-record his entire visit to the Property. [*See* J_Bensman BWC Video, DEF BENSMAN 00002, "joe guerrero body cam footage.avi", attached as **Ex. A**].

2.    That day, Defendant was the County's chief Code Enforcement Officer. [BENSMAN_DECL, **Ex. B**, at ¶2].

3.    Defendant's code enforcement activities were purely complaint-based, whether from citizens or from County officials. [**Ex. B**, ¶3; 11/20/2022 Hrg. Tr. in 2022C000047, relevant portions attached as **Ex. C**, at 30:23-31:1].

4.    When Defendant inspected properties in the County, he carried his own personal pistol, because he often responded to inspection requests alone and involving property owners who potentially posed a physical threat to him. [**Ex. B**, ¶4].

---

[2] All SUMF facts are undisputed only for purposes of this Motion. Defendant reserves the right to contest each fact at any later stage, including trial.

5. Defendant carried this pistol onto the Property that day and also wore the bulletproof vest the County issued him. [**Ex. B**, ¶5].

6. County Environmental Health Director Robin Sykes asked Defendant to visit the Property for a potential violation. [**Ex. B**, ¶6; **Ex. C**, 18:13-17 ("Sachs")].

7. Defendant approached the Property, which was zoned agricultural, by driving on La Deora Boulevard, an access road owned not by Plaintiffs, but by the Rio Cucharas Ranches of Colorado Subdivision recorded in the County. [**Ex. A**, 00:04-00:11; **Ex. B**, ¶7; Land Survey Plat, attached as **Ex. D**].

8. From La Deora Boulevard, before entering the Property, Defendant had an unobstructed view of all activities then occurring on the Property. [**Ex. B**, ¶8].

9. From La Deora Boulevard, before entering the Property, Defendant saw Water Works Plus ("WWP") personnel installing a "pipeline". [**Ex. A**, 00:28-00:33].

10. From La Deora Boulevard, before entering the Property, Defendant clearly saw a "big blue container" near the "pipeline" installation site. [**Ex. A**, 00:14-00:17].

11. From La Deora Boulevard, before entering the Property, Defendant clearly saw two trucks with WWP livery, including a 20-foot-long Ford F-450 with a crane effectuating the installation. [**Ex. A**, 00:36-00:40; **Ex. B**, ¶11].

12. This crane was approximately 50 feet high. [Tr. DeHerrera Dep., relevant pages attached as **Ex. E**, at 21 (177:6-23)].

13. From La Deora Boulevard, Defendant clearly saw the whole Property before entering it. [**Ex. B**, ¶13].

14. In July 2021, the County's Code Enforcement Policy stated:

3

2. Announced/Unannounced Field Visits.

At the discretion of Code Enforcement staff or other assigned staff, a field visit to the vicinity of the subject property may be conducted with or without prior notice to the property owner, occupant, or alleged code violator. The determination of whether or not to give prior notice shall be made on the basis of the following criteria:

a. The nature of the alleged violation;

b. Whether or not prior notice will make detection and documentation of the alleged violation more difficult; and

c. Whether or not prior notice will unnecessarily increase the risk or violent confrontation or injury to staff.

3. Entering Upon Property or Premises.

Code Enforcement staff may enter upon private property to conduct a field investigation without authority to enter. Code Enforcement staff may enter property to seek permission to investigate the premises. If the property owner refuses access at any time, the investigation shall be conducted from public roads or property where permission to enter has been granted. If Code Enforcement staff are refused access or entry, and entry is necessary to conduct the investigation, staff shall consult with the County Court Judge to go about obtaining an administrative search warrant.

[County's Code Enforcement Policy, relevant pages attached as **Ex. F**, at 10-11].

15. Defendant followed County Building Inspector Terry Sandoval onto the Property—both men drove separately. [**Ex. A**, 00:41-00:43; **Ex. E**, 8-9 (81:17-82:16)].

16. Defendant entered the Property driving north-to-south about 00:55 into his BWC video, given overhead telephone poles and wires visible via his windshield. [**Ex. A**, 00:53-00:57; *see id.*, 02:52-02:54 (poles and wires from different angle)].

17. These poles and wires roughly paralleled the Property's northern border. [**Ex. B**, ¶17].

18. No physical barrier excluded Defendant from the Property. [**Ex. B**, ¶18].

19. Guerrero and DeHerrera lived on the Property in a non-self-propelled camping trailer which they called "the fifth wheel". [**Ex. E**, 14-16 (91:5-93:5)].

20. The fifth wheel was unfenced and unenclosed. [*See generally* **Ex. A**].

21. Defendant parked on the Property 01:11 into his BWC video and exited his truck. [**Ex. A**, 01:11-01:36].

22. Defendant approached Mr. Sandoval's pickup truck. [**Ex. A**, 01:36-01:48].

23. Guerrero stated, "Get off our property now." [**Ex. A**, 01:45-01:46].

24. Guerrero didn't have any ownership interest in the Property in 2021. [**Ex. E**, 3-6 (43:13-44:11, 45:6-9, 45:23-46:12)].

25. Instead, DeHerrera co-owned it with her family. [**Ex. E**, 3-6 (43:13-46:12)].

26. Guerrero stated, "Susan, report these assholes here." [**Ex. A**, 01:54-01:56].

27. As Defendant tried speaking with a male WWP employee about whether WWP was licensed to operate in the County, Guerrero walked between them and gave Defendant a forearm shove while stating, "Don't push me, man." [**Ex. A**, 02:18-02:23; **Ex. B**, ¶27; VID_20210713_113735622, attached as **Ex. G**, at 02:13-02:15].

28. Defendant again asked the WWP employee whether WWP had a license to operate in the County, and the employee indicated he didn't have it but needed to call his boss about it. [**Ex. A**, 02:29-02:40].

29. The following exchange then occurred:

GUERRERO: You know, every time I'm gonna see you, I'm gonna kick your ass, buddy.
DEFENDANT: You just --
GUERRERO: Guaranteed.
DEFENDANT: -- threatened an officer of the Court.
GUERRERO: Yeah.
DEFENDANT: You're going to jail.
GUERRERO: You know what? Fuck you.
DEFENDANT: You're going to jail.

[**Ex. A**, 2:45-2:52; **Ex. B**, ¶29; **Ex. G**, 02:37-02:45].

30. Defendant then returned to his truck to deposit his pistol and came back without it. [**Ex. A**, 02:50-03:22; **Ex. B**, ¶30; **Ex. G**, 02:43-03:15].

31. While returning to the WWP trucks, Defendant passed the "big blue container" he'd observed before entering the Property, which was a cistern going into the trench Guerrero dug with a backhoe, and he also saw the backhoe being stored on the Property. [**Ex. A**, 03:12-03:15; **Ex. E**, 9-10 (82:17-83:9)].

32. Near the cistern, Defendant also saw another vehicle, another camping trailer, a storage trailer, and piles of junk, which Plaintiffs confirmed was storage for a friend. [**Ex. A**, 03:12-03:15; **Ex. E**, 12-13 (85:14-86:9), 17-19 (100:8-102:10)].

33. Defendant radioed the County Sheriff's Office for potential response, and spoke telephonically about WWP's work with "Fred" (WWP management), who advised WWP was installing the cistern and a pipeline. [**Ex. A**, 03:22-05:55].

34. Not until more than halfway into the brief encounter did DeHerrera demand Bensman vacate the Property. [**Ex. A**, 06:19-06:22].

35. Defendant and Sandoval then received confirmation WWP apparently did have a license to operate within the County. [**Ex. A**, 06:25-07:00; **Ex. B**, ¶35].

36. While on the Property, Defendant didn't come within at least 40 feet, *i.e.* two truck lengths, of the specific spot of pipeline installation and didn't look into that spot either . [*See generally* **Ex. A**; **Ex. A**, 06:00-06:54; **Ex. B**, ¶36; **Ex. G**, 00:01-01:53].

37. The specific spot where the pipeline was being installed was at least 40 feet, *i.e.* two truck lengths, from the corner of Plaintiffs' fifth wheel. [*See generally*

**Ex. A**; **Ex. B**, ¶37; **Ex. G**, 00:01-01:53; A6B1A7AB-C24F-49D1-B7B7-2C195DB7D186.mov, attached as **Ex. H**, at 00:01-00:13].

38. While present on the Property, Defendant never used his body to touch Guerrero on the chest. [*See generally* **Ex. A**; *see also* **Ex. B**, ¶38; **Ex. G**].

39. Defendant and Sandoval then jointly decided to leave the Property, and Defendant cancelled the sheriff's deputy's response. [**Ex. A**, 09:00-09:42].

40. Defendant walked back to his truck 09:43 into his BWC video, began reentering his truck 9:54 into the video, completed reentry 10:00 into the video, began driving away from the Property 10:06 into the video, exited the Property about 10:22 into the video, and turned off the BWC 10:35 into the video. [**Ex. A**, 09:43-10:35].

41. Defendant's BWC recorded continuously for the entire 10:35 of the BWC video runtime, and Defendant didn't turn off his BWC while he was physically present on the Property. [*See generally* **Ex. A**; *see also* **Ex. B**, ¶41].

42. The Property was more than 143 acres. [**Ex. D**].

43. In July 2021, Plaintiffs' activities conducted on the Property related to farming, cattle, and agritourism. [**Ex. E**, 7 (60:5-25), 13 (86:6-16), 20 (136:18-22)].

44. On July 13, 2021, Defendant didn't cause any physical damage to the Property. [**Ex. E**, 22 (192:3-6)].

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where no genuine dispute on any material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A motion for summary judgment assesses whether trial is needed. *See **Celotex Corp.***

*v. Catrett*, 477 U.S. 317, 323 (1986). Initially, the movant must show the absence of genuine, material fact issues. *See **id.*** After the movant meets its burden, the nonmovants must do show than metaphysical doubt. *See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**,* 475 U.S. 574, 586 (1986). Rather, they must set forth specific facts showing a genuine triable issue. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986). Hence, if nonmovants cannot show with specificity a disputed material fact on an affirmative defense, that defense bars their claims and summary judgment is warranted. ***Helm v. Kansas***, 656 F.3d 1277, 1284 (10th Cir. 2011).

In deciding whether to grant summary judgment, generally the Court views the facts favorably to the nonmovant. *See **Simmat v. U.S. Bureau of Prisons***, 413 F.3d 1225, 1229 (10th Cir. 2005). But just because a factual inference on summary judgment is <u>possible</u> doesn't make it <u>reasonable</u>:

> If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff</u>.

*Anderson*, 477 U.S. at 252 (emphasis added). Permissible inferences must be within the range of reasonable probability, and the Court must withhold a case from a jury when a necessary inference is so tenuous it rests upon speculation and conjecture. ***Dillon v. Fibreboard Corp.***, 919 F.2d 1488, 1490 (10th Cir. 1990). The Court can't ask a jury "to make an inference based on an inference based on an inference." ***Bleil v. Williams Prod. RMT Co. LLC***, 911 F.Supp.2d 1141, 1163 (D. Colo. 2012). And

mere allegations or conclusions can't create material factual issues. *See SEC v. Smart*, 678 F.3d 850, 858 (10th Cir. 2012). Further, an alleged factual issue is "material" only if outcome-affecting under governing law, and "genuine" only if it'd allow a reasonable jury to return a plaintiffs' verdict. *Bennett v. Windstream Comm'cns, Inc.*, 792 F.3d 1261, 1265-66 (10th Cir. 2015).

Moreover, and especially in the context of § 1983 summary judgments, the facts are viewed in the light most favorable to the nonmovant "only if there is a 'genuine' dispute as to those facts." *Scott*, 550 U.S. at 380. A plaintiff's version of events must have record support. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2011). Hence, when opposing parties tell two different stories, one of which video evidence in the record blatantly contradicts so no reasonable jury could believe it, the Court can't adopt that version of the facts in deciding a summary judgment motion. *See Scott*, 550 U.S. at 380 ("so utterly discredited by the record that no reasonable jury could have believed [it]"). The Court "cannot ignore clear, contrary video evidence in the record depicting the events as they occurred." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1207 (10th Cir. 2017). And where video evidence contradicts a given argument's factual basis, that argument cannot be credited. *Farrell v. Montoya*, 878 F.3d 933, 938 (10th Cir. 2017). Plaintiffs' factual assertions must be "sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the <u>legal</u> question before the court." *Thomson*, 584 F.3d at 1316 (Holmes, J., concurring).

9

## IV. <u>ARGUMENT</u>

### A. Tenth Circuit Law on Qualified Immunity Generally

When a public employee ("official") raises qualified immunity, a presumption of immunity exists, and Plaintiffs must satisfy two elements: (1) Defendant's actions violated a federal constitutional right, and (2) that right was clearly established at the time of Defendant's allegedly unlawful actions. *See* ***Estate of Taylor v. Salt Lake City***, 16 F.4th 744, 757-58 (10th Cir. 2021). This is important because qualified immunity is more than a liability defense—it's immunity from suit. ***Mitchell v. Forsyth***, 472 U.S. 511, 526 (1985). It's also important because § 1983 "creates no rights," "is not a carte blanche statute authorizing recovery for negligence or other common law torts standing by themselves," and "is not a general tool to discipline" officials. ***Quezada v. Cnty. of Bernallilo***, 944 F.2d 710, 714 (10th Cir. 1991).

The doctrine permits resolution of claims against public officials before subjecting them "'either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." ***Id.*** at 526 (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 817-18 (1982)). The doctrine's "central purpose" is to protect officials "from undue interference with their duties and from potentially disabling threats of liability." ***Elder v. Holloway***, 510 U.S. 510, 514 (1994). Qualified immunity is both an entitlement not to stand trial, *see* ***Workman v. Jordan***, 958 F.2d 332, 336 (10th Cir. 1992), and a shield against trial-related burdens, *see* ***Pueblo Neighborhood Health Ctrs., Inc. v. Losavio***, 847 F.2d 642, 645 (10th Cir. 1988).

**Prove Constitutional Violation:** Defendant must've violated a federal constitutional right, with contours sufficient for a reasonable official in Defendant's position to have understood his conduct to be unlawful. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). There's an overarching touchstone of reasonableness for the belief of officials in Defendant's position about the lawfulness of their alleged conduct: "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Qualified immunity gives Defendant breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). Such immunity shields officials "who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004).

**Identify Clearly-Established Law:** For the law to be "clearly established" in this Circuit, generally a U.S. Supreme Court or Tenth Circuit decision must be on point, or other courts' clear weight of authority must find the law is as Plaintiffs maintain. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). An official can't have violated a clearly-established right unless the right's contours are sufficiently definite that any reasonable official in his shoes would've known he was violating it. *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). The law isn't defined "at a high level of generality," as "doing so avoids the crucial question whether

[Defendant] acted reasonably in the particular circumstances" he faced. *Id.* at 779. The Supreme Court "repeatedly" tells courts "not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015); *accord* ***White v. Pauly***, 580 U.S. 73, 79 (2017)(per curiam).

Further, "existing precedent" must've placed the statutory or constitutional question "beyond debate." ***Mullenix v. Luna***, 577 U.S. 7, 12 (2015)(per curiam). Specificity is "especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." ***Kisela v. Hughes***, 584 U.S. 100, 104 (2018)(per curiam)(quoting ***Mullenix***, 577 U.S. at 12). "[A] hint as to what the law may be" is no substitute. ***Carabajal v. City of Cheyenne***, 847 F.3d 1203, 1213 (10th Cir. 2017). Arguments and allegations aren't treated as factual. *See* ***Lawmaster v. Ward***, 125 F.3d 1341, 1349 (10th Cir. 1997). Speculation and conjecture the official might've overreacted "is insufficient to show a constitutional violation." ***Estate of Larsen v. Murr***, 511 F.3d 1255, 1263-64 (10th Cir. 2008). And mere "inference" or "implication" from case law "cannot put the unlawfulness of certain conduct beyond debate." ***Carabajal***, 847 F.3d at 1210.

## B. Relevant Law From U.S. Supreme Court, Tenth Circuit, and Other Relevant Courts About Open Fields, Plain View, and Curtilage

<u>**Generally:**</u> The Fourth Amendment provides, in its entirety:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

> supported by Oath or affirmation, and particularly describing the place
> to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This language secure citizens' rights to be "'secure in their persons' from government intrusion" regardless of the official's title. ***Dubbs v. Head Start, Inc.***, 336 F.3d 1194, 1205 (10th Cir. 2003); *see **City of Ontario v. Quon***, 560 U.S. 746, 755 (2010)("[T]he Amendment's protection extends beyond the sphere of criminal investigations."). Plaintiffs must plead and prove an "unprivileged trespass on property expressly protected by the Fourth Amendment – persons, houses, papers, and effects – for the purpose of conducting a search or seizure." ***U.S. v. Carloss***, 818 F.3d 988, 992 n.2 (10th Cir. 2016)(internal quotations omitted). For over a century, the U.S. Supreme Court hasn't extended the "persons, houses, papers, and effects" clause to "open fields". ***Hester v. U.S.***, 265 U.S. 57, 59 (1924). Open fields aren't "effects" because "the term 'effects' is less inclusive than 'property'." ***Oliver v. U.S.***, 466 U.S. 170, 176 (1984). In contrast to open fields is the "curtilage," *i.e.* "the land immediately surrounding and associated with the home", and "only the curtilage" warrants Fourth Amendment protections. ***Id.*** at 179 (citation omitted).[3]

**Open Fields:** "Open fields" encompasses "any unoccupied or undeveloped area" outside curtilage, and "need be neither 'open' nor a 'field' as those terms are used in common speech." ***Oliver***, 466 U.S. at 180 n.11. An open field (even privately owned) can be searched without probable cause, *see **Hester***, 265 U.S. at 59, because

---

[3] Defendant doesn't contend the search at issue was an administrative search. *E.g.*, ***City of L.A. v. Patel***, 576 U.S. 409, 419-23 (2015).

citizens can't "legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver*, 466 U.S. at 178. Officials legally can observe "that which is in plain view from an open field", *U.S. v. Hatfield*, 333 F.3d 1189, 1197 (10th Cir. 2003), and "there is no reasonable expectation of privacy" from visual observations made from open fields, *id.* at 1198, or "while in a public place", *U.S. v. Dunn*, 480 U.S. 294, 304 (1987); *see U.S. v. Pinter*, 984 F.2d 376, 379 (10th Cir. 1993)(no "objective" basis, "either probable cause or reasonable suspicion", is needed to enter open field).

**Curtilage:** "At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes." *Oliver*, 466 U.S. at 180 (internal quotation omitted). But "no reasonable expectation" exists a home and its curtilage will be "free from ordinary visual surveillance." *Hatfield*, 333 F.3d at 1196. Indeed, mere inclusion within the curtilage doesn't prohibit observation, as "[t]he Fourth Amendment protection of the home has never been extended to require [officials] to shield their eyes when passing by a home on public thoroughfares." *California v. Ciraolo*, 476 U.S. 207, 213 (1986).

A "curtilage" decision requires the Court to assess: (a) did the property owner show a subjective expectation of privacy in the "curtilage", and (b) is that expectation objective, *i.e.* recognized by society as reasonable. *See Hatfield*, 333 F.3d at 1195 (quoting *Katz v. U.S.*, 389 U.S. 347, 361 (1967)(Harlan, J., concurring)). Four factors are relevant to assess claimed curtilage: (1) its proximity to the home; (2) whether it's

in an enclosure around the home; (3) the nature of its uses; and (4) the steps the plaintiffs took to protect it from passerby observation. *See Dunn*, 480 U.S. at 301.

## C. Undisputed Facts Show Plaintiffs' Claim Is Barred by Applicable Law

<u>No Violation of Constitutional Rights:</u> Given all relevant circumstances Defendant confronted, Defendant didn't violate Plaintiffs' constitutional rights, as basic application of the *Dunn* factors confirms the wide-open area onto which Defendant drove constituted open fields in which Plaintiffs lacked any expectation of privacy and to which the Fourth Amendment's warrant requirement didn't extend.

<u>First</u>, the specific spot where the pipeline was being installed, wasn't close enough to the fifth wheel to constitute "curtilage". That's because that specific spot was about 40 feet away from both the fifth wheel, and also about 40 feet away from Defendant's closest approach to the installation spot, meaning Defendant didn't come within 80 feet, let alone a single-digit radius, of the fifth wheel. [SUMF ¶¶36-37]. Areas near homes are held <u>outside</u> the curtilage when merely 20-50 feet away. *E.g.*, *U.S. v. Bell*, 191 F.App'x 663, 668 (10th Cir. 2006)(50 feet); *U.S. v. Brady*, 993 F.2d 177, 178-79 (9th Cir. 1993)(45 feet); *U.S. v. Jackson*, 728 F.3d 367, 374 (4th Cir. 2013)(trashcan with drug paraphernalia, on grass strip beyond patio and "at least 20 feet" from backdoor in apartment complex with shared sidewalks, not in curtilage); *U.S. v. Wilburn*, 2012 U.S.Dist.LEXIS 66300, at *8-11 (E.D. Ky. Mar. 5, 2012)(a propane tank 20-30 feet away from trailer wasn't within curtilage).

<u>Second</u>, there was no enclosure around either the fifth wheel or any component of the Property reasonably near it "demark[ing] a specific area of land immediately

adjacent to the house that is readily identifiable as part and parcel of the house."
***Dunn***, 480 U.S. at 302; [SUMF ¶¶8-13, 20, 42]. The Property's perimeter fence (if one
existed) doesn't count—if a fence around <u>17 acres</u> "is not the sort of 'enclosure
surrounding the home'" ***Dunn*** contemplated, *see **Rieck v. Jensen***, 651 F.3d 1188,
1193 (10th Cir. 2011); *see **U.S. v. Belisle***, 2013 U.S.Dist.LEXIS 17805, at *15 (D. Me.
Feb. 11, 2013)("Defendant's argument that the camper's curtilage extended to the
perimeter fence on Johnson's property would mean that the little camper enjoyed a
curtilage of approximately 70-80 acres. That theory stretches the curtilage concept
beyond recognition."), then there's no way a barely colorable fence around <u>143 acres</u>
qualifies. Especially because to be curtilage, the area's boundaries must be "clearly
marked," *see **Florida v. Jardines***, 569 U.S. 1, 7 (2013), but no such markings existed
here. *E.g.*, ***U.S. v. Beene***, 818 F.3d 157, 162-63 (5th Cir. 2016)(driveway not curtilage
given only partial fencing and unobstructed view from public street); ***Dunham v.
Kootenai Cnty.***, 690 F.Supp.2d 1162, 1172-73 (D. Id. 2010); ***U.S. v. Hogan***, 122
F.Supp.2d 358, 370 (E.D.N.Y. 2000)(stockade fence which didn't enclose front of house
by extending from side of house to area behind house, wasn't curtilage).

<u>Third</u>, the Property was zoned agricultural and by Plaintiffs' admission was
being put to that use, which use repeatedly is found to constitute open fields. [SUMF
¶¶7, 43]; *e.g.*, ***U.S. v. Anderson-Bagshaw***, 509 F.App'x 396, 403-04 (6th Cir.
2012)("Without a doubt, the 'barnyard' and 'pasture' areas were outside the curtilage
of Bagshaw's home."); ***U.S. v. Van Damme***, 48 F.3d 461, 464 (9th Cir. 1995).
Regardless, even a home's front yard isn't curtilage if there's insufficient objective

evidence the yard is being "used for intimate activities of the home". ***Reeves v. Churchich***, 484 F.3d 1244, 1255 (10th Cir. 2007). Particularly not where, as here, the area adjoining the cistern and the fifth wheel was used for storage of multiple trailers, multiple vehicles, and piles of junk. [SUMF ¶¶31-32]; *see **Bell***, 191 F.App'x at 668 (area in question appeared to be "used to store vehicles and trailers, hardly a private activity associated with the intimacy of a home"); ***U.S. v. Powell***, 840 F.App'x 316, 319 (10th Cir. 2020)(boat storage disfavored curtilage). In any event, installing a pipeline and cistern isn't closely associated with intimate domestic activity.

Fourth, Plaintiffs took no substantial steps to shield any activity on the Property from the public eye. [SUMF ¶¶8-13, 18-20]. Any "No Trespassing" sign they erected is irrelevant, as "[i]t is well-established that 'No Trespassing' signs will not prevent an officer from entering privately owned 'open fields.'" ***Carloss***, 818 F.3d at 995; *see **Oliver***, 466 U.S. at 179 ("it is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields in rural areas"); ***Walker v. Wegener***, 2012 U.S.Dist.LEXIS 136210, at *39-42 (D. Colo. Aug. 30, 2012). And any perimeter fence or open gate is likewise irrelevant, because those structures can be navigated without invoking the Fourth Amendment. *See **Dunn***, 480 U.S. at 301-05; ***U.S. v. Lewis***, 240 F.3d 866, 871 (10th Cir. 2001)(no reasonable expectation of privacy even though property was surrounded with an eight-foot fence, locked gates, and numerous "No Trespassing" signs). Nor does a "homeowner" telling an official standing on open acreage that he didn't have a right to be there invoke the Fourth Amendment. *See **Rieck***, 651 F.3d at 1189, 1191-94 (official's entry onto non-

curtilage private property, by opening closed gate with "No Trespassing" sign and despite homeowner telling him he had no right to enter, wasn't unconstitutional).

DE MINIMIS VIOLATION: In any event, such timeframe was a de minimis violation and not an actionable constitutional wrong. *See U.S. v. Jacobsen*, 466 U.S. 109, 125-26 (1984); *Artes-Roy v. City of Aspen*, 31 F.3d 958, 963 (10th Cir. 1994)(civil code inspector didn't violate constitutional rights by visiting property to conduct code enforcement inspection, and even if he did it was unactionable de minimis violation). Before Defendant visited the Property and stayed there for less than ten minutes on July 13, 2021, he understood there to be a potential code violation. [SUMF ¶6]. At no time during his brief visit did Defendant physically damage the Property. [SUMF ¶44]. And Defendant saw all he needed to confirm regarding a potential violation before entering the Property. [SUMF ¶¶8-13].

However, mere trespass isn't a constitutional violation. *See U.S. v. Karo*, 468 U.S. 705, 713 (1984). And a lack of permanent injury to property, with lack of intent (or ability) to make an arrest, confirms even if the Fourth Amendment was violated (which isn't conceded), any violation wasn't of federal constitutional import. *E.g.*, *Porter v. Jewell*, 453 F.App'x 934 (11th Cir. 2012)(damage to doorframe by official conducting welfare check, which subsequently was fixed, not actionable); *Parker v. Moriarty*, 2018 U.S.Dist.LEXIS 38581, at *6-12 (S.D. Fla. Mar. 8, 2018).

**No Clearly-Established Law:** Even if Defendant engaged in an unlawful warrantless search during his less-than-ten-minute visit to the Property, which Defendant doesn't concede, the law wasn't clearly established in the Tenth Circuit

that Defendant's acts or failures to act were unconstitutional "beyond debate." No U.S. Supreme Court or Tenth Circuit precedent, issued on or before July 13, 2021, specifically held entering a vast parcel of real property: with no four-walled structure; with no colorable fence or improved area sufficient to notify anyone any part of the property except maybe a camper was "dwelling-like"; which was used for activities not commonly associated with the intimacy of the home such as storing vehicles and junk, farming, and animal husbandry; with no substantial steps to shield any activity on the Property from the public eye; where Defendant didn't come within either 80 feet of the "dwelling-like" conveyance or 40 feet of the area where construction was being done; and where Defendant simply was there to conduct a simple compliance visit and ask some simple questions, violated anybody's constitutional rights.

In contrast, several opinions reasoned: merely telling an official that he didn't have a right to be there doesn't invoke the Fourth Amendment, *see Rieck*, 651 F.3d at 1189, 1191-94; "No Trespassing" signs, and even eight-foot-tall fences aren't enough to create a reasonable expectation of privacy, *Carloss*, 818 F.3d at 995; *Lewis*, 240 F.3d at 871; a fence around 17 acres, a parcel of land more than eight times smaller than the Property, doesn't show the land is associated with the home within the Fourth Amendment's meaning, *see Rieck*, 651 F.3d at 1193; storage of vehicles and trailers similarly isn't associated with the home, *Powell*, 840 F.App'x at 319; *Bell*, 191 F.App'x at 668; and, especially, observing activities being conducted in one's plain view from a publicly accessible vantage point like a road which isn't part of the parcel at issue [La Deora Blvd., *see* SUMF ¶¶7-13] doesn't invoke the Fourth

Amendment either, **Hatfield**, 333 F.3d at 1196-97. These cases, and all others cited above at a minimum, confirm the law wasn't clearly established that Defendant's site visit that day was a "search" with which the Fourth Amendment could be concerned.

Ultimately, the Property simply was part of those "many millions of acres that are 'open fields'" in our country which aren't even "close to any structure and so not arguably within the curtilage." **Oliver**, 466 U.S. at 182 n.12. As such. the weight of authority from the Tenth Circuit and other courts indicates the course of Defendant's conduct either didn't implicate the Fourth Amendment at all or else was allowed by the Fourth Amendment, so it cannot be said the "clearly established" weight of authority finds the law as Plaintiffs maintain, and at best Defendant's actions occupied that "hazy border" in which he enjoys qualified immunity. *See* **Waters v. Coleman**, 632 F.App'x 431 (10th Cir. 2015)(reversing determination that it was clearly established the force used was unreasonable).

**D. Plaintiffs Cannot Assert Entitlement to Exemplary Damages at Trial**

Finally, Plaintiffs aren't entitled to exemplary damages against Defendant, for want of requisite intent. A § 1983 plaintiff claiming exemplary damages must prove the defendant's conduct either "is shown to be motivated by evil motive or intent" or "involves reckless or callous indifference to" his federal constitutional rights. **Smith v. Wade**, 461 U.S. 30, 56 (1983); **Jolivet v. Deland**, 966 F.2d 573, 577 (10th Cir. 1992)("acted with malice or knew [his] actions were unconstitutional"). Even if Defendant's actions were objectively unconstitutional as Plaintiffs allege, that fact isn't considered for whether exemplary damages can be awarded. **Id.** (no exemplary

damages against § 1983 defendant who "stopped his actions after he was informed they were unconstitutional"). In discovery, Plaintiffs adduced no evidence Defendant objectively acted with malice, with evil motive, willfully, wantonly, or with reckless indifference to their civil rights, or that he objectively knew his actions were unconstitutional or contrary to clearly-established law — dooming any request for exemplary damages. *See Smith*, 461 U.S. at 56; *Jolivet*, 966 F.2d at 577.

## V. <u>CONCLUSION</u>

In conclusion, for the above reasons, Defendant Jeffrey Bensman respectfully requests that this Court enter an Order: granting Defendant's Motion for Summary Judgment; dismissing Plaintiffs' Complaint against him with prejudice; awarding him costs of suit; and entering all other and further relief deemed just and proper.

Dated and respectfully submitted this 21st day of March, 2025.

> *s/ Matthew J. Hegarty*
> Matthew J. Hegarty
> HALL & EVANS, L.L.C.
> 1001 17th Street, Ste. 300
> Denver, CO 80202
> T: 303-628-3300
> F: 303-628-3368
> hegartym@hallevans.com
> **ATTORNEY FOR DEFENDANT**
> **JEFFREY BENSMAN**

I hereby certify the foregoing Motion complies with the type-volume limitation within DDD Civ. P.S. III(A)(1). Specifically, this Motion contains 5,480 words.

> *s/ Matthew J. Hegarty*
> Matthew J. Hegarty

## CERTIFICATE OF SERVICE [CM/ECF]

I hereby certify that, on March 21, 2025, I electronically filed the foregoing

**MOTION FOR SUMMARY JUDGMENT FROM DEFENDANT JEFFREY**

**BENSMAN** with the Clerk of Court via the CM/ECF system, which will send

notification of the filing to the following email addresses:

Taylor G. Minshall
Tanner W. Havens
RELEVANT LAW – COLO. SPRINGS
tminshall@relevantlaw.com
thavens@relevantlaw.com
***Attorney for Plaintiffs***

Leslie L. Schluter
DAGNER | SCHLUTER | WERBER LLC
lschluter@lawincolorado.com
***Attorneys for Defendants Huerfano***
***County and Sam Jensen***

William T. O'Connell III
THOMPSON, COE, COUSINS & IRONS LLP
woconnell@thompsoncoe.com
***Attorneys for Defendant Terry Sandoval***

*s/ Erica Cameron*
Erica Cameron, Legal Assistant