IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610-DDD-MDB

SUSAN DEHERRERA, and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity,
SAM JENSEN, in his individual capacity,

    Defendants.

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

Taylor G. Minshall of Relevant Law hereby submits Plaintiffs' Motion for Summary Judgment pursuant to Rule 56, and in support thereof, states as follows:

### STATEMENT OF LAW

Rule 56 provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. At all times relevant, Jeff Bensman was Chief Code Enforcement Officer for Huerfano County. Doc. 57 at 5-6.

2. At all times relevant, Terry Sandoval was Building Inspector for Huerfano County. *Id.*

3. At all times relevant, Sam Jensen was County Planner for Huerfano County. *Id.*

4. On or about July 14, 2021, Susan DeHerrera and Jose Guerrero resided in an RV on the northern side of an undeveloped approximately 142-acre parcel of land owned by DeHerrera in Huerfano County, Colorado. Doc. 20 at 4; Doc 20-1 at 1; Ex. 1 at ¶¶2-3; Ex. 2 at ¶¶2-3; Ex. 3; Ex. 5; Ex. 6 at 2-8.

5. On July 14, 2021, Plaintiffs had contractors install a water well pump to their water well located near the northwest corner of the subject property, approximately 258 feet south of La Deora Boulevard. Doc. 20 at 5; Ex. 1 at ¶4; Ex. 2 at ¶4; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.

6. At all times relevant, Plaintiffs were the owners of said water well and water pump. Ex. 1 at ¶5; Ex. 2 at ¶5; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.

7. At all times relevant, Plaintiffs' water well and water pump were installed beneath the ground and neither visible nor available to the public. Doc. 20 at 5; Ex. 1 at ¶6; Ex. 2 at ¶6; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.

8. At all times relevant, Plaintiffs did not have water piped into their RV. Ex. 1 at ¶7; Ex. 2 at ¶7; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.

9. At all times relevant, Plaintiffs used the water well and water pump as their primary source of water through a connected hose. Ex. 1 at ¶8; Ex. 2 at ¶8.

10. On or about July 14, 2021, the RV in which Plaintiffs resided was located several feet from the excavated water well site on the southwest side of the site. Ex. 1 at ¶9; Ex. 2 at ¶9; Ex. 3; Ex. 5; Ex. 6 at 2-8.

11. At all times relevant, Plaintiffs maintained their water well and water pump privately and excluded the public. Ex. 1 at ¶10; Ex. 2 at ¶10.

12. Plaintiffs' excavation of the water well site and installation of the water well pump drew the attention of Jeff Bensman and Terry Sandoval. Doc. 20 at 3, 5; Ex. 1 at ¶¶4, 12; Ex. 2 at ¶¶4, 12.

13. On or about July 14, 2021, Bensman and Sandoval drove onto the subject property from La Doura Boulevard to investigate the work at the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶¶4, 12; Ex. 2 at ¶¶4, 12; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3.

14. Sandoval parked his white truck on Plaintiffs' property, about 258 feet South of La Deora Boulevard, and just a few feet away from the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶13; Ex. 2 at ¶13; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3.

15. Bensman parked his dark colored truck on Plaintiffs' property, directly behind Sandoval's truck. Doc. 20 at 5; Ex. 1 at ¶14; Ex. 2 at ¶14; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3.

16. Bensman and Sandoval both exited their vehicles and approached within a few feet of the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶15; Ex. 2 at ¶15; Ex. 3; Ex. 5; Ex. 6 at 1-8.

17. Susan DeHerrera and Jose Guerrero repeatedly demanded that Bensman and Sandoval leave the subject property. Doc. 20 at 5, 7; Ex. 1 at ¶16; Ex. 2 at ¶16; Ex. 3; Ex. 5.

18. Bensman and Sandoval continued their investigation of the water well work on the subject property. Doc. 20 at 5, 7; Ex. 1 at ¶17; Ex. 2 at ¶17; Ex. 3; Ex. 5; Ex. 6 at 2-8.

19. Bensman and Sandoval walked near the edge of the excavated water well site and visually inspected the surface ground and the partially visible soil and contents beneath the ground. Ex. 1 at ¶18; Ex. 2 at ¶18; Ex. 3; Ex. 5; Ex. 6 at 4-8.

20. The RV in which Plaintiffs resided was located several feet from the excavated water well site, opposite the side of the site which Bensman and Sandoval visually inspected. Ex. 1 at ¶19; Ex. 2 at ¶19; Ex. 3; Ex. 5; Ex. 6 at 2-8.

21. Bensman and Sandoval questioned Plaintiffs about whether the water well work was being done under a permit and license. Ex. 1 at ¶20; Ex. 2 at ¶20; Ex. 3; Ex. 5.

22. Bensman and Sandoval questioned the on-site contractors about whether the water well work was being done under a permit and license. Doc. 20 at 5; Ex. 1 at ¶21; Ex. 2 at ¶21; Ex. 3; Ex. 4 at 2; Ex. 5.

23. Bensman spoke with an off-site company representative by telephone and inquired whether the company's work on the subject property was being done under a permit and license for such work in Huerfano County. Ex. 5.

24. Huerfano County's written code enforcement policy stated that code enforcement officers must obtain administrative warrants to enter property where they have been denied access, without limitation. Doc. 20-2 at 10-11.

25. Prior to July 14, 2021, Plaintiffs accessed, read, and understood the Huerfano County code enforcement policy made available publicly via Huerfano County's website. Doc. 20-2 at 10-11; Ex. 1 at ¶22; Ex. 2 at ¶22.

26. Prior to July 14, 2021, Plaintiffs understood that the Huerfano County code enforcement policy required code enforcement officers to obtain an administrative warrant when access to a property was denied by the owner or resident. Doc. 20-2 at 10-11; Ex. 1 at ¶23; Ex. 2 at ¶23.

27. Bensman testified previously that he was "always" investigating while physically on the subject property. Doc. 20-4 at 30.

28. Bensman testified previously that he never obtained Plaintiffs' permission to investigate physically on the property in question because he understood it was never required. Doc. 20-4 at 31.

29. Bensman testified previously that he never obtained a warrant to investigate on the property in question because he understood it was never required. Doc. 20-4 at 31.

30. Bensman testified previously that his actions on the subject property were in accordance with the instructions that he received from the written Huerfano County code enforcement policy and a county attorney. Doc. 20-4 at 31.

31. Beginning at the 5-minute 30-second mark on Bensman's bodycam recording of his encounter on the subject property on or about July 14, 2021, Bensman states, "Well, we came out to see what he (Jose Guerrero) is doing, and he didn't like that idea. But I am an officer of the court, so I don't have to have any kind of special documentation to come onto anybody's property at any time." Ex. 5.

## ARGUMENT

### I. Bensman's and Sandoval's Warrantless Inspection and Investigation of Plaintiffs' Water Well Site Was Within the Protected Curtilage of Plaintiffs' Home.

*Legal Standard for Determining Curtilage.*

The Fourth Amendment's protection of curtilage has long been black letter law. "[W]hen it comes to the Fourth Amendment, the home is first among equals." Florida v. Jardines, 569 U.S. 1, 6, (2013). "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Id.* (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)). To give full practical effect to that right, the Court considers curtilage—"the area 'immediately surrounding and associated with the home' " — to be "'part of the home itself for Fourth Amendment purposes.'" Jardines, 569 U.S. at 6 (quoting Oliver v. United States, 466 U.S. 170, 180, (1984)). The "'conception defining the curtilage' is

... familiar enough that it is 'easily understood from our daily experience.'" Jardines, 569 U.S. at 7 (quoting Oliver, 466 U.S. at 182, n. 12.). When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Jardines, 569 U.S. at 11. Such conduct is presumptively unreasonable absent a warrant. Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018). Relevant factors in determining whether a certain area is protected as curtilage include: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987).

*Application of the Dunn Factors.*

In applying the *Dunn* factors, Plaintiffs' water well site, and the contents therein, were part of the curtilage of their home.

First, as to the proximity of the area searched to the home, Plaintiffs' water well and newly installed pump were located just several feet from their RV home. Doc. 20 at 5; Ex. 1 at ¶¶1-3, 9; Ex. 2 at ¶¶1-3, 9; Ex. 3; Ex. 5; Ex. 6 at 2-8.

Second, as to the nature of the use of the area searched, Plaintiffs did not have water piped into their RV but used the detached, underground water well and pump as their primary source of water. Ex. 1 at ¶¶5-6; Ex. 2 at ¶¶5-6; Ex. 3; Ex. 5; Ex. 6 at 2-8.

Accordingly, the water well and pump were extensions of Plaintiffs' RV home, both physically (in proximity) and psychologically (in terms of privacy, practical daily use, and necessity), and thus, curtilage. *Id.* "The protection afforded the curtilage is essentially a

protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." <u>California v. Ciraolo</u>, 476 U.S. 207, 212-13 (1986). Just like the front porch, side garden, or area "outside the front window," <u>Jardines</u>, 569 U.S. at 6, the water well site that Bensman and Sandoval searched (Doc. 20 at 5, 7; Ex. 1 at ¶¶2, 4, 9, 12, 15, 17-19; Ex. 2 at ¶¶2, 4, 9, 12, 15, 17-19; Ex. 3; Ex. 5; Ex. 6 at 2-8) constitutes "an area adjacent to the home and 'to which the activity of home life extends,'" and so is properly considered curtilage. <u>Jardines</u>, 569 U.S. at 7, (quoting <u>Oliver</u>, 466 U.S. at 182, n. 12.).

Third, as to the steps taken to protect the area from observation and access, the water well and pump were installed beneath the ground and neither visible nor available to the public. Doc. 20 at 5; Ex. 1 at ¶¶2-6, 8-10; Ex. 2 at ¶¶2-6, 8-10; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8. Plaintiffs used the water well and pump as their private and primary source of water, to the exclusion of the public. *Id.* Further, the excavated water well site was located approximately 258 feet from the public roadway, La Deora Boulevard, without public access to the site. *Id.* Bensman and Sandoval were only able to access and visibly inspect the surface of the water well site, and the partially visible contents beneath the surface, because they drove off-road and intruded onto Plaintiffs' private property, exited their vehicles, walked up near the edge of the excavation site, and peered in. Doc. 20 at 5, 7; Ex. 1 at ¶¶12-19; Ex. 2 at ¶¶12-19; Ex. 3; Ex. 5; Ex. 6 at 1-8. Moreover, the fact that the water well and pump were installed underground further confirms that Plaintiffs took measures to exclude these from the public's view and access, which provided Plaintiffs with a reasonable expectation of privacy in the same. Doc. 20 at 5; Ex. 1 at ¶¶2-6, 8-10; Ex. 2 at ¶¶2-6, 8-10; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.

7

Additionally, in *Collins*, the U.S. Supreme Court held that a partially visible, open air car port located on a person's real property adjacent to their home was considered curtilage, affording the owner with the same Fourth Amendment protections as if the structure was a fully covered and attached garage. Collins, 138 S. Ct. at 1674-75 ("So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage"). Justice Sotomayor delivered the opinion and reasoned that a bright line rule allowing warrantless searches of visible vehicle storage areas would unfairly protect persons who had the resources to afford a fully enclosed garage at their residence and deprive others who lacked such resources from any individualized consideration as to whether the areas in which they store their vehicles qualify as curtilage. *Id.* at 1675.

In the same way, although part of the excavated surface of Plaintiffs' water well site may have been partially visible from the adjacent public roadway, La Deora Boulevard, this did not entitle Bensman and Sandoval to trespass, conduct a warrantless search of the water well site's surface and partially visible contents beneath, or obtain on-site investigative evidence and video recordings. Ex. 1 at ¶¶4, 12-15, 17-21; Ex. 2 at ¶¶4, 12-15, 17-21; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-8. Moreover, Plaintiffs lived humbly and did not have water piped into their RV, as most homes do, but relied on their detached water well for their daily needs. Ex. 1 at ¶¶6-8; Ex. 2 at ¶¶6-8. Although the water well site was detached—located several feet from Plaintiffs' RV— and its excavated surface may have been partially visible from La Deora Boulevard, these should not exclude the water well site from the Fourth Amendment protections to Plaintiffs' home and curtilage. "[T]he most frail cottage in the kingdom is absolutely entitled to the same

guarantees of privacy as the most majestic mansion." Collins, 138 S. Ct. at 1675 (quoting United States v. Ross, 456 U.S. 798, 822 (1982)).

Application of the *Dunn* factors makes clear that Plaintiffs' water well site and the contents beneath were part of the curtilage of their home and thus protected under the Fourth Amendment. Dunn, 480 U.S. at 301.

*Defendants' Warrantless Inspection and Investigation of Plaintiffs' Water Well Site.*

When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Jardines, 569 U.S. at 11. Such conduct, thus, is presumptively unreasonable absent a warrant. Collins, 138 S. Ct. at 1670. While "[l]aw enforcement officers need not 'shield their eyes when passing by a home on public thoroughfares,' the ability visually to observe an area protected by the Fourth Amendment does not give officers the green light physically to intrude on it." *Id.* at 1673, n. 3 (quoting Ciraolo, 476 U.S. at 213) (citing Jardines, 569 U.S. at 7-8). It certainly does not permit an officer physically to intrude on curtilage and gather evidence to confirm that the resident has violated the law. *Id.*

Bensman and Sandoval started their investigation on a public roadway — La Deora Boulevard. Ex. 1 at ¶12; Ex. 2 at ¶12; Ex. 3; Ex. 4 at 1-2; Ex. 5. They continued their investigation by driving off La Deora Boulevard and physically intruded about 258 feet onto the northwest side of Plaintiffs' private property, at the excavated well site, where they parked their vehicles. Doc. 20 at 5; Ex. 1 at ¶¶2, 12-14; Ex. 2 at ¶¶2, 12-14; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-2. However, not satisfied with visually observing from their vehicles, Bensman and Sandoval exited their vehicles, ignored Plaintiffs' repeated refusals to their access, approached

9

near the edge of the excavated water well site and visually inspected the surface ground and partially visible contents beneath the surface, located just several feet from Plaintiffs' RV home. Doc. 20 at 5, 7; Ex. 1 at ¶¶15-19; Ex. 2 at ¶¶15-19; Ex. 3; Ex. 5; Ex. 6 at 3-8. Bensman and Sandoval furthered their investigation by interrogating Plaintiffs, the on-site contractors, and even an off-site contractor by telephone, regarding the water well work being done on Plaintiffs' property. Ex. 1 at ¶¶20-21; Ex. 2 at ¶¶20-21; Ex. 3; Ex. 5. In addition to gathering investigative information, Bensman also made a video recording of the investigation on Plaintiffs' property on or about July 14, 2021. Ex. 5; Ex. 6. All of Bensman's and Sandoval's said actions were in furtherance of their investigation on Plaintiffs' property and purposed to gather information and evidence, constituting an unlawful, warrantless search within Plaintiffs' protected curtilage, in violation of the Fourth Amendment. <u>Jardines</u>, 569 U.S. at 11; <u>Collins</u>, 138 S. Ct. at 1670, 1673, n. 3 (the ability visually to observe an area protected by the Fourth Amendment does not permit an officer to physically intrude on it or gather evidence to confirm that the resident has violated the law without a warrant).

## II. **Bensman and Sandoval's Warrantless Inspection and Investigation of the Water Well Site and Its Contents Constituted an Unreasonable Search of Plaintiffs' Effects.**

*A Warrant is Required to Search an Effect on Private Property.*

The Fourth Amendment to the U.S. Constitution specifically protects "persons, houses, papers, and effects." In *United States v. Jones*, the Court made clear that "effects" receive the protection of the Fourth Amendment, just as persons, houses, and papers do. 565 U.S. at 400, 404-05 (2012) (occupying an effect in order to obtain information constitutes a "search"). Further, the constitutional baseline for all searches – whether of persons, houses, papers, or effects – is that "searches conducted outside the judicial process, without prior approval by

judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). *See also* Jones v. United States, 357 U.S. 493, 499 (1958) ("The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn. . . ."). Thus, a warrant is required for the search of an effect on private property, just as one is required for searches of people, houses, and papers. The U.S. Supreme Court has never created a general exception to the warrant requirement for an effect just because it is an effect. Therefore, the proper rule for the search of an effect on private land that is not open to the public is that a warrant is required to search the effect, absent some other exception (such as exigent circumstances).

Accordingly, even if the Court found that Plaintiffs' water well site was not within the curtilage of Plaintiffs' home, the well site and the contents beneath the surface, including the water well and the pump, were Plaintiffs' *effects* which required a warrant for a search. Doc. 20 at 5; Ex. 1 at ¶¶2-10; Ex. 2 at ¶¶2-10; Ex. 3; Ex. 5; Jones, 565 U.S. at 404-05; Katz, 389 U.S. at 357; Jones, 357 U.S. at 499.

*Plaintiffs Had a Reasonable Expectation of Privacy in Their Water Well Site and Its Contents.*

To establish that a person has a "constitutionally protected reasonable expectation of privacy" in their effects, whether located on or beneath an open field, the person must have "exhibited an actual expectation of privacy and that the expectation be one that society recognizes as reasonable." Katz, 389 U.S. at 361. Relevant considerations include the uses to which the individual put the property and the societal understanding that certain areas deserve scrupulous protection from government intrusion. Oliver, 466 U.S. at 178.

Here, Plaintiffs intentionally placed their RV home several feet from the water well site and installed the water well pump underground on their private property. Doc. 20 at 5; Ex. 1 at ¶¶2-10; Ex. 2 at ¶¶2-10; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 3-8. Plaintiffs used the underground water well exclusively as their primary water source and intended to exclude the public from its access and use. Ex. 1 at ¶¶2-10; Ex. 2 at ¶¶2-10; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 3-8. The fact that the water well and water pump were buried on Plaintiffs' private property further confirms that Plaintiffs intended to exclude the public and maintain the water well site privately. *See* California v. Greenwood, 486 U.S. 35, 40 (1988) (exposing items to the public is indication that no reasonable expectation of privacy exists). Moreover, because the water well was Plaintiffs' primary source of water (Ex. 1 at ¶8; Ex. 2 at ¶8.), the intimate nature of the site and the precious resource it provided Plaintiffs infers that they had a reasonable expectation of privacy in the water well site—both its surface and its contents below—deserving scrupulous protection from government intrusion. Katz, 389 U.S. at 361; Oliver, 466 U.S. at 178.

If the water well site's buried items—the water well and water pump—are protected, so too is the soil that surrounds them, even if located under an open field. This expectation is one society is prepared to recognize as reasonable. Plaintiffs clearly did not intend to grant any unauthorized persons access to their private property, let alone access to their water well site and its contents below ground. If a person places items underground on his own property, that person has a right of privacy in the things buried. The government may not conduct a warrantless search for those items. To the extent that there is an expectation of privacy in the things buried, there must also be an expectation of privacy in the soil that may reveal the presence of the thing buried. If this were not the case, then the right to privacy in the things

buried would not be scrupulously protected. Reeves Bros., Inc., v. U.S.E.P.A., 956 F. Supp. 665, 670 (W.D. Va. 1995) (citing Oliver, 466 U.S. at 178).

Additionally, Huerfano County's written code enforcement policy provided Plaintiffs with a reasonable expectation of privacy in being free from warrantless searches of their private property and effects. The policy stated that code enforcement officers must obtain administrative warrants to enter property and investigate where they have been denied access, without limitation. Doc. 20-2 at 10-11. Prior to July 14, 2021, Plaintiffs accessed and read the Huerfano County code enforcement policy made available publicly via Huerfano County's website. Doc. 20-2 at 10-11; Ex. 1 at ¶22; Ex. 2 at ¶22. Prior to July 14, 2021, Plaintiffs understood that the Huerfano County code enforcement policy required code enforcement officers to obtain an administrative warrant when access to a property was denied by the owner or resident. Doc. 20-2 at 10-11; Ex. 1 at ¶23; Ex. 2 at ¶23. Plaintiffs reasonably relied on this policy requirement when they repeatedly denied Bensman and Sandoval permission to their property during the encounter on or about July 14, 2021. Doc. 20 at 5, 7; Ex. 1 at ¶16; Ex. 2 at ¶16; Ex. 3; Ex. 5. Plaintiffs had a reasonable expectation that Bensman and Sandoval would comply with the policy's requirement by immediately leaving their property when access was denied without an warrant. *Id.*

*Defendants' Warrantless Inspection and Investigation of the Water Well Site Was an Unreasonable Search.*

Plaintiffs' water well and newly installed well pump were both *effects* which were located underground and generally concealed from public view. Doc. 20 at 5; Ex. 1 at ¶¶4-10; Ex. 2 at ¶¶4-10; Ex. 3; Ex. 5; Ex. 6 at 3-8. Accordingly, Plaintiffs had a reasonable expectation of privacy that their underground water well and pump would be free from unreasonable searches. By

physically intruding on Plaintiffs' private property, inspecting the surface and below surface of the excavated water well site, interrogating Plaintiffs and the on-site and off-site contractors about the well site work, and video-recording the on-site investigation (Doc. 20 at 5, 7; Ex. 1 at ¶¶12-21; Ex. 2 at ¶¶12-21; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 3-8.), Bensman and Sandoval invaded Plaintiffs' Fourth Amendment interest in their effects – the items searched – the water well site and its contents. Katz, 389 U.S. at 361; Oliver, 466 U.S. at 178; *Reeves*, 956 F. Supp. at 670.

### III. Because the Open Fields Doctrine Only Authorizes Entry and Observation from an Open Field, It Cannot Serve as a Basis for the Warrantless Search of Plaintiffs' Effects.

The open fields doctrine is incapable of resolving the dispute at the heart of this case: whether a warrant was required for the search of Plaintiffs' water well site and its contents. That is because the open fields doctrine only extends to entry and observation from those fields, not to searches of any effects that may be found within them.

Even if this Court determined that the water well site was not within the curtilage of Plaintiffs' home, the site's surface and its contents beneath the surface (i.e., the water well, pump and surrounding soil) were Plaintiffs' *effects* which required a warrant for a search. The above stated actions taken by Bensman and Sandoval—to gather information and evidence as part of their code enforcement investigation—takes the facts of this case outside of the open fields doctrine. Accordingly, the warrantless search of Plaintiffs' effects (i.e., the water well site surface and its contents below ground) can only comport with the Fourth Amendment upon other grounds separate from open fields doctrine.

The U.S. Supreme Court has never applied the open fields doctrine to the inspection of effects on private property. The Court has implied that an effect in an open field is entitled to Fourth Amendment protection, unlike the "field" itself, and that the doctrine only applies to observations, and nothing more. In *Jones* and *Jardines* the Court explained that open fields are not protected because they are not enumerated in the text of the Fourth Amendment – but contrasted that to effects. Jones, 565 U.S. at 411 ("The Government's physical intrusion on [an open field] – unlike its intrusion on the 'effect' at issue here – is of no Fourth Amendment significance."); Jardines, 569 U.S. at 6. And in *Jones*, of course, it squarely held that a trespass on an effect – in that case a car in a public parking lot – is a search under the Fourth Amendment. Jones, 565 U.S. at 410. Therefore, an effect in an open field is still an "effect," and is still textually protected by the Fourth Amendment. The open fields doctrine has nothing to say about effects, wherever they may be. Therefore, the proper rule for the search of an effect on private land that is not open to the public is that a warrant is required to search the effect, absent some other exception (such as exigent circumstances). The open fields doctrine presents no reason to treat effects in "open fields" any differently than effects on the curtilage, or, indeed, in houses.

Therefore, the open fields doctrine has no application to this case.

**IV.** **Jensen and Huerfano County's Failure to Adequately Train Bensman and Sandoval on the County's Written Code Enforcement Policy Amounts to Deliberate Indifference of Plaintiffs' Fourth Amendment Rights.**

A municipality's failure to train employees is a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the government employees come into contact. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

Huerfano County's written code enforcement policy stated that code enforcement officers must obtain administrative warrants to enter property and investigate where they have been denied access, without limitation. Doc. 20-2 at 10-11.

Bensman testified previously that he was "always" investigating while on the subject property (Doc. 20-4 at 30); that he "never" obtained Plaintiffs' permission to investigate on the property in question because he understood it was never required (Doc. 20-4 at 31); and that he never obtained a warrant for the property in question because he understood it was never required (Doc. 20-4 at 31). Further, beginning at the 5-minute 30-second mark of Bensman's video recording, Bensman states, "Well, we came out to see what he (Joe Guerrero) is doing, and he didn't like that idea. But I am an officer of the court, so I don't have to have any kind of special documentation to come onto anybody's property at any time." Ex. 5.

Bensman testified previously that his actions on the subject property were in accordance with the instructions that he received from the written Huerfano County code enforcement policy and a county attorney. Doc. 20-4 at 31. However, Bensman's actions on the subject property clearly violated the written Huerfano County code enforcement policy. Plaintiffs repeatedly denied Bensman's and Sandoval's access, yet Bensman never obtained an administrative warrant to continue his investigation on the property. Doc. 20 at 5, 7; Doc. 20-2 at 10-11; Doc. 20-4 at 31; Ex. 1 at ¶16; Ex. 2 at ¶16; Ex. 3; Ex. 5.

It is highly unlikely that a county attorney would instruct code enforcement officers not to adhere to the written policy requirements, as doing so would expose the County and the code enforcement officers to considerable liability for constitutional violations, such as Plaintiffs' claims in this case. Further, the written code enforcement policy does not address or make any distinction as to entry on an open field, curtilage, or a private area—but simply requires that

any investigation on private property where access is denied requires an administrative warrant. Doc. 20-2 at 10-11. One can readily infer that Huerfano County's code enforcement policy requiring a warrant when access is denied is purposed to protect its residents from precisely the constitutional violations that Plaintiffs have suffered here. *Id.*

Thus, the only explanations for the variance between the written policy and Bensman and Sandoval's above stated actions must be either (1) Jensen's and Huerfano County's failure to properly train their employees; or (2) the existence of an unwritten policy, sanctioned by Jenson and the County, allowing its code enforcement officers to conduct warrantless searches without regard to whether the search was of a protected effect or in curtilage or a private area. Such an unwritten policy would be tantamount to a failure to adequately train. Regardless of which scenario occurred here, both constitute a deliberate indifference to the violation of Plaintiffs' Fourth Amendment rights. Accordingly, Jensen and Huerfano County are liable under Section 1983. Harris, 489 U.S. at 388-89.

V.      **The Individual Defendants are Precluded from Qualified Immunity Because Their Unreasonable Searches Violated Plaintiffs' Fourth Amendment Rights.**

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" White v. Pauly, 580 U.S. 73, 78–79 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

The right violated in this case is Plaintiffs' freedom from an unreasonable search by a government agency—Huerfano County, and its employees—the individually named defendants. Like the right to due process, the protection against unreasonable searches is certainly "clearly established" under the Fourth Amendment of the U.S. Constitution and its

Colorado equivalent (Colo. Const. Art. 11, Section 7), within the meaning of *Pauly*. Based on the reasons set forth in the above arguments, such a violation occurred in this instance when Bensman and Sandoval conducted a warrantless search of Plaintiffs' curtilage and effects without their permission. The evidence indicates that Jenson and Huerfano County either failed to adequately train Bensman and Sandoval or had an unwritten policy, either tacitly or overtly, allowing Bensman and Sandoval to conduct warrantless searches of Plaintiffs' curtilage and effects without regard to whether the search was protected or not, contrary to the official written code enforcement policy. Plaintiffs' right to be free of those violations was "clearly established" not only under the Fourth Amendment but also in Huerfano County's publicly available code enforcement policy, which stated that code enforcement officers must obtain administrative warrants to enter property where they have been denied access, without limitation. Doc. 20-2 at 10-11. A reasonable code enforcement officer, and his supervisor, would have understood that Bensman's and Sandoval's warrantless search of Plaintiffs' curtilage and effects, without permission, constituted a violation of the Huerfano County code enforcement policy and the Fourth Amendment.

Accordingly, the individual defendants are <u>not</u> entitled to qualified immunity in this case. <u>Pauly</u>, 580 U.S. at 78–79; <u>Mullenix</u>, 577 U.S. at 11.

**I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1)."**

DATED this 21st day of March, 2025.

RELEVANT LAW – Colorado Springs

*/s/ Taylor G. Minshall*
Taylor G. Minshall, Atty. Reg. #50478
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Leslie L. Schluter, Esq.
Sophia A. N. Fernald, Esq.
Dagner Schluter Werber LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
lschluter@lawincolorado.com
sfernald@lawincolorado.com
*Attorneys for Defendants Huerfano County and Sam Jensen*


William T. O'Connell III, Esq.
Wells, Anderson & Race, LLC
woconnell@warllc.com
*Attorney for Terry Sandoval*


Matthew J. Hegarty, Esq.
Hall & Evans, LLC
hegartym@hallevans.com
*Attorney for Jeff Bensman*

                                              */s/ Katelyn Van Gilder*
                                              Paralegal