IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610-DDD-MDB

SUSAN DEHERRERA and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity, and
SAM JENSEN, in his individual capacity,

    Defendants.

## MOTION FOR SUMMARY JUDGMENT ON BEHALF OF COUNTY AND SAM JENSEN

Defendants, HUERFANO COUNTY and SAM JENSEN, move for summary judgment under Fed. R. Civ. P. 56 and submit the following brief in support:

### I. INTRODUCTION

After this Court's order granting in part and denying in part motions to dismiss (Doc. 47), the remaining claims concern a less than ten-minute visit in July 2021 by Code Enforcement Officer Jeff Bensman and Building Inspector Terry Sandoval to a large parcel of undeveloped land (the "Visit") where Plaintiffs were installing a well, on a day when large contractor work trucks and a crane were present.

Plaintiffs claim that the Visit was an unreasonable search in violation of their rights under the Fourth Amendment. They claim further that Sam Jensen, who was Land Use Planner but not in any way involved in the Visit, failed to adequately train and supervise Mr. Bensman and Mr. Sandoval. Doc. 47 at 7 (citing Doc. 20 at 13-14).

## II.   PROCEDURAL HISTORY: TWO CLAIMS REMAIN FOR SUMMARY JUDGMENT

Ruling on defense motions to dismiss, the Court indicated that fact development was needed on Plaintiff's' First Claim for Relief. This is the claim in which Plaintiffs allege that on July 14[1], 2021, Defendants Bensman and Sandoval conducted an unreasonable search. Doc. 47, at 12. The Court also allowed "Plaintiffs' Second Claim for Relief" to proceed "as it relates to a policy of permitting unconstitutional searches of private property."

### A.   First Claim for Relief – Unreasonable Search on July 14[2], 2021

Ruling on the Rule 12 motions as they related to Plaintiffs' First Claim (unreasonable search on July 14[3], 2021), the Court observed:

> It may be that Mr. Bensman and Mr. Sandoval never intruded into Plaintiffs' curtilage or otherwise went into an area that triggers Fourth Amendment scrutiny. But that determination requires more information about the property and the Defendants' actions than is before me at this early stage of the case. And entering the curtilage for investigative purposes likely violates any implied consent

---

[1] Plaintiffs allege July 1**4**, 2021, but the date stamp on Defendant Jeff Bensman's bodycam recorded the date as July 1**3**, 2021.
[2] *Id.*
[3] *Id.*

2

> from a property owner. *See Florida v. Jardines*, 569 U.S. 1, 8-9 (2013).

On the issue of conduct, the Court observed:

> Likewise, it is impossible to say, based on the Complaint's allegations alone, whether the conduct of Mr. Bensman and Mr. Sandoval was "ordinary visual surveillance" or went beyond that.

The Court noted in footnote 2:

> Even assuming Defendants are right that there is an exception for *de minimus* intrusions into private areas (*see, e.g.*, Doc. 21 at 6), there are factual allegations about that, too. *See, e.g.*, Doc. 20 at 8 (noting hour long presence along with menacing demeanor and physical violence).

The Court summarized the following details needed to answer the question whether Defendants Bensman and Sandoval conducted an unreasonable search: "details of the property, its surroundings, and the circumstances . . . ." Doc. 47 at 6.

### B.     Second Claim - Duty to Train, Supervise, and Discipline

As to the Second Claim, the Court summarized that it "boils down to the same question as the first claim: if the unwritten policy propounded to code enforcement officers allowed intrusion without consent or warrant into not just open fields, but curtilage or other private areas, the claim would be viable against the County." [citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).] Doc. 47, at 8.

3

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS[4]

1.  On July 14, 2021, Plaintiff Susan DeHerrera was the owner of an undeveloped parcel of land in Huerfano County (hereinafter "Property") on which she and her husband, Plaintiff Jose Guerrero, were residing in a recreational vehicle (RV). Compl.[5] ¶ 13. Doc. 20.

2.  In 2021, the Huerfano County "Land Use Department" consisted of the following three positions: "County Planner," "Code Enforcement Officer," and "Building Inspector," with each position reporting "directly to the County Administrator." Ex. 31,[6] Declaration of Carl Young, County Administrator, and Huerfano County Resolution 21-03, sec. 4, para. 8 (Jan. 12, 2021); sec. 5; and Organizational Chart (Ex. A attached to the resolution) ["Carl Young Declaration"].

3.  In July 2021, the following three individuals were employed in the positions that made up the Huerfano County Land Use Department: Sam Jensen, County Planner, Jeff Bensman, Code Enforcement Officer, and Terry Sandoval, Building Inspector. Ex. 31, Carl Young Declaration.

---

[4] This list sets forth facts as undisputed for the purpose of presenting this defense motion under Rule 56. It is not a list for any other purpose.
[5] "Compl." refers to Plaintiffs' Amended Complaint (Doc. 20).
[6] These defendants will reference their exhibits by number starting with the next in line from their Rule 26 disclosures. They had 30 disclosed documents. Also, the parties marked 30 exhibits in depositions. Therefore, these defendants begin their summary judgment exhibit references at Exhibit 31.

4

4. In 2021, these three positions were co-equal; they were not each other's supervisors; they did not report to each other, but rather directly to the County Administrator. Ex. 31, Carl Young Declaration.

5. On July 13 or 14, 2021, Plaintiffs were having a contractor install a pump for a well on the Property. *See* Compl. ¶ 18; *see also* fn. 1

6. The Water Well Site is shown on the Land Survey Plat for the Property, marked Exhibit D, Doc. 70-4, in the exhibits submitted by Defendant Bensman.

7. On the date in question in July 2021, Mr. Bensman and Mr. Sandoval drove to the Property in separate vehicles (hereinafter "Visit"). Ex. A, Sandoval Affidavit ¶¶ 3-4 (Doc. 68-1); Ex. B, Bensman Declaration ¶¶ 3, 6, 7 (Doc. 70-2).

8. The access road from which they entered was not gated or fenced. Ex. 32, DeHerrera Depo. with Corrections [Excerpts] (hereinafter "DeHerrera Depo.") 173:17 – 174:9.

9. While there was no physical barrier to their entry, Plaintiff DeHerrera believed that they drove past "No Trespassing" signs. Ex. 32, DeHerrera Depo. 173:19 – 174:9.

10. As Mssrs. Sandoval and Bensman drove up to the Water Well Site, Plaintiff DeHerrera was using her cell phone to record. Ex. 32, DeHerrera Depo 90:16-23; Bensman MSJ Ex. G, DeHerrera Cell Phone Video (Doc. 70-7 and Conventionally Submitted Video).

5

11. Mr. Bensman recorded the Visit using a body worn camera (BWC). Ex. B, Bensman Declaration (Doc. 70-2); Body Camera Video, Ex. A (Doc. 70-1 + Conventionally Submitted Video); Ex. 32, DeHerrera Depo 75:4-25.

12. Mssrs. Bensman and Sandoval pulled in and parked their vehicles in an area where two contractor trucks with logos "Water Works Plus, LLC" of Trinidad, were parked and dirt piles were visible. Bensman MSJ Ex. G, DeHerrera Cell Phone Video (Doc. 70-7 Cover and Conventionally Submitted Video); Bensman MSJ Ex. A, Bensman BWC (Doc. 70-1 Cover and Conventionally Submitted Video).[7]

13. In addition to the contractor trucks and dirt piles, a crane was in the background, adjacent to La Deora Road. *See, e.g.,* Ex. 33, DeHerrera Depo. Exhibits 9, 10, 13.

14. The dirt piles were from Plaintiff Guerrero's digging in preparation for the installation of the water pump. Ex. 32, DeHerrera Depo 82:17-25; Ex. 33, DeHerrera Depo. Exs. 9, 13, 16, 17.

15. Also visible was a blue container that Plaintiff DeHerrera identified as a cistern that the Water Works Plus contractor was to install. Ex. 32, DeHerrera Depo 83:1-25; Ex. 33, DeHerrera Depo. Exhibit 17.

---

[7] For orientation when viewing video recordings, Mr. Sandoval pulled in to the site ahead of Mr. Bensman. Mr. Sandoval was driving a white Ford with the Huerfano County logo. Mr. Bensman was driving a dark colored truck with a ranch logo.

6

16. At the time of the Visit, two Water Works Plus employees were working on site. Bensman MSJ Ex. A, Bensman BWC; Bensman MSJ Bensman Ex. G, DeHerrera Cell Phone Video (Doc. 70-7 and Conventionally Submitted Video); Ex. 32, DeHerrera Depo. Exhibits 12, 15, 19.

17. Mssrs. Bensman and Sandoval were at the Water Well Site for less than ten minutes. Ex. 31, DeHerrera Depo 118:6 - 119: 22; DeHerrera Depo. Exhibits 7-25 (Depo. Ex. 7 stamped 17:39:38 - Depo. Ex. 25 stamped 17:47:48).

18. Plaintiffs were residing in the beige and brown RV, which they also called a "5th wheel", that can be seen in Deposition Exhibits 16 and 19. Ex. 32, DeHerrera Depo. 91:23 – 92:25; 156:8-16; Ex. 33, DeHerrera Depo. Exhibits 16 and 19.

19. Plaintiffs' RV did not have a porch, a fence, or any type of exterior enclosure. *Id.*

20. A cream-colored camping trailer owned by someone else was also on the Property near the Water Well Site and can be seen in Deposition Exhibits 9 and 13. Ex. 31, DeHerrera Depo. 85:10 – 86:16; Ex. 32, DeHerrera Depo. Exhibits 9 and 13.

21. An excerpt from the County's Code Enforcement Policy adopted by the Huerfano Board of County Commissioners in 2018 is already in Defendant Bensman's Summary Judgment Exhibits. Ex. F, Code Enforcement Policy (Doc. 70-6).

7

22.     Defendants Bensman and Sandoval did not seek an administrative warrant, but they left the Property in less than ten minutes after arriving at the Water Well Site. *See, e.g.,* Ex. 32, DeHerrera Depo. Exhibits (compare Depo. Ex. 7 time-stamped 17:39:38 and Depo. Ex. 25 time-stamped 17:47:48).

23.     After disclosures and discovery, there is no evidence that Sam Jensen had any role in connection with the Visit.

24.     After disclosures and discovery, there is no evidence that Sam Jensen was responsible to supervise or train Mssrs. Bensman and Sandoval.

25.     The only evidence on the topic of Jensen's responsibility is that he was **not** the supervisor of Bensman or Sandoval, but rather co-equal with them, as each of them reported directly to Carl Young, County Administrator. Ex. 31, Carl Young Declaration.

### IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether there is a genuine dispute of material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the

8

matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

The moving party has the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). The "nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (quotations omitted). Further, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quotations omitted).

A nonmoving party is not absolved from the need to offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Such a showing must consist of more than a "scintilla of evidence." *Id.* at 252. That is, conclusory statements based on speculation,

9

conjecture, or subjective belief are insufficient to survive summary judgment. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## V. ARGUMENT

### A. Sam Jensen Requests Qualified Immunity

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to demonstrate a constitutional violation. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In evaluating whether the defendant violated a constitutional right, the court conducts a two-pronged test asking whether "(1) the defendant violated [the plaintiff's] constitutional or statutory rights and (2) [whether] the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1197-98 (10th Cir. 2010).

When evaluating these prongs, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding

10

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223 (2009). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016). Here, both prongs support Sam Jensen's having qualified immunity.

The only evidence concerning Sam Jensen is that he was Land Use Planner at the time of the Visit. Fact Nos. 3-4 and 25. As Land Use Planner, he held one of three co-equal positions that comprised the Land Use Department. *Id.* All three were direct reports to the County Manager. *Id.*

After disclosures and discovery, no evidence connects Jensen to the Visit. Fact No. 23. Further, no evidence shows that Jensen was responsible to train or supervise Bensman and Sandoval. Fact No. 24. Not only is there no evidence connecting Jensen to the alleged Fourth Amendment violation, no clearly established law would have informed him, as a reasonable Land Use Planner, that his conduct (whatever that was) would violate Plaintiffs' Fourth Amendment rights against unreasonable search.

**B.  County Requests Summary Judgment: No Violation Occurred, *Monell* Liability Cannot Exist Without an Underlying Violation, and No Evidence of Deliberately Indifferent Failure to Train.**

11

The County requests summary judgment principally because the Visit was not an unreasonable search and when the plaintiff's rights were not violated, *Monell* liability cannot exist.

The Supreme Court has long held that municipalities are not liable for the constitutional torts of their employees merely on a respondeat superior basis. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694. The plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

Importantly here, a "municipality may not be held liable where there was no underlying constitutional violation . . . ." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993).

When the alleged policy or custom is a failure to train police, the failure must have been deliberately indifferent. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.")

In this case, the undisputed material facts establish that Plaintiffs' Fourth Amendment right to be free from an unreasonable search was not violated. Fact Nos. 5-20. In the absence of a constitutional violation, the County cannot have liability under § 1983.

## VI. CONCLUSION

Plaintiffs sued Same Jensen on the assumption that he was co-defendants' supervisor / trainer, was in fact neither. He requests this Court's determination of his entitlement to qualified immunity because after disclosures and discovery, the only evidence is that he was in the same department as co-defendants, but their equal, not their supervisor. Moreover, no clearly established law would have informed a reasonable Land Use Planner in Jensen's position that his conduct (again, whatever that was) would be in violation.

Regarding Plaintiffs' claim against the County, the record now answers the questions that the Court named as requiring factual development when it ruled on the motions to dismiss. Doc. 47. With the benefit of that factual development, outlined in this brief at Fact Nos. 5 through 20, no Fourth Amendment violation occurred.

The absence of an underlying violation renders moot the question of *Monell* liability against the County. Moreover, after Plaintiffs had a full opportunity to conduct discovery, there is no evidence that Huerfano County had an official policy

or widespread custom that was the moving force behind a Fourth Amendment violation.

Huerfano County and Sam Jensen request summary judgment in their favor, together with costs.

Respectfully submitted,

*I certify that the foregoing summary judgment motion is within Judge Domenico's practice standard type-volume limitation. It contains approximately 3000 words (excluding caption, signature block, certificate of service, and this certificate of compliance), which is below the limit of 5500 words for such motions.*

By *s/Leslie L. Schluter*
  Leslie L. Schluter
  DAGNER | SCHLUTER | WERBER LLC
  8400 East Prentice, Suite 1401
  Greenwood Village, CO 80111
  Telephone: (303) 221-4661
  E-mail: lschluter@lawincolorado.com

ATTORNEYS for DEFENDANTS HUERFANO COUNTY and SAM JENSEN

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on March 21, 2025, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT ON BEHALF OF COUNTY AND SAM JENSEN** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Taylor G. Minshall, Esq. | Matthew J. Hegarty, Esq. |
| Tanner W. Havens, Esq. | HALL & EVANS, L.L.C. |
| tminshall@relevantlaw.com | hegartym@hallevans.com |
| thavens@relevantlaw.com | |
| | |
| William T. O'Connell III, Esq. | |
| THOMPSON, COE, COUSINS & IRONS, LLP | *s/Leslie L. Schluter* |
| woconnell@thompsoncoe.com | |