IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01610-DDD-MDB

SUSAN DEHERRERA, and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity,
SAM JENSEN, in his individual capacity

    Defendants.

## DEFENDANT TERRY SANDOVAL'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant Terry Sandoval, by and through counsel, William T. O'Connell, III of Thompson, Coe, Cousins & Irons, LLP, hereby responds to Plaintiffs' Motion for Summary Judgment [Doc. No. 72] as follows:

### INTRODUCTION

Terry Sandoval never intruded into the curtilage or any private areas during his approximate ten-minute visit to the 160-acre undeveloped parcel of property on July 13, 2021. Moreover, Mr. Sandoval's brief visit to the property did not constitute a search of Plaintiffs' effects. Instead, Mr. Sandoval conducted ordinary visual surveillance from open fields for which he is entitled to qualified immunity as described in his pending Motion for Summary Judgment. Accordingly, Plaintiffs' Motion for Summary Judgment should be denied.

### RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admitted.

2. Admitted that Defendant Sandoval was employed as the Huerfano County ("County") Chief Building Inspector from January 2019 to February 2023.

3. Admitted.

4. Denied. On July 13, 2021, Plaintiffs Susan DeHerrera and Jose Guerrero lived in a recreational vehicle ("RV") on a 160-acre undeveloped parcel of property designated for agricultural use in the County. (Complaint, ¶ 13; Exhibit 1 to Complaint).

5. Denied. The work on the property took place on July 13, 2021. (Plaintiffs' Exhibits 3, 5 and 6).

6. Admitted that to the best of Mr. Sandoval's knowledge, Plaintiffs were the presumed owners of the water well and water pump as of July 13, 2021; however, Exhibits 3, 4 at 1 – 2, 5 and 6 at 2 – 8 as cited do not support Paragraph 6.

7. Denied. The exhibits cited in support of Paragraph 7 indicate that portions of the well/pump were installed above ground and visible to the public.

8. Admitted that to the best of Mr. Sandoval's knowledge, Plaintiffs seemingly did not have water piped into their RV as of July 13, 2021; however, Exhibits 3, 4 at 1 – 2, 5 and 6 at 2 – 8 as cited do not support Paragraph 8.

9. Admitted that to the best Mr. Sandoval's knowledge, Plaintiffs seemingly used the water well and water pump as their primary source of water as of July 13, 2021.

10. Denied. The wellsite was approximately twenty feet or more from Plaintiffs' RV. (Sandoval Motion for Summary Judgment ("Sandoval Motion") [Doc. No. 68], Exhibit C, 191:19

2

– 25). Paragraph 9 of Plaintiff Susan DeHerrera's Declaration, which asserts that the RV was located "several feet" from the wellsite, contradicts her deposition testimony regarding the distance from the wellsite to Plaintiffs' RV. Accordingly, Paragraph 9 of Ms. DeHerrera's Declaration should be ignored pursuant to the sham affidavit doctrine. *See, e.g., Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

11. Denied. The exhibits cited in support of Paragraph 11 reveal that portions of the well/pump were installed above ground and visible to the public.

12. Admitted that in response to a complaint from the County Health Department regarding the improper installation of a cistern/well on Plaintiffs' property, Mr. Sandoval drove a white County vehicle out to the property on July 13, 2021. (Sandoval Motion, Exhibit A, ¶¶ 3, 4, 7).

13. Denied. In response to a complaint from the County Health Department regarding the improper installation of a cistern/well on Plaintiffs' property, Mr. Sandoval drove a white County vehicle out to the property on July 13, 2021. (Sandoval Motion, Exhibit A, ¶¶ 3, 4, 7).

14. Denied. Mr. Sandoval parked his County vehicle near the end of the dirt pile, approximately twenty feet from the wellsite. (Sandoval Motion, Exhibit A, ¶ 6, Exhibit C, 177:24 – 178:9).

15. Admitted.

16. Denied. Mr. Sandoval did not approach within a few feet of the excavated water well site. Mr. Sandoval spoke to the Water Works Plus ("WWP") employees near the end of the dirt pile in close proximity to his parked County vehicle. (Sandoval Motion, Statement of Undisputed Material Facts ("SUMF"), ¶ 23, Exhibit E, 06:30 – 06:45).

3

17. Admitted.

18. Admitted that after attempting to speak to Mr. Guerrero, Mr. Sandoval briefly spoke to Ms. DeHerrera and the WWP employees before leaving the property. (Sandoval Motion, Exhibit A, ¶¶ 12, 13, Exhibit E, 06:30 – 06:45, Exhibit H, 02:46 – 04:51).

19. Denied. After speaking to the WWP employees near the end of the dirt pile, Mr. Sandoval returned to his parked County vehicle, stood near the open driver's side door and left the property a short time later. (Sandoval Motion, Exhibit E, 06:30 – 06:45 – 9:05).

20. Denied. The wellsite was approximately twenty feet or more from Plaintiffs' RV. (Sandoval Motion, Exhibit C, 191:19 – 25). Paragraph 19 of Plaintiff Susan DeHerrera's Declaration, which asserts that the RV was located "several feet" from the wellsite, contradicts her deposition testimony regarding the distance from the wellsite to Plaintiffs' RV. Accordingly, Paragraph 19 of Ms. DeHerrera's Declaration should be ignored pursuant to the sham affidavit doctrine. *See Franks*, 796 F.2d at 1237.

21. Admitted.

22. Admitted.

23. Admitted that Mr. Bensman radioed the County Sheriff's Office for potential response, and spoke via telephone about WWP's work with "Fred" (WWP management), who advised WWP was installing the cistern and a pipeline. (Bensman Motion for Summary Judgment [Doc. No. 70], SUMF, ¶ 33).

24. Admitted that according to the policy, "staff shall consult with the County Court Judge to go about obtaining an administrative search warrant" if Code Enforcement staff is refused access or entry. (Doc. No. 20 – 2, pp. 10 – 11).

4

25. Denied that Plaintiffs "understood" the policy. (Sandoval Motion, SUMF ¶¶ 9, 12, 19, 20, 21, 22, 29).

26. Denied that Plaintiffs "understood" the policy. (Sandoval Motion, SUMF ¶¶ 9, 12, 19, 20, 21, 22, 29).

27. Admitted.

28. Denied. Mr. Bensman testified that he would ask for permission to access or stay on the property as a courtesy but it was not necessary according to what they were instructed and a former attorney. (Doc. No. 20-4 at 31:2-8).

29. Denied Mr. Bensman testified that he had not obtained an administrative warrant when he had been on the property. (Doc. No. 20-4 at 31:9-12).

30. Denied. Mr. Bensman testified that he would ask for permission to access or stay on the property as a courtesy but it was not necessary according to what they were instructed and a former attorney. (Doc. No. 20-4 at 31:2-8).

31. Admitted.

## ARGUMENT

### I. MR. SANDOVAL NEVER INTRUDED INTO THE CURTILAGE DURING HIS VISIT TO THE PROPERTY

Mr. Sandoval analyzed the four factors in a curtilage case in his pending Motion for Summary Judgment [Doc. No. 68, pp. 8 - 10]. That analysis, summarized below, conclusively demonstrates that Mr. Sandoval conducted ordinary visual surveillance from open fields and never intruded into the curtilage or private areas during his ten-minute visit to the property.

**a.   The proximity of the area claimed to be curtilage to the home**

5

Plaintiffs' RV and the immediate area surrounding the RV were not fenced in or otherwise enclosed. [Doc. No. 68, p. 9]. Mr. Sandoval parked his County vehicle some twenty feet from the wellsite which was approximately twenty feet or more from Plaintiffs' RV. *Id*. During his brief visit to the property, Mr. Sandoval never got within forty feet of Plaintiffs' RV. *Id*.

### b. Whether the area is included within an enclosure surrounding the home

The area surrounding the wellsite was not included within an enclosure surrounding Plaintiffs' RV but instead entirely exposed and in full view of any passerby. [Doc. No. 68, p. 9].

### c. The nature of the uses to which the area is put

The only use Plaintiffs made of the exposed undeveloped area was installation of a well/cistern. [Doc. No. 68, p. 10].

### d. The steps taken by the resident to protect the area from observation by people passing by

Plaintiffs did not take any steps to protect the wellsite from observations by a passerby and, any visitor to the property could be expected to access the wellsite area accordingly. [Doc. No. 68, p. 10].

Plaintiffs' reliance on *Collins v. Virginia*, 584 U.S. 586 (2018) in support of their argument that the well site was within the curtilage of their RV is specious given the stark factual differences between that case and this case. (Plaintiffs' Motion for Summary Judgment ("Motion"), p. 8). In *Collins*, a police officer saw what appeared to be a stolen motorcycle covered with a tarp parked inside a partially enclosed structure near the top portion of a driveway adjoining a house. *Id*. at 589. The officer, who did not have a warrant, initially took a photograph of the covered motorcycle from the sidewalk. The officer then walked onto the property to the top of the driveway where he pulled off the tarp, ran a search of the motorcycle's license plate and vehicle identification number

6

and took another photograph before replacing the tarp and leaving the property. *Id*. at 589 – 590. The Court held that the enclosed area where the motorcycle was parked and later searched was curtilage and equated the area to a "front porch, side garden, or area 'outside the front window.'" *Id*. at 593.

Here, Mr. Sandoval's actions are not remotely comparable to the officer's actions in *Collins*. Mr. Sandoval did not encroach on Plaintiffs' property, let alone affirmatively move items as part of any search. Moreover, the enclosed area adjoining the house found to be curtilage in *Collins* is not similar in any respect to the area at issue in this case.[1] Indeed, the area surrounding Plaintiffs' wellsite was not included within any enclosure and was twenty feet or more from Plaintiffs' RV.

## II. MR. SANDOVAL'S VISIT TO THE PROPERTY DID NOT CONSTITUTE A SEARCH OF PLAINTIFFS' EFFECTS

Plaintiffs maintain that even if the well site was not within the curtilage, it "and the contents beneath the surface, including the water well and the pump, were Plaintiffs' effects" which required a search warrant. (Motion, p. 11). Plaintiffs rely on *Reeves Bros., Inc. v. U.S.E.P.A.*, 956 F.Supp. 665 (W.D. Va. 1995) to support this proposition. Setting aside the fact that *Reeves* has no binding effect on this Court, even a cursory examination of the case demonstrates that it is readily distinguishable and has no application here.

*Reeves* involved EPA employees who climbed over a locked gate and fence, collected soil and water samples, ran other tests and made a visual inspection of the property. *Id*. at 668. In

---

[1] Whether or not Mr. Sandoval trespassed (Motion, p. 8) is irrelevant to the curtilage analysis because the "Supreme Court has made it clear that the Fourth Amendment does not track property law." *Rieck v. Jensen*, 651 F.3d 1188, 1191 (10th Cir. 2011).

finding the employees' actions violated the Fourth Amendment, the court observed that the "actions the Supreme Court has authorized under the open fields doctrine make clear that the only fact that prevents summary dismissal of the plaintiff's case is the taking of water and soil samples." *Id*. at 669.The court found the open fields doctrine inapplicable because the employees' actions went beyond an observational search of the property to seizure and removal of soil and water samples. *Id*.

Here, Mr. Sandoval's actions are not analogous to the EPA employees' actions in *Reeves*. Mr. Sandoval did not seize and remove any buried items from Plaintiffs' property. Rather, Mr. Sandoval's actions were confined to an observational search of the property.

Similarly unavailing is Plaintiffs' reliance on *United States v. Jones*, 565 U.S. 400 (2012) and *Florida v. Jardines*, 569 U.S. 1 (2013). (Motion, p. 15). *Jones* involved the installation of a GPS tracking device to an individual's vehicle. The Court noted that it is indisputable that a vehicle is an "effect" under the Fourth Amendment. 565 U.S. at 404. Accordingly, the Court held that the installation of the device and the subsequent tracking of the vehicle's movements constitutes a search under the Fourth Amendment. Id. *Jardines* involved the use of a drug sniffing dog on a homeowner's front porch. The Court noted that the front porch constituted curtilage because it is the "classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" 569 U.S. at 9.

Here, the water well and the pump are obviously not similar to the vehicle in *Jones*. Moreover, the wellsite at issue in this case is not akin to the front porch in *Jardines* and certainly not within the curtilage of Plaintiffs' RV.

8

### III. MR. SANDOVAL IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE HE DID NOT VIOLATE PLAINTIFFS' CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

Plaintiffs rely on the generalized notion that "the protection against unreasonable searches is certainly 'clearly established' under the Fourth Amendment of the U.S. Constitution …" (Motion, pp. 17 – 18). Plaintiffs also contend that their right to be "free of those violations was 'clearly established' not only under the Fourth Amendment but also in Huerfano County's publicly available code enforcement policy…" (Motion, p. 18).

As described in this Response and in Mr. Sandoval's Motion for Summary Judgment, Mr. Sandoval's conduct did not violate Plaintiffs' Fourth Amendment rights. Even if his conduct somehow was violative of Plaintiffs' constitutional rights, Plaintiffs cannot demonstrate that every reasonable official in Mr. Sandoval's position would have known that his conduct in July 2021 was unconstitutional for the reasons explained in Mr. Sandoval's Motion. Finally, Plaintiffs' contention that Huerfano County's code enforcement policy serves as a source of clearly established law is categorically incorrect. *See Frasier v. Evans*, 992 F.3d 1003, 1019 (10th Cir. 2021)("Judicial decisions are the only valid interpretive source of the content of clearly established law…")(citations omitted).

### CONCLUSION

For the reasons described above, this Court should deny Plaintiffs' Motion for Summary Judgment.

Dated this 23rd day of May 2025.

    Respectfully submitted,

    *s/ William T. O'Connell, III*
    William T. O'Connell, III
    Thompson, Coe, Cousins & Irons, LLP
    1700 Broadway, Suite 900
    Denver, CO 80290
    T: 303-830-1212
    Email: woconnell@thompsoncoe.com

    **ATTORNEY FOR DEFENDANT**
    **TERRY SANDOVAL**

    I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

   I hereby certify that on May 23, 2025, a true and correct copy of the above and foregoing **DEFENDANT TERRY SANDOVAL'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Jason M. Kosloski, Esq.
Kosloski Law, PLLC
1401 Lawrence Street
Suite 1600
Denver, CO 80202
jkosloski@kosloskilaw.com
***ATTORNEYS FOR PLAINTIFFS***

Matthew J. Hegarty, Esq.
Hall & Evans, LLC
1001 17th Street, Ste. 300
Denver, CO 80202
hagartym@hallevans.com
***ATTORNEY FOR DEFENDANT JEFFREY BENSMAN***

Leslie L. Schluter, Esq.
Dagner Schluter Werber LLC
8400 East Prentice, Suite 1401
Greenwood Village, CO 80111
lschluter@lawincolorado.com
***ATTORNEYS FOR DEFENDANTS HUERFANO COUNTY AND SAM JENSEN***

               *s/ Mindra Wallace*
               Mindra Wallace, Legal Assistant