IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610-DDD-MDB

SUSAN DEHERRERA; AND
JOSE GUERRERO

Plaintiffs,

v.

HUERFANO COUNTY, A MUNICIPALITY;
JEFF BENSMAN, IN HIS INDIVIDUAL CAPACITY;
TERRY SANDOVAL, IN HIS INDIVIDUAL CAPACITY; AND
SAM JENSEN, IN HIS INDIVIDUAL CAPACITY,

Defendants.

---

## RESPONSE TO DEFENDANT HUERFANO COUNTY AND SAM JENSEN'S MOTION FOR SUMMARY JUDGEMENT

---

Plaintiffs, Susan DeHerrera and Jose Guerrero, by and through counsel, respond to

Defendants Huerfano County and Sam Jensen's Motion for Summary Judgement [Doc. No. 74] as

follows:

### INTRODUCTION

Defendant Huerfano County's Motion for Summary Judgement fails because there was an

underlying constitutional violation and there is sufficient disputed fact regarding Plaintiffs' *Monell*

claim.

Plaintiffs do not respond as to Defendant Sam Jensen's Motion for Summary Judgement as

after further review and consultation, Plaintiffs' believe that there is not a good faith reason to

1

believe that Defendant Sam Jensen was involved in the supervision of Defendants Sandoval or

Bensman to support Plaintiffs' claims against Defendant Jensen. Plaintiffs intend to confer with

Defendants to file a motion to dismiss Defendant Jensen.

### RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Admit.

2.  Admit.

3.  Admit.

4.  Admit.

5.  Admit.

6.  Admit.

7.  Admit.

8.  Admit.

9.  Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit. The video speaks for itself.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.

24. Admit.

25. Admit.

**STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS**

Plaintiffs incorporate by reference all the facts contained in their Statement of Undisputed

Material Facts from their Motion for Summary Judgement. Plaintiffs assume that Defendant

Sandoval disputes some or all these facts. Plaintiffs' highlight the following facts:

1.  Plaintiffs' home was just several feet from the excavated water well site which was the
    location of the incident on July 13, 2021. Ex. 1 to Plaintiffs' Motion for Summary
    Judgement [Doc. 72] at ¶9; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72]
    at ¶9; Ex. 3 to Plaintiff's Motion for Summary Judgement [Doc. 72]; Ex. 5 to Plaintiffs'
    Motion for Summary Judgement at 1-2; Ex. 6 to Plaintiffs' Motion for Summary
    Judgement [Doc. 72] at 1-2.

2.  Although not connected via a pipe to Plaintiffs' home, Plaintiffs' used the water well and
    water pump as their primary source of water. Ex. 1 to Plaintiffs' Motion for Summary
    Judgement [Doc. 72] at ¶¶6, 8; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc.
    72] at ¶¶6, 8; Ex. 3 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Ex. 4 to

3

Plaintiffs' Motion for Summary Judgement [Doc. 72] at 1-2; Ex. 5 to Plaintiffs' Motion

for Summary Judgement; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc. 72]

at 2-8.

3.  Defendant Bensman parked his truck just a few feet away from the excavated water well

    site. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶13; Ex. 2 to

    Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶13; Exhibit 3 to Plaintiffs'

    Motion for Summary Judgement [Doc. 72]; Exhibit 4 to Plaintiffs' Motion for Summary

    Judgement [Doc. 72] at ¶ 5; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc.

    72] at 1-3.

4.  Defendant Bensman exited their vehicles and approached within a few feet of the

    excavated water well site. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72]

    at ¶15; Ex. 2 to Plaintiffs' Motion for Summary Judgment [Doc. 72] at ¶15; Ex. 3 to

    Plaintiff's Motion for Summary Judgement [Doc. 72]; Ex. 5 to Plaintiffs' Motion for

    Summary Judgement [Doc. 72]; Ex. 6 to Plaintiffs' Motion for Summary Judgement

    [Doc. 72] at 1-8.

5.  Plaintiffs did not invite Defendant Bensman onto their property and demanded that

    Defendant Bensman leave. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72]

    at ¶16; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶16; Ex. 3 to

    Plaintiffs' Motion for Summary Judgment [Doc. 72]; Ex. 5 to Plaintiffs' Motion for

    Summary Judgement [Doc. 72].

6.  Defendant Bensman did not leave the area of the excavated water well site when

    Plaintiffs demanded. Ex. 3 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Ex.

    5 to Plaintiffs' Motion for Summary Judgement [Doc. 72].

7.  Huerfano County's written code enforcement policy stated that code enforcement
    officers must obtain administrative warrants to enter property where they have been
    denied access, without limitation. Ex. 2 to Plaintiff's Amended Complaint and Jury
    Demand [Doc. 20].

8.  Defendant Bensman testified previously that he never obtained Plaintiffs' permission to
    investigate physically on the property in question because he understood it was never
    required. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

9.  Defendant Bensman testified previously that he never obtained a warrant to investigate
    on the property in question because he understood it was never required. Ex. 4 to
    Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

10. Defendant Bensman testified previously that he received from the written Huerfano
    County code enforcement policy and a county attorney. Ex. 4 to Plaintiff's Amended
    Complaint and Jury Demand [Doc 20] at 31.

11. Beginning at the 5-minute 30-second mark on Defendant Bensman's bodycam recording
    of his encounter on the subject property on or about July 13, 2021, Defendant Bensman
    states, "Well, we came out to see what [Plainitff Guerrero] is doing, and he didn't like
    that idea. But I am an officer of the court, so I don't have to have any kind of special
    documentation to come onto anybody's property at any time." Exhibit 5 to Plaintiffs'
    Motion for Summary Judgement [Doc. 72].

## ARGUMENT

Summary judgement is inappropriate where "the evidence is such that a reasonable jury
could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

5

(1986). Disputed facts must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). "A factual dispute is 'genuine' and summary judgement is precluded if the evidence presented in support of an opposition to the motion is so contradictory that, if presented at trial, a judgement could enter for either party." *Bragg v. Southwest Health System, Inc.*, 487 F.Supp.3d 1028, 1032 (D. Colo. 2020).

Defendant Huerfano requests summary judgement because no underlying constitutional violation occurred and because in their view there is no evidence of deliberately indifferent failure to train. Defendant Huerfano's motion should be denied. As discussed below (and as raised in Plaintiff's Motion for Summary Judgement and Plaintiffs' Responses to Defendants Bensman and Sandoval's Motions for Summary Judgement, there was an underlying constitutional violation because Defendants Bensman and Sandoval searched Plaintiffs' curtilage. Further, there is evidence of a failure to train sufficient to overcome Defendant Huerfano's motion to dismiss. Therefore, the Court should deny Defendant Huerfano's Motion for Summary Judgement.

Plaintiffs' incorporate their Motion for Summary Judgement and the legal arguments and citations therein to this response as many of the arguments directly overlap.

## I.    DEFENDANT HUERFANO IS NOT ENTITLED TO SUMMARY JUDGEMENT BECAUSE AN UNDERLYING CONSTITUTIONAL VIOLATION OCCURRED.

Here, there are cross-motions for summary judgement that deal with the issue of the underlying constitutional violation. It is not in dispute that Defendants Bensman and Sandoval entered Plaintiffs' property. There's no dispute that they did so without a warrant. What is in dispute is whether that property was an "open field" or within the curtilage of Plaintiffs' home. Plaintiff

6

believes that the undisputed evidence clearly shows that the property was within the curtilage and

therefore the entry was unconstitutional. However, to the extent that there is a factual dispute that

the Court finds could go either way, the Court should still deny Defendant Huerfano's Motion for

Summary Judgement.

> a. **Plaintiffs had a constitutional right to be free from unreasonable searches of their
> curtilage.**

Defendant Huerfano does not develop an argument for why the entry on Plaintiffs' property

was constitutional. In the absence of such an argument, Plaintiff assumes that Defendant Huerfano

rests its argument on the same grounds as Defendant Sandoval and Bensman – that the search was

not of the curtilage of Plaintiffs' home, but rather in an open field. For the reasons described here

(and in Plaintiffs' other responses and Motion for Summary Judgement), this was firmly within the

curtilage of Plaintiffs' home and not an "open field."

Curtilage is "the area immediately surrounding and associated with the home" and is "part of

the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting

*Oliver v. United States*, 466 U.S. 170, 180 (1984). To the contrary, "open fields" – the "unoccupied or

undeveloped area outside of the curtilage" are not protected. *United States v. Dunn*, 480 U.S. 294, 304

(1987).

When the government intrudes on the curtilage, that is a search. *Id.* at 11. In determining if

an area is curtilage, relevant factors include "the proximity of the area claimed to be curtilage to the

home, whether the area is included within an enclosure surrounding the home, the nature of the uses

to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987).

Here, the *Dunn* factors weigh clearly in support of the water well excavation site being within the curtilage of Plaintiffs' home.

### i. *Proximity of the water well site to the home.*

This factor strongly supports the water well site being within the curtilage. The water well site was located on a large, 160-acre undeveloped parcel of property designated for agricultural use. Despite being located on such a large and otherwise undeveloped piece of property, the water well site was located approximately 20 feet from Plaintiffs' residence. Akin to an island of civilization in a vast ocean, Plaintiffs' home was an island within a large prairie. In this context, the water well site sat virtually as close as possible to Plaintiffs' residence. This is not like a home with some distant out-building or shed. To the contrary, the water well site was in "an area adjacent to the home 'and to which the activity of home life extends.'" *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182).

### ii. *Whether the area is included within an enclosure surrounding the home.*

Although there was no enclosure surrounding the water well site, there was no enclosure surrounding any part of Plaintiffs' home so this factor gives little insight into the question of curtilage. This is not a property with a clearly demarcated fence separating the home and its yard from the rest of the property.

*iii.     The nature of the uses to which the water well site is put.*

This factor weighs heavily in support of the water well site being in the curtilage. "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heighted." *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986).

For Plaintiffs', the water well site was an intimate part of their daily household living. Plaintiffs did not have any other water piped to their home. This water well was their only source of water, possibly the most important of life's necessities. This was not a water well used for a non-domestic purpose, perhaps to water crops or provide water for livestock. It was a water well that was directly next to the home and used by the home.

*iv.     The steps taken by the Plaintiffs to protect the area from observation.*

Although there was not a privacy fence, Plaintiffs clearly took steps to protect their home and its surrounding from observation. Within their property, Plaintiffs chose to situate their home and the water well site over two hundred feet from the nearest public roadway. The water well itself was buried underground and only visible from the road because it was in the process of excavation. As discussed at length in Plaintiff's Motion for Summary Judgement, Plaintiffs' took significant steps to protect the well from observation.

II.    **DEFENDANT HUERFANO IS NOT ENTITLED TO SUMMARY JUDGEMENT BECAUSE THERE ARE SUFFICIENT FACTS THAT SUPPORT PLAINTIFF'S FAILURE TO TRAIN/SUPERVISE CLAIM**

Defendant Huerfano moves for summary judgement because Plaintiff cannot show a failure to train or supervise based on the facts. That is not so.

Defendant Bensman clearly believed that he had essentially unlimited power as a code enforcement officer. He has testified that he never needed to get permission to go on people's property. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31. He has testified that he never needed to get a warrant to investigate on people's property. *Id.* His own contemporaneous words demonstrate that his belief was that as "an officer of the court . . . I don't have to have any kind of special documentation to come onto anybody's property at any time." Exhibit 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72]. And Defendant Bensman testified under oath that he gained this belief from what he was told by Defendant Huerfano and a county attorney. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

Defendant Huerfano does not contend that these facts are untrue or offer anything in the record to dispute. In fact, as Defendant Huerfano's own declaration states, Defendant Bensman was part of the Land Use Department's "senior staff." Doc. 74-1. A reasonable jury could easily find from that that it was Defendant Huerfano's official policy to empower its Code Enforcement Officers to violate people's constitutional rights with impunity, or at least that the county was deliberately indifferent in how it trained Defendant Bensman.

10

## CONCLUSION

Because there was an underlying constitutional violation, and because there is sufficient

evidence to support Plaintiffs' Monell claim, the Court should deny Defendant Huerfano's motion

for summary judgement.


Dated: April 25, 2025.


/s *Jason M Kosloski*
Jason M. Kosloski
Kosloski Law, PLLC
1401 Lawrence Street
Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorney for Plaintiffs DeHerrera and Guerrero*

I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in
Judge Domenico's Practice Standard III(A)(2).

11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, the foregoing **RESPONSE TO DEFENDANTS**

**HUERFANO COUNTY AND SAM JENSEN MOTION FOR SUMMARY JUDGEMENT** was filed using the

CM/ECF e-filing system, which sends notice to the following:


Leslie L. Schluter
DAGNER | SCHLUTER | WERBER LLC
lschluter@lawincolorado.com
*Attorney for Defendants Huerfano County and Sam Jensen*

William T. O'Connell III
THOMPSON, COE, COUSINS & IRONS LLP
woconnell@thompsoncoe.com
*Attorney for Defendant Terry Sandoval*

Matthew J. Hegarty
HALL & EVANS, L.L.C.
hegartym@hallevans.com
*Attorney for Defendant Jeffrey Bensman*

/s/ Jason Kosloski
Jason Kosloski