IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610-DDD-MDB

**SUSAN DEHERRERA**; AND
**JOSE GUERRERO**

Plaintiffs,

v.

**HUERFANO COUNTY**, A MUNICIPALITY;
**JEFF BENSMAN**, IN HIS INDIVIDUAL CAPACITY;
**TERRY SANDOVAL**, IN HIS INDIVIDUAL CAPACITY; AND
**SAM JENSEN**, IN HIS INDIVIDUAL CAPACITY,

Defendants.

---

**RESPONSE TO DEFENDANT JEFF BENSMAN'S MOTION FOR SUMMARY JUDGEMENT**

---

Plaintiffs, Susan DeHerrera and Jose Guerrero, by and through counsel, respond to Defendant Jeffrey Bensman's Motion for Summary Judgement [Doc. No. 70] as follows:

**INTRODUCTION**

Defendant Bensman Motion for Summary judgement fails because disputed issues of material fact exist as to whether his intrusion onto Plaintiff's property and near their home violated the Fourth Amendment. The "open fields" doctrine does not apply to the area surrounding Plaintiffs' home, which constitutes curtilage under the governing law. Plaintiffs further dispute Defendant Bensman's characterization of the encounter as brief and non-intrusive. Further, qualified immunity does not shield Defendant Bensman because the unlawfulness of warrantless physical intrusions into the curtilage of a home was clearly established at the time of the incident.

1

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Admit.

8. Deny. Although some things could be seen from the road, the water well and water pump were installed beneath the ground and not visible to the public. Exhibit 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶6; Exhibit 2 to Plaintiffs' Motion for Summary Judgment at ¶6; Exhibit 4 to Plaintiffs' Motion for Summary Judgement at 1-2; Exhibit 5 to Plaintiffs' Motion for Summary Judgement; Exhibit 6 to Plaintiffs' Motion for Summary Judgment at 2-8.

9. Agree to the extent that the video speaks for itself.

10. Admit to the extent that the video speaks for itself.

11. Admit.

12. Admit.

13. Admit to the extent that there was nothing obstructing the view from the road like a fence. See response to fact 8 above.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.

24. Admit. However, this fact is irrelevant as a

25. Admit. But see 24 above.

26. Admit.

27. Partially admit. The video speaks for itself.

28. Admit.

29. Admit. The video speaks for itself.

30. Admit. The video speaks for itself.

31. Admit.

32. Admit.

33. Admit.

34. Partially admit. The video speaks for itself as to what Defendant Bensman was told directly. Plaintiffs contend that Plaintiff DeHerrera "repeatedly demanded that Jeff Bensman and Terry Sandoval leave our private property." Exhibit 1 to Plaintiffs' Motion for Summary Judgement at ¶16 [Doc 72]

35. Admit.

3

36. Deny. Exhibit 1 to Plaintiffs' Motion for Summary Judgement at ¶15 [Doc 72]; Exhibit 2 to Plaintiffs' Motion for Summary Judgement at ¶15 [Doc 72].

37. Deny. Exhibit 1 to Plaintiffs' Motion for Summary Judgement at ¶9 [Doc 72]; Exhibit 2 to Plaintiffs' Motion for Summary Judgement at ¶9 [Doc 72].

38. Disputed. Exhibit 1, Deposition of Plaintiff Guerrero, at 70-76.

39. Admit to the extent that Defendants Bensman and Sandoval left, denied to the extent that it presupposes the truth of fact 38. The video speaks for itself.

40. Admit. The video speaks for itself.

41. Admit. The video speaks for itself.

42. Admit.

43. Partially admit. Plaintiffs also lived in the property. Exhibit 1 to Plaintiffs' Motion for Summary Judgement at ¶2; Exhibit 2 to Plaintiffs' Motion for Summary Judgement at ¶2.

44. Admit.

## STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS

Plaintiffs incorporate by reference all the facts contained in their Statement of Undisputed Material Facts from their Motion for Summary Judgement. Plaintiffs assume that Defendant Sandoval disputes some or all these facts. Plaintiffs' highlight the following facts:

1. Plaintiffs' home was just several feet from the excavated water well site which was the location of the incident on July 13, 2021. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶9; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶9; Ex. 3 to Plaintiff's Motion for Summary Judgement [Doc. 72]; Ex. 5 to Plaintiffs'

Motion for Summary Judgement at 1-2; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at 1-2.

2. Although not connected via a pipe to Plaintiffs' home, Plaintiffs' used the water well and water pump as their primary source of water. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶¶6, 8; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶¶6, 8; Ex. 3 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Ex. 4 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at 1-2; Ex. 5 to Plaintiffs' Motion for Summary Judgement; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at 2-8.

3. Defendant Bensman parked his truck just a few feet away from the excavated water well site. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶13; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶13; Exhibit 3 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Exhibit 4 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶ 5; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at 1-3.

4. Defendant Bensman exited their vehicles and approached within a few feet of the excavated water well site. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶15; Ex. 2 to Plaintiffs' Motion for Summary Judgment [Doc. 72] at ¶15; Ex. 3 to Plaintiff's Motion for Summary Judgement [Doc. 72]; Ex. 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Ex. 6 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at 1-8.

5. Plaintiffs did not invite Defendant Bensman onto their property and demanded that Defendant Bensman leave. Ex. 1 to Plaintiffs' Motion for Summary Judgement [Doc. 72]

5

at ¶16; Ex. 2 to Plaintiffs' Motion for Summary Judgement [Doc. 72] at ¶16; Ex. 3 to Plaintiffs' Motion for Summary Judgment [Doc. 72]; Ex. 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72].

6. Defendant Bensman did not leave the area of the excavated water well site when Plaintiffs demanded. Ex. 3 to Plaintiffs' Motion for Summary Judgement [Doc. 72]; Ex. 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72].

7. Huerfano County's written code enforcement policy stated that code enforcement officers must obtain administrative warrants to enter property where they have been denied access, without limitation. Ex. 2 to Plaintiff's Amended Complaint and Jury Demand [Doc. 20].

8. Defendant Bensman testified previously that he never obtained Plaintiffs' permission to investigate physically on the property in question because he understood it was never required. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

9. Defendant Bensman testified previously that he never obtained a warrant to investigate on the property in question because he understood it was never required. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

10. Defendant Bensman testified previously that he received from the written Huerfano County code enforcement policy and a county attorney. Ex. 4 to Plaintiff's Amended Complaint and Jury Demand [Doc 20] at 31.

11. Beginning at the 5-minute 30-second mark on Defendant Bensman's bodycam recording of his encounter on the subject property on or about July 13, 2021, Defendant Bensman states, "Well, we came out to see what [Plainitff Guerrero] is doing, and he didn't like that idea. But I am an officer of the court, so I don't have to have any kind of special

6

documentation to come onto anybody's property at any time." Exhibit 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72].

### ARGUMENT

Summary judgement is inappropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed facts must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). "A factual dispute is 'genuine' and summary judgement is precluded if the evidence presented in support of an opposition to the motion is so contradictory that, if presented at trial, a judgement could enter for either party." *Bragg v. Southwest Health System, Inc.*, 487 F.Supp.3d 1028, 1032 (D. Colo. 2020).

Defendant Bensman claims that he is entitled to summary judgement (and qualified immunity) because he did not search the curtilage of the home, because there was no clearly established right violated, and because the intrusion was *de minimus*. Defendant Bensman also claims that he is entailed to summary judgement on Plaintiffs' punitive damages claim because "Plaintiffs adduced no evidence Defendant [Bensman] objectively acted with malice, with evil motive, willfully, wantonly, or with reckless indifference to their civil rights, or that he objectively knew his actions were unconstitutional or contrary to clearly-established law," Defendant Bensman's Motion for Summary Judgement at 21. The Court should deny Defendant Bensman's Motion for Summary Judgement on both grounds.

Plaintiffs' incorporate their Motion for Summary Judgement and the legal arguments and citations therein to this response as many of the arguments directly overlap.

7

## I. DEFENDANT BENSMAN IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE HE DID VIOLATE PLAINTIFFS' CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

Here, there are cross-motions for summary judgement. It is not in dispute that Defendant Bensman entered Plaintiffs' property. What is in dispute is whether that property was an "open field" or within the curtilage of Plaintiffs' home. Plaintiff believes that the undisputed evidence clearly shows that the property was within the curtilage. However, to the extent that there is a factual dispute that the Court finds could go either way, the Court should deny Defendant Bensman's Motion for Summary Judgement.

### a. Plaintiffs had a constitutional right to be free from unreasonable searches of their curtilage.

Defendant Bensman's argument rests on his contention that the water well excavation site, and therefore the location that he entered and searched, was not within the curtilage of Plaintiffs' home. Defendant Bensman is wrong. For the reasons described here, this was firmly within the curtilage of Plaintiffs' home and not an "open field."

Curtilage is "the area immediately surrounding and associated with the home" and is "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984). To the contrary, "open fields" – the "unoccupied or undeveloped area outside of the curtilage" are not protected. *United States v. Dunn*, 480 U.S. 294, 304 (1987).

When the government intrudes on the curtilage, that is a search. *Id.* at 11. In determining if an area is curtilage, relevant factors include "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987).

Here, the *Dunn* factors weigh clearly in support of the water well excavation site being within the curtilage of Plaintiffs' home.

i.   *Proximity of the water well site to the home.*

This factor strongly supports the water well site being within the curtilage. The water well site was located on a large, 160-acre undeveloped parcel of property designated for agricultural use. Despite being located on such a large and otherwise undeveloped piece of property, the water well site was located approximately 20 feet from Plaintiffs' residence. Akin to an island of civilization in a vast ocean, Plaintiffs' home was an island within a large prairie. In this context, the water well site sat virtually as close as possible to Plaintiffs' residence. This is not like a home with some distant out-building or shed. To the contrary, the water well site was in "an area adjacent to the home 'and to which the activity of home life extends.'" *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182).

ii.   *Whether the area is included within an enclosure surrounding the home.*

Although there was no enclosure surrounding the water well site, there was no enclosure surrounding any part of Plaintiffs' home so this factor gives little insight into the question of

9

curtilage. This is not a property with a clearly demarcated fence separating the home and its yard from the rest of the property.

    *iii.*    *The nature of the uses to which the water well site is put.*

This factor weighs heavily in support of the water well site being in the curtilage. "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heighted." *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986).

For Plaintiffs', the water well site was an intimate part of their daily household living. Plaintiffs did not have any other water piped to their home. This water well was their only source of water, possibly the most important of life's necessities. This was not a water well used for a non-domestic purpose, perhaps to water crops or provide water for livestock. It was a water well that was directly next to the home and used by the home.

    *iv.*    *The steps taken by the Plaintiffs to protect the area from observation.*

Although there was not a privacy fence, Plaintiffs clearly took steps to protect their home and its surrounding from observation. Within their property, Plaintiffs chose to situate their home and the water well site over two hundred feet from the nearest public roadway. The water well itself was buried underground and only visible from the road because it was in the process of excavation. As discussed at length in Plaintiff's Motion for Summary Judgement, Plaintiffs' took significant steps to protect the well from observation.

**b.  This constitutional right was clearly established at the time of the search.**

To overcome a claim of qualified immunity, Plaintiffs must also show that the constitutional right was clearly established. A constitutional right is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable [governmental official] that such conduct is prohibited." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016).

Like the use of force by a law enforcement officer, whether an area searched is within a home's curtilage is an individualized and fact specific question, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). The analysis is not "a scavenger hunt for prior cases with precisely the same facts" and is instead an "inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Id*; *See also Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Ci. 2021).

The question of whether the warrantless search of the curtilage of the home is unconstitutional has been clearly established by the United States Supreme Court for at least thirty years. *See United States v. Dunn*, 480 U.S. 294 (1987). Any reasonable government official tasked with entering onto private property to conduct governmental investigations would know that this right was clearly established. *See Hester v. United States*, 265 U.S. 57, 59 (1924) (observing that the distinction between a person's house and open fields "is as old as the common law.").

Here, a reasonable person in Defendant Bensman position would clearly know that it was clearly established law that entering Plaintiff's curtilage for a search was unconstitutional. Because Plaintiffs'

11

have shown that Defendant Bensman's entry into the well site was an entry onto Plaintiffs' curtilage, and that Plaintiffs' had a a clearly established constitutional right to be free from such a search, Defendant Bensman's Motion for Summary Judgement must be denied.

### c. The intrusion was not *de minimis* and in any extent that exception does not apply under these circumstances.

Defendant Bensman argues that an intrusion of 10 minutes, even if it was to the curtilage of the home, was *de minimis* and therefore not actionable. Defendant Bensman is wrong. Defendant Bensman cites to *Artes-Roy v. City of Aspen*, 31 F.3d 958, 962-63 (10th Cir. 1994) in support. In *Artes-Roy*, a building inspector was "one step inside the door" and had "already seen what they considered violations of the stop work order, from outside the premises." *Id.* at 962. Here, like in *Mimics v. Village of Angel Fire*, 394 F.3d 836 (10th Cir. 2005), this was not a situation where previous communications or a stop-work order had been issued. To the contrary, Defendant Bensman was simply investigating the work that was being done and investigating a complaint. Exhibit 1 to Plaintiff's Motion for Summary Judgement at ¶¶4, 12; Exhibit 2 to Plaintiffs' Motion for Summary Judgement at ¶¶4,12; Exhibit 3 to Plaintiffs' Motion for Summary Judgement; Exhibit 4 to Plaintiffs' Motion for Summary Judgement; Exhibit 4 to Plaintiffs' Motion for Summary Judgement; Exhibit 6 to Plaintiffs' Motion for Summary Judgement at 1-3. Further, unlike in *Artes-Roy*, this was not a brief entry. Defendant Sandoval and Defendant Bensman barged their way into the curtilage of Plaintiffs' home to investigate a complaint and remained there for approximately ten minutes. This is simply not the sort of brief and unintrusive violation discussed in *Artes-Roy*.

## II.   DEFENDANT BENSMAN IS NOT ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM.

Defendant Bensman moves for summary judgement on Plaintiffs' punitive damages claim because Plaintiff cannot show that he acted with the requisite intent. Defendant Bensman's motion should be denied. At a minimum, a reasonable juror could find, taking the evidence in the light most favorable to Plaintiffs', that Defendant Bensman knew he was or was recklessly indifferent about whether he was violating Plaintiffs' constitutional rights because he was violating Huerfano County's code enforcement policy which stated that code enforcement officers must obtain administrative warrants to enter property where they have been denied access. Ex. 2 to Plaintiff's Amended Complaint and Jury Demand [Doc. 20]. Additionally, a reasonable juror could consider Defendant Bensman's statements that because he is apparently "an officer of the court" he never "[has] to have any kind of special documentation to come onto anybody's property at any time" to be evidence of Defendant Bensman's reckless indifference to the constitutional rights of everyone, Plaintiffs' included. Ex. 5 to Plaintiffs' Motion for Summary Judgement [Doc. 72].

At best, there is a factual dispute about whether Defendant Bensman knew he was violating Plaintiffs' constitutional rights and therefore this issue is not appropriate for summary judgement.

## CONCLUSION

Because the search of Plaintiffs' property was a search of the curtilage of Plaintiffs' home, because that search violated Plaintiffs' clearly established constitutional rights, and because there is a

13

factual dispute about whether Defendant Bensman knew what he was doing violated Plaintiffs' constitutional rights, the Court should deny Defendant Bensman's motion for summary judgement.

Dated: April 25, 2025.

/s *Jason M Kosloski*
Jason M. Kosloski
Kosloski Law, PLLC
1401 Lawrence Street
Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorney for Plaintiffs DeHerrera and Guerrero*

I hereby certify that the foregoing pleading complies with the type-volume limitations set forth in Judge Domenico's Practice Standard III(A)(2).

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, the foregoing **RESPONSE TO DEFENDANT JEFF BENSMAN'S MOTION FOR SUMMARY JUDGEMENT** was filed using the CM/ECF e-filing system, which sends notice to the following:

>Leslie L. Schluter
>DAGNER | SCHLUTER | WERBER LLC
>lschluter@lawincolorado.com
>*Attorney for Defendants Huerfano County and Sam Jensen*
>
>William T. O'Connell III
>THOMPSON, COE, COUSINS & IRONS LLP
>woconnell@thompsoncoe.com
>*Attorney for Defendant Terry Sandoval*
>
>Matthew J. Hegarty
>HALL & EVANS, L.L.C.
>hegartym@hallevans.com
>*Attorney for Defendant Jeffrey Bensman*

/s/ Jason Kosloski
Jason Kosloski