IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01610-DDD-MDB

SUSAN DEHERRERA and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity, and
SAM JENSEN, in his individual capacity,

    Defendants.

## HUERFANO COUNTY AND SAM JENSEN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, HUERFANO COUNTY and SAM JENSEN, submit the following response to Plaintiffs' Motion for Summary Judgment (Doc. 72, filed 3/21/25):

**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

| No. | Plaintiffs' Fact | County + Jensen Response |
|---|---|---|
| 1 | At all times relevant, Jeff Bensman was Chief Code Enforcement Officer for Huerfano County. Doc. 57 at 5-6. | Undisputed that from Defendant Bensman was employed as Chief Code Enforcement Officer from March 15, 2021 to August 18, 2021. Bensman Testimony, Hearing Transcript, Doc. 20-4 (29:5-7). |
| 2 | At all times relevant, Terry Sandoval was Building Inspector for Huerfano County. *Id* | Admitted that Defendant Sandoval was employed as the Huerfano County Chief Building Inspector from January |

|   |   | 2019 to February 2023. Sandoval Declaration, Doc. 68-1 ¶1. |
|---|---|---|
| 3 | At all times relevant, Sam Jensen was County Planner for Huerfano County. *Id.* | Admitted that in July 2021, Defendant Jensen was employed as Huerfano County Planner. Declaration of Carl Young, Doc. 74-1, ¶5. |
| 4 | On or about July 14, 2021, Susan DeHerrera and Jose Guerrero resided in an RV on the northern side of an undeveloped approximately 142-acre parcel of land owned by DeHerrera in Huerfano County, Colorado. Doc. 20 at 4; Doc 20-1 at 1; Ex. 1 at ¶¶2-3; Ex. 2 at ¶¶2-3; Ex. 3; Ex. 5; Ex. 6 at 2-8. | Disputed. Date of incident was 07/13/2021, Plaintiffs resided in camping trailer, not an RV, and the Property was more than 143 acres. Doc. 70-1 (recording date July 13, 2021); Doc. 70-5, pp. 14-16 (camping trailer not RV 91:5-93:5); Doc. 70-4 (more than 143 acres). |
| 5 | On July 14, 2021, Plaintiffs had contractors install a water well pump to their water well located near the northwest corner of the subject property, approximately 258 feet south of La Deora Boulevard. Doc. 20 at 5; Ex. 1 at ¶4; Ex. 2 at ¶4; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8 | Disputed. Date of pump installation was 07/31/2021. Bensman Declaration, Doc. 70-2 (¶¶ 1, 7, 41); Bensman Bodycam, Doc. 70-1; Doc. 72-6); Doc. 70-1. |
| 6 | At all times relevant, Plaintiffs were the owners of said water well and water pump. Ex. 1 at ¶5; Ex. 2 at ¶5; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8. | Disputed. Mr. Guerrero did not own the Property on 07/13/2021 and the pump was not confirmed installed until 07/17/2021. Doc. 70-5, 3-6 (43:13-44:11, 45:6-9, 45:23-46:12); Pump Installation and Equipment Test Report, Doc. 96-1. |
| 7 | At all times relevant, Plaintiffs' water well and water pump were installed beneath the ground and neither visible nor available to the public. Doc. 20 at 5; Ex. 1 at ¶6; Ex. | Disputed. Portions of the well were above ground and visible to the public. Doc. 72-3 (00:15-00:24). |

2

|    |                                                                                                                                                                                                                                                                    |                                                                                                                                                                                                                                                                    |
|----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | 2 at ¶6; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.                                                                                                                                                                                                                 |                                                                                                                                                                                                                                                                    |
| 8  | At all times relevant, Plaintiffs did not have water piped into their RV. Ex. 1 at ¶7; Ex. 2 at ¶7; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 2-8.                                                                                                                      | Undisputed that on 07/13/2021, Plaintiffs did not have water piped directly into their trailer. Doc. 70-8 (videos).                                                                                                                                                |
| 9  | At all times relevant, Plaintiffs used the water well and water pump as their primary source of water through a connected hose. Ex. 1 at ¶8; Ex. 2 at ¶8.                                                                                                          | Disputed. The pump was in process of being installed on 07/13/2021. Doc. 72-3 (00:01-10:35).                                                                                                                                                                       |
| 10 | On or about July 14, 2021, the RV in which Plaintiffs resided was located several feet from the excavated water well site on the southwest side of the site. Ex. 1 at ¶9; Ex. 2 at ¶9; Ex. 3; Ex. 5; Ex. 6 at 2-8.                                                 | Disputed. Incident date was 07/13/2021; Plaintiffs resided in a camping trailer, not an RV; trailer was at least 40 feet from the well site. *See generally* Doc. 70-1*;* Doc. 70-2, ¶ 37; Doc. 70-7, 00:01-01:53; Doc. 70-8, at 00:01-00:13.                       |
| 11 | At all times relevant, Plaintiffs maintained their water well and water pump privately and excluded the public. Ex. 1 at ¶10; Ex. 2 at ¶10.                                                                                                                        | Disputed. The County regulates water connections, for which permits are required, and did so on 07/13/2021. County Resolution 17-13, Doc. 96-2, p.1 adopting 2015 IRC; Doc. 96-3 (IRC § 105.1 Permits Required, p.1).                                              |
| 12 | Plaintiffs' excavation of the water well site and installation of the water well pump drew the attention of Jeff Bensman and Terry Sandoval. Doc. 20 at 3, 5; Ex. 1 at ¶¶4, 12; Ex. 2 at ¶¶4, 12.                                                                  | Disputed. Bensman Decl. Doc. 70-2, ¶ 6. ("Environmental Health Director Sykes asked [him] to visit property in connection with potential code violation."); Hearing Tr., Doc. 70-3 (18:13-17).                                                                     |
| 13 | On or about July 14, 2021, Bensman and Sandoval drove onto the subject property from La Doura Boulevard to investigate the work at the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶¶4, 12; Ex. 2                                                            | Disputed. They visited the Property on 07/31/2021 due to a potential code violation. Doc. 70-2 ¶ 6; (Hearing Tr., Doc. 70-3 (18:13-17).                                                                                                                            |

3

|    |    |    |
|----|----|----|
|    | at ¶¶4, 12; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3. |    |
| 14 | Sandoval parked his white truck on Plaintiffs' property, about 258 feet South of La Deora Boulevard, and just a few feet away from the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶13; Ex. 2 at ¶13; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3. | Disputed. Mr. Sandoval did not park his truck "just a few feet away" from the well site, but rather near the end of the dirt pile, approximately 20 feet from the well site. Sandoval Declaration, Doc. 68-1 ¶ 6; Herrera Depo., Doc. 68-3 (177:24-178:9). He parked at least two truck lengths away. Doc. 72-4, p. 2. |
| 15 | Bensman parked his dark colored truck on Plaintiffs' property, directly behind Sandoval's truck. Doc. 20 at 5; Ex. 1 at ¶14; Ex. 2 at ¶14; Ex. 3; Ex. 4 at 1-2; Ex. 5; Ex. 6 at 1-3. | Undisputed. |
| 16 | Bensman and Sandoval both exited their vehicles and approached within a few feet of the excavated water well site. Doc. 20 at 5; Ex. 1 at ¶15; Ex. 2 at ¶15; Ex. 3; Ex. 5; Ex. 6 at 1-8. | Disputed. Mssrs. Bensman and Sandoval did not approach within "a few feet" of the well site but instead stayed about 40 feet away. Doc. 70-1 (06:00-06:54); Doc. 70-2 (¶ 36); Doc. 70-7 (00:01-01:53). |
| 17 | Susan DeHerrera and Jose Guerrero repeatedly demanded that Bensman and Sandoval leave the subject property. Doc. 20 at 5, 7; Ex. 1 at ¶16; Ex. 2 at ¶16; Ex. 3; Ex. 5. | Admitted as to Mr. Guerrero. Disputed as to Ms. DeHerrera. It was not until appx six minutes into the encounter that Ms. DeHerrera demanded that they leave. Doc. 70-1 (06:19-06:22). |
| 18 | Bensman and Sandoval continued their investigation of the water well work on the subject property. Doc. 20 at 5, 7; Ex. 1 at ¶17; Ex. 2 at ¶17; Ex. 3; Ex. 5; Ex. 6 at 2-8 | Admitted that, after first attempting to speak with Mr. Guerrero, Mr. Sandoval spoke briefly with Ms. DeHerrera and the WWP employees before leaving. Sandoval Declaration, Doc. 68-1 (¶¶ 12, 13); Doc. 68-5 (06:30-06:45); Doc. 68-8 (02:46-04:51). |

4

| | | |
|---|---|---|
| 19 | Bensman and Sandoval walked near the edge of the excavated water well site and visually inspected the surface ground and the partially visible soil and contents beneath the ground. Ex. 1 at ¶18; Ex. 2 at ¶18; Ex. 3; Ex. 5; Ex. 6 at 4-8. | Disputed. Doc. 70-1; Doc. 70-1 (06:00-06:54); Doc. 70-2, ¶ 36; Doc. 70-7 (00:01-01:53). |
| 20 | The RV in which Plaintiffs resided was located several feet from the excavated water well site, opposite the side of the site which Bensman and Sandoval visually inspected. Ex. 1 at ¶19; Ex. 2 at ¶19; Ex. 3; Ex. 5; Ex. 6 at 2-8. | Disputed. Plaintiffs resided in a camping trailer and the trailer was at least 40 feet from the well site. *See generally* Doc. 70-1*;* Doc. 70-2 (¶ 37); Doc. 70-7 (00:01-01:53); Doc. 70-8 (00:01-00:13). |
| 21 | Bensman and Sandoval questioned Plaintiffs about whether the water well work was being done under a permit and license. Ex. 1 at ¶20; Ex. 2 at ¶20; Ex. 3; Ex. 5. | Undisputed. |
| 22 | Bensman and Sandoval questioned the on-site contractors about whether the water well work was being done under a permit and license. Doc. 20 at 5; Ex. 1 at ¶21; Ex. 2 at ¶21; Ex. 3; Ex. 4 at 2; Ex. 5. | Undisputed. |
| 23 | Bensman spoke with an off-site company representative by telephone and inquired whether the company's work on the subject property was being done under a permit and license for such work in Huerfano County. Ex. 5. | Undisputed. |
| 24 | Huerfano County's written code enforcement policy stated that code enforcement officers must obtain administrative warrants to enter | Undisputed as to the words of the entire policy (Doc. 20-2, pp. 10-11), but disputed that Plaintiffs' |

5

|    |                                                                                                                                                                                                                                                                              |                                                                                                                                                                                                                                              |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | property where they have been denied access, without limitation. Doc. 20-2 at 10-11.                                                                                                                                                                                         | characterization is complete or correct. Doc. 20-2, pp. 10-11.                                                                                                                                                                               |
| 25 | Prior to July 14, 2021, Plaintiffs accessed, read, and understood the Huerfano County code enforcement policy made available publicly via Huerfano County's website. Doc. 20-2 at 10-11; Ex. 1 at ¶22; Ex. 2 at ¶22.                                                         | Disputed that Plaintiffs "understood" the policy. *See* Doc. 70-1 (02:18-02:23); Doc. 70-2 (¶27); Doc. 70-7 (02:13-02:15); Doc. 70-1 (02:29-02:40); Doc. 70-1 (2:45-2:52); Doc. 70-2 (¶29); Doc. 70-7 (02:37-02:45); Doc. 96-3. |
| 26 | Prior to July 14, 2021, Plaintiffs understood that the Huerfano County code enforcement policy required code enforcement officers to obtain an administrative warrant when access to a property was denied by the owner or resident. Doc. 20-2 at 10-11; Ex. 1 at ¶23; Ex. 2 at ¶23. | Disputed that Plaintiffs "understood" the policy. Plaintiffs did not understand the policy properly in context as evidenced by their verbal and physical aggression demonstrated in the videos. *See also* Docs. 96-2 and 96-3.              |
| 27 | Bensman testified previously that he was "always" investigating while physically on the subject property. Doc. 20-4 at 30.                                                                                                                                                   | Undisputed as to what Mr. Bensman answered, "Q: [W]hen you were on the property ... were you conducting any investigations? A: Always." Doc. 70-3 at 4.                                                                                      |
| 28 | Bensman testified previously that he never obtained Plaintiffs' permission to investigate physically on the property in question because he understood it was never required. Doc. 20-4 at 31.                                                                               | Disputed. Mr. Bensman testified: "We would ask simply as a courtesy but it was not necessary according to -- according to what we were instructed." Doc. 70-3 at 5 (31:4-5).                                                                 |
| 29 | Bensman testified previously that he never obtained a warrant to investigate on the property in question because he understood it was never required. Doc. 20-4 at 31.                                                                                                       | Disputed. Mr. Bensman testified: "Q: Okay. And at no time that you had been on the property did you ever obtain an administrative warrant, did you? A: . . . No, but I did file several complaints…" Doc. 70-3 at 5 (31:9-12).               |

| 30 | Bensman testified previously that his actions on the subject property were in accordance with the instructions that he received from the written Huerfano County code enforcement policy and a county attorney. Doc. 20-4 at 31. | Disputed. Mr. Bensman testified that he would ask for permission to access or stay on the property as a courtesy, but it was not necessary according to what he was told by a former county attorney. Doc. 70-3 at 4-5 (30:21-31:8). |
| --- | --- | --- |
| 31 | Beginning at the 5-minute 30-second mark on Bensman's bodycam recording of his encounter on the subject property on or about July 14, 2021, Bensman states, "Well, we came out to see what he (Jose Guerrero) is doing, and he didn't like that idea. But I am an officer of the court, so I don't have to have any kind of special documentation to come onto anybody's property at any time." Ex. 5. | Disputed as to date, otherwise admitted. |

### RESPONSE ARGUMENT

In Section IV of their motion, Plaintiffs entitle their argument against the County and Sam Jensen, "Jensen and Huerfano County's Failure to Adequately Train Bensman and Sandoval on the County's Written Code Enforcement Policy Amounts to Deliberate Indifference of Plaintiffs' Fourth Amendment Rights." Pltfs' Mot. Summ. Jmt, Doc. 72, pp. 15-17. This assertion sounds dramatic, but it has no factual foundation. The following sections address the components of Plaintiffs' Section IV argument.

**A.   Plaintiffs' Claim That Sam Jensen Failed to Train Jeff Bensman and Terry Sandoval is Factually Groundless.**

7

Plaintiffs argue that Sam Jensen failed to train Jeff Bensman and Terry Sandoval and that this supposed failure to train amounted to deliberate indifference. *Id.*

Plaintiffs offer no factual support. After disclosures and discovery, the record is devoid of evidence that Mr. Jensen had training responsibility for Mr. Bensman and Mr. Sandoval. The only evidence is that Mr. Jensen was County Planner and co-equal with Mssrs. Bensman and Sandoval. Declaration of Carl Young, Doc. 74-1, ¶¶4, 5, 6. These individuals reported to the County Administrator, not to each other. *Id. Ipso facto*, Mr. Jensen could not have been deliberately indifferent to a responsibility he did not have.

### B. Plaintiffs' Speculation of Deliberately Indifferent Failure to Train Base on Single Event Does Not Create a Dispute of Material Fact.

Plaintiffs have no quarrel with the County's written policy. *See e.g.,* Compl. ¶ 66, Compl. Exhibit 2 (Doc. 20-2), pp. 10-11. In fact, they have held it up as a statement of policy with which they agree. The 22-page Code Enforcement Policy adopted in 2018 contained this passage in section 3:

> 3. **Entering Upon Property or Premises.**
> Code Enforcement staff may enter upon private property to conduct a field investigation without authority to enter. Code Enforcement staff may enter property to seek permission to investigate the premises. If the property owner refuses access at any time, the investigation shall be conducted from public roads or property where permission to enter has been granted. If Code Enforcement staff are refused access or entry, and entry is necessary to

8

> conduct the investigation, staff shall consult with the County Court Judge to go about obtaining an administrative search warrant.

Plaintiffs' argument is not that the County written policy was constitutionally defective, but rather that this under 10-minute visit by Mssrs. Sandoval and Bensman evidences a custom of deliberate indifference to training code enforcement officials not to conduct unreasonable searches in violation of Fourth Amendment rights. They attempt to bolster their argument of deliberately indifferent failure to train by citing statements that Mr. Bensman made about why he did not get an administrative warrant – to the effect that a former county attorney told him he was not required to do so.

Plaintiffs fail to mention that Mr. Bensman's employment as Code Enforcement Officer lasted five months. Bensman Testimony, Hearing Transcript, Doc. 20-4 (29:5-7). After disclosures and discovery, they offer no other similar event. Their only citation is to *Canton v. Harris*, 489 U.S. 378, 388-89 (1989). While *Canton* established that municipalities can be held liable for inadequate training if the failure to train reflects a "deliberate indifference" to the rights of those with whom the police come into contact, they offer no case that would support such a finding on the facts that are undisputed in this case.

Plaintiffs concede, "It is highly unlikely that a county attorney would instruct code enforcement officers not to adhere to the written policy requirements, as doing so would expose the County and the code enforcement officers to considerable

9

liability for constitutional violations . . . ." Pltfs Mot. Summ. Jmt, p. 16, Doc. 72. After noting that the written policy does not make the distinctions found in constitutional law, they conclude: "One can readily infer that Huerfano County's code enforcement policy requiring a warrant when access is denied is purposed to protect its residents from precisely the constitutional violations that Plaintiffs have suffered here." *Id.* This again has no evidentiary or legal support.

In offering this speculation, Plaintiffs overlook other potential explanations, such as the possibility that a board sought to protect staff from individuals from Plaintiff Guerrero – a person who was immediately aggressive, profane, and who yelled that Mr. Bensman had pushed him, when his wife's own cell phone video proved that the opposite had just occurred. *See* Bensman's Fact 27, Doc. 70.

A "municipality may not be held liable where there was no underlying constitutional violation . . . ." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993). Because the Visit was not an unreasonable search and since Plaintiff's rights were not violated, *Monell* liability cannot exist.

## RESPONSE CONCLUSION

Plaintiffs assumed that Sam Jensen was co-defendants' supervisor / trainer, then he was in fact neither. He requests qualified immunity because after disclosures and discovery, the only evidence is that he was in the same department as co-defendants, but their equal, not their supervisor. Moreover, no clearly

10

established law would have informed a reasonable Land Use Planner in Jensen's position that his conduct (again, whatever that was) would be in violation.

The absence of an underlying violation renders moot the question of *Monell* liability against the County. Moreover, after Plaintiffs had a full opportunity to conduct discovery, there is no evidence that Huerfano County was deliberately indifferent in failing to train.

Huerfano County and Sam Jensen request summary judgment in their favor, together with costs.

Respectfully submitted,

*I certify that the foregoing response is within Judge Domenico's practice standard type-volume limitation.*

By  s/Leslie L. Schluter
    Leslie L. Schluter
    DAGNER | SCHLUTER | WERBER LLC
    8400 East Prentice, Suite 1401
    Greenwood Village, CO 80111
    Telephone: (303) 221-4661
    E-mail:  lschluter@lawincolorado.com

ATTORNEYS for DEFENDANTS HUERFANO COUNTY and SAM JENSEN

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on May 23, 2025, I electronically filed the foregoing **HUERFANO COUNTY AND SAM JENSEN'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the

11

CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Taylor G. Minshall, Esq.<br>Tanner W. Havens, Esq.<br>tminshall@relevantlaw.com<br>thavens@relevantlaw.com | Matthew J. Hegarty, Esq.<br>HALL & EVANS, L.L.C.<br>hegartym@hallevans.com |
| William T. O'Connell III, Esq.<br>THOMPSON, COE, COUSINS & IRONS, LLP<br>woconnell@thompsoncoe.com | s/Leslie L. Schluter |

12