IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01610-DDD-MDB

SUSAN DEHERRERA; and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality;
JEFF BENSMAN, in his individual capacity;
TERRY SANDOVAL, in his individual capacity; and
SAM JENSEN, in his individual capacity,

    Defendants.

---

**DEFENDANT JEFFREY BENSMAN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Defendant Jeffrey Bensman ("Defendant"), via counsel, Hall & Evans, L.L.C., now submits his Reply in Support of Motion for Summary Judgment, as follows:

## I. REPLY CONCERNING PLAINTIFFS' RESPONSE TO DEFENDANT BENSMAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS

8. Plaintiffs' denial of this Fact is improper, where Plaintiff DeHerrera's own video footage clearly shows the well was visible to the public. [**Ex. G**, 00:15-00:24; *see* **Ex. A**, 00:28-00:40 (Defendant's verbal recitation of visual confirmation of same)].

27. Plaintiffs do not identify which part of Fact 27 they are denying.

34. Again, it is unclear which part of Fact 34 Plaintiffs deny. If Plaintiffs deny DeHerrera failed to demand, directly to Defendant, that Defendant vacate the

Property until more than halfway into his visit, such a denial is improper because it is directly refuted by video evidence. [**Ex. A**, 06:19-06:22].

36-37. In disputing these Facts, Plaintiffs cite to their own Declarations [ECF 72-1 and 72-2], which merely assert Defendant and Sandoval exited their vehicles and approached within "a few feet" of the excavated water well site. But this vague distance estimate is directly refuted by Defendant's BWC footage, DeHerrera's own footage, and the footage in Exhibit H, which all show Defendant did not come within two truck lengths of the pipeline installation (approximately 40 feet), which installation was about two more truck lengths away from the corner of Plaintiffs' camper (again, approximately 40 feet). [*See generally* **Ex. A**; **Ex. A**, 06:00-06:54; **Ex. G**, 00:01-01:53; **Ex. H**, 00:01-00:13].

38-39. Plaintiffs' denial of these Facts is improper. Defendant's BWC footage and DeHerrera's own footage show Defendant never used his body to touch Guerrero on the chest, but rather, Guerrero gave Defendant a forearm shove while stating "Don't push me, man." [*See generally* **Ex. A**; **Ex. A**, 02:18-02:23; **Ex. G**, 02:13-02:15]. Indeed, Plaintiffs previously admitted in response to Fact 27 that the video speaks for itself. [*See* ECF 99 at 3, RSUMF ¶27].

## II. REPLY CONCERNING PLAINTIFFS' STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS

In their Response, Plaintiffs incorporate by reference all the facts in their Statement of Undisputed Material Facts section of their Motion for Summary Judgment. [ECF 99 at 4-7]. Defendant previously responded to all these facts and,

2

thus, hereby incorporates his Response to Statement of Undisputed Material Facts in his Response to Plaintiffs' Motion for Summary Judgment. [ECF 96 at 2 (¶8), 3 (¶¶10, 15, 16, 17, 18), 4 (¶24), 5 (¶¶28, 29, 30, 31)].

### III. ARGUMENT

None of the arguments, authorities, or facts (or lack thereof) Plaintiffs present alter the propriety of this Court granting Defendant summary judgment. Each of Plaintiffs' denials of Defendant's Undisputed Material Facts is improper and expressly rejected by video footage, at times multiple sources of video footage (including Plaintiffs'). This footage also is inconsistent with their deposition testimony, as further described in Defendants' Joint Motion to Strike Parts of Plaintiffs' Summary Judgment Declarations as Sham Affidavits, concurrently filed herewith.[1] [ECF 102]. Defendant should be granted summary judgment.

**A. Defendant Didn't Violate Plaintiffs' Fourth Amendment Rights Against Unreasonable Search; Any Intrusion Was De Minimis Or Covered By Qualified Immunity.**

1) <u>The evidence and undisputed facts reflect Defendant didn't "search" Plaintiffs' curtilage.</u>

Plaintiffs argue the ***Dunn*** factors demonstrate their water well system is within the curtilage of their fifth-wheel camper, but don't provide evidence of

---

[1] For instance, in denying Defendant's Undisputed Material Fact 38 that Defendant never used his body to touch Guerrero on the chest, Plaintiffs cite Guerrero's deposition testimony, where he claims Defendant punched or tapped his sternum. [*See* Response, RSUMF, ¶38]. But the video footage of the visit confirms this never occurred. [*See* Reply Concerning Plaintiffs' RSUMF, ¶¶38-39, *supra*].

3

sufficient facts or legal authority in support. Regarding proximity, Plaintiffs assert the distance between the well and camper was approximately 20 feet. But they provide no evidence of this either, whereas Defendant provided evidence confirming the distance is approximately 40 feet and Defendant didn't come within about 80 feet of the camper. [*See* Reply to RSUMF, ¶¶36-37 *supra*; ECF 102]. Even so, areas near a "home" are held outside the curtilage when 20 feet away. *See, e.g.*, **U.S. v. Jackson**, 728 F.3d 367, 374 (4th Cir. 2013); **U.S. v. Wilburn**, 2012 U.S.Dist.LEXIS 66300, at *8-11 (E.D. Ky. Mar. 5, 2012). Regardless, Defendant showed why Plaintiffs' estimates of distances needn't be treated as factual. [*Compare* ECF 72-1 *and* ECF 72-2, *with* ECF 102, ECF 102-1, *and* ECF 102-2].

Regarding whether the area was included within an enclosure surrounding the home, Plaintiffs assert because no enclosure surrounded any part of the camper, this factor didn't affect the curtilage analysis. They're wrong. The absence of a fence or other enclosure "surrounding the residence serv[ing] to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house" weighs <u>against</u> a finding the area is within "curtilage". *See* **U.S. v. Dunn**, 480 U.S. 294, 302 (1987); **U.S. v. Long**, 176 F.3d 1304, 1308 (10th Cir. 1999)(in holding trailer, approximately seven feet from home, was outside curtilage of home, court considered that "no fence or other barrier enclosed the trailer or the home"); **Reeves v. Churchich**, 484 F.3d 1244, 1255-56 (10th Cir. 2007)(front yard of duplex not considered curtilage, in part because no evidence it or any part of it is enclosed).

4

Indeed, even if Plaintiffs had a perimeter fence, they'd still need an enclosure clearly marking their home's "curtilage". *See* **U.S. v. Belisle**, 2013 U.S.Dist.LEXIS 17805, at *15 (D. Me. Feb. 11, 2013)(argument camper's curtilage extended to perimeter fence on plaintiff's property meant "the little camper enjoyed a curtilage of approximately 70-80 acres. That theory stretches the curtilage concept beyond recognition.").

Third, for the nature of the well system's use, Plaintiffs assert it was an intimate part of their daily household living because they didn't have any other water piped to their home, it was their only source of water, and it wasn't used for non-domestic purposes. But Plaintiffs admit the Property was zoned agricultural and used by them in that manner, which use repeatedly is deemed open fields. [ECF 99 at 2, 4, RSUMF ¶¶7, 43]; *e.g.*, **U.S. v. Anderson-Bagshaw**, 509 F.App'x 396, 403-04 (6th Cir. 2012)("Without a doubt, the 'barnyard' and 'pasture' areas were outside the curtilage of Bagshaw's home."); **U.S. v. Van Damme**, 48 F.3d 461, 464 (9th Cir. 1995). Regardless, even a front yard isn't curtilage absent sufficient objective evidence the yard is being "used for intimate activities of the home." **Reeves**, 484 F.3d at 1255. Particularly not where, as here, Plaintiffs admit the area adjoining the cistern and trailer was used for storage of other trailers, multiple vehicles, and piles of junk. [ECF 99 at 3, RSUMF ¶32]; *see* **U.S. v. Bell**, 191 F.App'x 663, 668 (10th Cir. 2006)(relevant area was "used to store vehicles and trailers, hardly a private activity associated with the intimacy of a home"); **U.S. v. Powell**, 840 F.App'x 316, 319 (10th Cir. 2020)(boat storage disfavored curtilage). If Plaintiffs truly were using the water

5

well site solely for their personal use, why <u>wouldn't</u> they have it piped directly to their camper? But they didn't. In any event, installing a pipeline and cistern isn't closely associated with intimate domestic activity, and they didn't identify a case so holding.

Last, Plaintiffs assert they clearly took steps to protect their home and its surroundings from observation. Yet they merely installed the system below ground, placed it 258 feet from a public roadway, and used it as their private and primary source of water to the exclusion of the public (the last of which is irrelevant regarding whether they protected it from passerby observation). [*See* ECF 72 at 7-9]. Despite these so-called "steps", Plaintiffs concede Defendant (from La Deora Boulevard and before entering the Property) had an unobstructed view of activities on the Property, namely: WWP personnel installing a pipeline, a big blue container near the pipeline installation site (the cistern), two trucks with WWP livery including a 20-foot-long Ford F-450 with a 50-foot-high crane effecting installation, no physical barrier excluding him from the Property, and an unfenced, unenclosed, non-self-propelled, camping trailer. [*See* ECF 99 at 2-3, RSUMF ¶¶9-13, 18-20].

Even if Plaintiffs had installed a "No Trespassing" sign, perimeter fence, or open gate, these wouldn't matter and could be navigated without invoking the Fourth Amendment. S*ee **Oliver v. U.S.***, 466 U.S. 170, 179 (1984); ***Dunn***, 480 U.S. at 301-05; ***U.S. v. Lewis***, 240 F.3d 866, 871 (10th Cir. 2001). Nor does a "homeowner" telling an official standing on open acreage that he didn't have a right to be there invoke the Fourth Amendment. *See **Rieck v. Jensen***, 651 F.3d 1188, 1189, 1191-94 (10th Cir.

6

2011). The evidence and undisputed facts, pursuant to the ***Dunn*** factors, confirm Plaintiffs' water well site wasn't within the curtilage of their "home".

2) <u>Even if Defendant searched the "curtilage", his actions were de minimis.</u>

Any intrusion by Defendant was de minimis. The Court should ignore Plaintiffs' dramatization of Defendant's visit to the Property. Defendant and Sandoval didn't "barge[] their way into the curtilage of Plaintiffs' home". Like the code enforcement officer in ***Artes-Roy***, Defendant wasn't at the Property to effect any search or seizure. *See **Artes-Roy v. City of Aspen***, 31 F.3d 958, 962 (10th Cir. 1994. Like the officer in ***Artes-Roy***, Defendant was acting on prior information he'd received. *See **id.*** at 960. Indeed, Plaintiffs admit County Environmental Health Director Robin Sykes asked Defendant to visit the Property for a potential violation. [*See* ECF 99 at 2, RSUMF ¶6]. If the ***Artes-Roy*** officer's visit was a de minimis, nonactionable intrusion inside the home's threshold, then Defendant's – which involved him staying at least 80 feet away from Plaintiffs' home, and 40 feet from their excavation site –most certainly is a de minimis intrusion.

And Plaintiffs' best case, ***Mimics, Inc. v. Vill. of Angel Fire***, 394 F.3d 836 (10th Cir. 2005), is totally inapposite. There, a building inspector entered the plaintiff's private business, operated out of a condominium in a Residential-Multiple Family zone, through a back door typically kept locked, without announcing himself, and without permission. When a business owner caught him sneaking around, she was frightened and disturbed by his appearance and asked, "What the hell is going

7

on in here?" She asked him to leave several times, but he continued looking around and alleged he entered the premises due to his observation of building materials outside the building's door. *Id.* at 839-40. Nearly a month later, the inspector again entered the commercial premises unannounced and without permission or a warrant. When the inspector ran into the business owner's spouse, who asked what he was doing, the inspector stated, "I can come into any business in Angel Fire anytime I want to!" *Id.* at 840. Ultimately, the Tenth Circuit affirmed the denial of qualified immunity for the inspector on the Fourth Amendment claim, emphasizing he needed to go through the warrant procedure to enter a commercial premises not open to the public without consent. *See id.* at 845.

Here, however, Defendant didn't enter a commercial premises – or a residential premises. He didn't sneak through some back door of Plaintiffs' fifth wheel based on items he saw outside it. Instead, Defendant visited the Property due to information he received from Ms. Sykes regarding a potential violation at the Property [which Plaintiffs concede], driving onto the Property in plain view from a public access road [which Plaintiffs also concede], and parking about 80 feet away from Plaintiffs' fifth wheel and about 40 feet away from where the alleged violation was occurring. After a brief, less-than-ten-minute encounter with Plaintiffs, Defendant left. [*See generally* **Ex. A;** ECF 99 at 4, RSUMF ¶39]. His visit was at most a de minimis intrusion.

8

3) <u>The Law Surrounding Defendant's Actions Wasn't Clearly Established on or Before July 13, 2021.</u>

Defendant doesn't dispute the generalized right against unreasonable searches broadly existing under the Fourth Amendment is clearly established. As described in his Response to Plaintiff's Motion for Summary Judgment, however, that right applies only to specific circumstances. If it were unlimited or all-encompassing, the language specifying the right applies to "persons, houses, papers, and effects" would be superfluous and confusing, given basic interpretation principles. [*See* U.S. Const. amend. IV; ***Bradshaw v. Am. Airlines, Inc.***, 123 F.4th 1168, 1181 (10th Cir. 2024) (in interpreting legal texts, the expression of one thing implies the exclusion of others)]. Plaintiffs merely and broadly reiterate "the warrantless search of the curtilage of the home is unconstitutional" and this right "has been clearly established by the United States Supreme Court for at least thirty years", failing to show the alleged search of their water well excavation site falls within one of the four areas the Fourth Amendment specifically protects. [*Cf.* ECF 99 at 11].

In support, Plaintiffs assert they need not have supporting caselaw "with precisely the same facts" and that "there will almost never be a previously published opinion involving exactly the same circumstances." [ECF 99 at 11]. True to form, they don't identify any. However, for the law to be "clearly established", if a U.S. Supreme Court or Tenth Circuit decision isn't factually on point, <u>other courts' clear weight of authority must find the law is as Plaintiffs maintain</u>. ***Medina v. City & Cnty. of Denver***, 960 F.2d 1493, 1498 (10th Cir. 1992). And Plaintiffs haven't produced any

9

of this authority either. They provided no authority – Tenth Circuit, U.S. Supreme Court, or otherwise – clearly establishing the supposed unlawfulness of entering a vast parcel of real property: with no four-walled structure; with no colorable fence or improved area sufficient to notify anyone anything except maybe the trailer was "dwelling-like"; used for activities not commonly associated with a home's intimacy like storing vehicles and junk, farming, and animal husbandry; with no substantial steps to shield any activity on it from the public eye; where Defendant didn't come within either 80 feet of the "dwelling-like" trailer or 40 feet of the installation area; and where he simply was there to conduct a simple compliance visit and ask basic questions. Moreover, the available Tenth Circuit or Supreme Court precedent doesn't "make it clear to every reasonable officer" that conduct such as that of Defendant is prohibited. *See* **Perea v. Baca**, 817 F.3d 1198, 1204 (10th Cir. 2016). Indeed, quite the opposite, as described in Section A(1) *supra*.

Finally, Plaintiffs misrepresent **Casey v. City of Fed. Heights**, 509 F.3d 1278 (10th Cir. 2007). **Casey** didn't involve an alleged Fourth Amendment search, but alleged excessive force, an inquiry that's much more factbound than the issues here.

**B. Plaintiffs Haven't Provided Any Evidence to Demonstrate Defendant's Evil Motive or Reckless Indifference and, Thus, Cannot Assert Entitlement to Exemplary Damages at Trial.**

In arguing they are entitled to exemplary damages, Plaintiffs mischaracterize pertinent facts in the substance of their Response despite admitting them in the facts section of their Response. Specifically, Plaintiffs admit the code enforcement policy

10

states: "At the discretion of Code Enforcement staff or other assigned staff, a field visit to the vicinity of the subject property may be conducted <u>with or without prior notice to the property owner, occupant, or alleged code violator</u>." [ECF 99 at 3, RSUMF ¶14; ECF 72, SUMF ¶14 (emphasis added)]. It continues, "Code Enforcement staff may enter upon private property to conduct a field investigation <u>without authority to enter</u>." [*See **id.*** (emphasis added)]. Accordingly, a reasonable juror wouldn't be able to find it was inappropriate for Defendant to believe he did not have to possess or show any certain documentation to enter the Property and, thus, also wouldn't be able to find Defendant exhibited evil motive or reckless or callous indifference to Plaintiffs' constitutional rights when he did so. *See **Smith v. Wade***, 461 U.S. 30, 56 (1983); ***Jolivet v. Deland***, 966 F.2d 573, 577 (10th Cir. 1992) ("acted with malice or knew [his] actions were unconstitutional").

### IV. <u>CONCLUSION</u>

In conclusion, for the above reasons, Defendant Jeffrey Bensman respectfully reiterates his requests, first made in his Motion, that this Court enter an Order: granting Defendant's Motion for Summary Judgment; dismissing Plaintiffs' Complaint against him with prejudice; awarding him costs of suit; and entering all other and further relief deemed just and proper.

11

Dated and respectfully submitted this 6th day of June, 2025.

*s/ Matthew J. Hegarty*
Matthew J. Hegarty
HALL & EVANS, L.L.C.
1001 17th Street, Ste. 300
Denver, CO  80202
T:  303-628-3300
F:  303-628-3368
hegartym@hallevans.com
**ATTORNEY FOR DEFENDANT JEFFREY BENSMAN**

I hereby certify the foregoing Reply complies with the type-volume limitation within DDD Civ. P.S. III(A)(1). Specifically, this Reply contains 2,699 words.

*s/ Matthew J. Hegarty*
Matthew J. Hegarty

**CERTIFICATE OF SERVICE [CM/ECF]**

I hereby certify that, on June 6, 2025, I electronically filed the foregoing **DEFENDANT JEFFREY BENSMAN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court via the CM/ECF system, which will send notification of the filing to the following email addresses:

Jason M. Kosloski
KOSLOSKI LAW, PLLC
jkosloski@kosloskilaw.com
*Attorney for Plaintiffs*

Leslie L. Schluter
DAGNER | SCHLUTER | WERBER LLC
lschluter@lawincolorado.com
*Attorneys for Defendants Huerfano County and Sam Jensen*

William T. O'Connell III
THOMPSON, COE, COUSINS & IRONS LLP
woconnell@thompsoncoe.com
*Attorneys for Defendant Terry Sandoval*

*s/ Erica Cameron*
Erica Cameron, Legal Assistant

13