**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-01610-DDD-MDB

SUSAN DEHERRERA, and
JOSE GUERRERO,

    Plaintiffs,

v.

HUERFANO COUNTY, a municipality,
JEFF BENSMAN, in his individual capacity,
TERRY SANDOVAL, in his individual capacity, and
SAM JENSEN, in his individual capacity,

    Defendants.

---

## ORDER

---

Defendants are three Huerfano County, Colorado, employees and the County itself. Plaintiffs allege the Defendants violated their rights under the Fourth Amendment by entering their property without permission to conduct a search by inspecting a water well site that was being drilled and connected. Each party has filed a motion for summary judgment. Docs. 68, 70, 72, 74. Because the evidence, viewed most favorably to Plaintiffs, fails to establish a constitutional violation, Defendants' motions for summary judgment are granted and Plaintiffs' is denied.

## BACKGROUND

The rough outline of events is not meaningfully disputed. Plaintiffs DeHerrera and Guerrero were having a well installed on their property in Huerfano County for use with their parked camper, though not

- 1 -

plumbed into it.[1] Doc. 72 at 2 ¶¶5, 8. The County received a complaint about this construction and dispatched defendants Sandoval and Bensman to investigate. Doc. 70 at 2 ¶¶3,6. They did so by driving onto the private property where Plaintiffs lived in a camper. The well site itself amounted to a pit dug to contain the well pipe and pump. As a result of the excavation to bury most of the well equipment underground, workers had left a pile of dirt on the side of the well furthest from the camper. Bensman and Sandoval parked their trucks on the side of this pile opposite the camper. Doc. 72 at 3 ¶¶ 14-15. From there, tempers flared. DeHerrera and Guerrero told Bensman and Sandoval to leave, which they eventually did after walking around the well site and arguing with the plaintiffs and the workers installing the well. Each side videotaped the relevant portions of the interactions, both with phones and a body camera.

## APPLICABLE LAW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kansas v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If, drawing all reasonable inferences in the light most favorable to the nonmoving party, a reasonable juror could not return a verdict for

---

[1]   Parties refer to the dwelling alternately as an RV, camper, and a fifth wheel. The outcome does not turn on this potential distinction, so I will go with camper.

the nonmoving party, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

### I.  Open Fields

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. "[H]ouses," for Fourth Amendment purposes, include a home's curtilage, and a home's "front porch is the classic exemplar" of curtilage. *Florida v. Jardines,* 569 U.S. 1 at 1 (2013). But observation of plaintiffs' curtilage from an open field is not a search under the Fourth Amendment. *United States v. Hatfield*, 333 F.3d 1189, 1198 (10th Cir. 2003). The determinative question is whether Defendants Bensman and Sandoval entered the curtilage of the camper or remained in an open field.

Defendants Bensman and Sandoval assert their trucks were parked behind the pile of dirt created by the well drilling. Bensman's body camera footage confirms this. Doc. 72-5.[2] Right at the 1:37 mark in the video, both trucks are visible, as is their location relative to the drilling rig. The relationship of the drilling rig to the camper is shown at 2:36. *Id.*[3] 3:50 in the video captures the closest either Sandoval or Bensman got to the camper. Plaintiffs characterize this distance as "just a few feet away from the excavated water well site" Doc. 72 at 3 ¶15, and this excavated well site as "several feet" from the camper. *Id.* at ¶20. Each

---

[2]  Each party submitted identical videos as exhibits to their motions. For clarity, I use the labeling system from Plaintiffs' motion.

[3]  The camper in question is the newer vehicle on the left. The other camper belongs to another individual not involved in this case. Doc. 68-3 at 5.

characterization is technically true, in the sense that "few" means "made up of a small number *Few*, WEBSTERS (Second ed. 1988) and "several" "more than two or three but less than many" *Several*, WEBSTERS (Second ed. 1988). Defendants assign a number: forty feet from the camper to the well. Docs. 68 at 16, 70 at 15.

At the summary judgment stage, clear video evidence in the record can resolve factual disputes. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Summary judgment requires that there be no genuine disputes of material facts, not simply some dispute. *Id.* at 380. What the three videos of the incident make clear is that neither Bensman nor Sandoval came any closer than the large pile of dirt on the far side of the well. Docs. 72-2, 72-3, 72-5.

But this dispute is not material. There are four factors that determine whether an area falls within the curtilage of a home: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 301 (1987). These factors combine to determine "whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection." *Id.*

The proximity of Defendants Bensman and Sandoval to the camper receives the bulk of the dispute between the parties. The evidence shows that the well site is approximately twenty feet from the camper. Doc. 72-2. Both where Defendants parked and where they subsequently walked is on the far side of the well site, another 20 feet away. Doc. 72-5. This distance is beyond what typically can raise an inference that it is within the curtilage. *See*, *e.g.*, *Dunn* (50-60 yards yields no inference, *U.S. v.*

*Bell*, 191 F.App'x 663, 668 (10th Cir. 2006) (50 feet); *U.S. v. Brady*, 993 F.2d 177, 178-79 (9th Cir. 1993)(45 feet); *U.S. v. Jackson*, 728 F.3d 367, 374 (4th Cir. 2013) (grass strip beyond patio and "at least 20 feet" from backdoor in apartment complex with shared sidewalks, not in curtilage); *U.S. v. Wilburn*, 2012 WL 1658697, at *2-3 (E.D. Ky. Mar. 5, 2012) (propane tank 20-30 feet away from trailer wasn't within curtilage). Determining a precise distance isn't necessary for this determination. Bensman and Sandoval never approached the camper and remained close to the well site, a construction area not particularly close to the home nor intimately tied to it.

Both parties note that there is no fencing around Plaintiffs' camper. Plaintiffs demure that the lack of fencing around the well site is not relevant because the complete lack of fencing around the camper or property as a whole. Doc. 99 at 9-10.[4] This is not so. The point of the *Dunn* factors is to suss out "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life" *Rieck v. Jensen*, 651 F.3d 1188, 1193 (10th Cir. 2011) (citations omitted). The lack of a fence is indicative of how the Plaintiffs viewed the surroundings of their camper, namely as a place to park their camper when occupying the land rather than a more permanent establishment. Even a fully enclosing fence is not dispositive: the 10th Circuit notes that visibility from above affects the expectation of privacy of a fenced in yard. *Hatfield*, 333 F.3d at 1196.

Emphasizing the use of the well site, Plaintiffs make the most of the importance of getting water from a well. But while important, that is hardly a private activity. Plaintiffs ran a long hose from the well to their camper. Doc. 72-2. Whatever image of filling up a pastoral bucket to

---

[4]    Plaintiffs raise this argument in their responses rather than their motion for summary judgment.

bring back to the homestead this situation might conjure, the well itself appears to be intentionally separated from the camper. The well site where Bensman and Sandoval walked was not used for intimate activities of the home. *See Rieck*, 651 F.3d at 1193.

The final factor is what steps Plaintiffs took to protect the well site from observation by passersby. They note that the well and pump are below ground and 258 feet away from the nearest public roadway. While relevant, the distance from the road does not establish privacy. The Defendants drove across an open field to approach the well site. Plaintiffs attempt to import the law of trespass into this calculation. Doc. 72 at 8. I have some sympathy, but the very point of the open fields doctrine is that it is not governed by the rules of trespass. *Dunn* upheld the actions of two officers who trespassed on private property to look into a barn. 480 U.S. at 297. *Fullbright v. United States* did the same, finding that officers observation of an illegal distilling operation in a shed from an open field was not a search covered by the Fourth Amendment. 392 F.2d at 433-34 (10th Cir. 1968). Ultimately, the 10th Circuit does not consider whether government officials were trespassing in its Fourth Amendment analysis. *Hatfield*, 333 F.3d at 1198-99.

What remains is a situation quite similar to *Hatfield*. Bensman and Sandoval were standing in an open field, observing a well site that was either itself in an open field or within plain view of it. Though Plaintiffs argue that observation from an open field is different than a search of effects found within them, that is not an accurate characterization of what happened here. The underlying facts are not in material dispute, and when considered under the *Dunn* factors, they show that the Defendants did not encroach into the curtilage of the Plaintiffs' home. *See Rieck v. Jensen*, 94 F.4th at 1193. Defendants committed no unconstitutional search.

## II.  Qualified Immunity

Qualified immunity shields state officials from money damages un-less "a plaintiff pleads facts showing (1) that the official violated a stat-utory or constitutional right, and (2) that the right was "clearly estab-lished" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (2009)). Courts have the discretion to decide which of the two prongs to address first. *Id.* Failure to meet either prong is fatal to a plaintiff's claim. The constitutional violation must be stated at a sufficient level of particular-ity "that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

Plaintiffs argue that "the protection against unreasonable searches is certainly 'clearly established.'" Doc 72 at 17. This is of course true (it's the very language of the Fourth Amendment, after all) but is just the sort of high-level assertion that *Saucier* warns is inadequate. A plaintiff must find "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts" in light of the particular context rather than as a broad proposition. *Lowther v. Children Youth and Family Dep't.*, 101 F.4th 742, 756 (10th Cir. 2024) (citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015)). There is no clearly established right not to have government officials look at a construction site located somewhat close to a residence. Defendants Bensman and Sandoval could not have been on notice that their actions were unconstitutional even if there was a violation. Both have qualified immunity against these claims.

### III. Failure to Train

Plaintiffs argue that Sam Jensen and the County failed to adequately train Bensman and Sandoval about the County's written code enforcement policy. They now concede that Jensen was uninvolved. Docs. 97 at 2 ¶4, 97 at 1-2. Without any genuine allegations that Sam Jensen was anything more than a government employee in the same department as the other defendants, he cannot be liable.

A local government may not be sued solely on the basis of injury inflicted by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978). It is only when the injury results from official policy that the government entity is liable. *Id*. Inadequacy of training may be the basis for § 1983 liability if municipal "policy or custom is the moving force behind the constitutional violation." And the failure to train amounts to deliberate indifference to the rights of those the officials come into contact with. *City of Candon v. Harris*, 489 U.S. 378, 388-89 (1989) (internal quotations omitted). Plaintiffs' *Monell* claim suffers a fatal flaws: there is no underlying violation.

A *Monell* violation requires an underlying constitutional violation. *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993). None exists here, as explained above. Even if there were, governments are not liable for the actions of their employees solely on the basis of respondeat superior, only when a constitutional violation arises from governmental custom. *Monell*, 436 U.S 691. There are no allegations that the County's written policies are unconstitutional.

Plaintiffs allege that the County's written code enforcement policy required Bensman and Sandoval to obtain an administrative warrant to enter property where they have been denied access. Doc. 72 at 16. This is not quite so. The policy tracks 10th Circuit jurisprudence that the law of trespass does not define the limits of Fourth Amendment searches.

Doc. 20-2 at 10-11. Plaintiffs argue that Bensman was quite unlikely to have been told to violate this policy. Doc. 72 at 16. The policy does not expressly lay out the County's approach to the open fields doctrine, but this is not enough to establish *Monell* liability. Defendants Bensman and Sandoval acted both constitutionally and within the scope of County policy.

## IV. Motion to Strike Sham Affidavits

Defendants move to strike portions of the declarations that both Plaintiffs submitted as exhibits to their motion for summary judgment. Doc. 102. Defendants contend these declarations, Docs. 72-1 and 72-2, are at odds with Plaintiffs' sworn depositions and video evidence and are not based on personal knowledge. These assertions were made, Defendant argue, to create sham issues of fact to undermine the Defendants' motions for summary judgment. The Tenth Circuit "take[s] a dim view of substantive alteration of deposition testimony." *BancFirst ex rel. Est. of M.J.H. v. Ford Motor Co.*, 422 F. App'x 663, 666 (10th Cir. 2011) (internal citation omitted). It permits "disregard[ing] a contrary affidavit if it constitutes an attempt to create a sham fact issue." *Gabaldon v. New Mexico State Police*, 139 F.4th 1207, 1211 (10th Cir. 2025) (internal citations omitted); *Franks v. Nimmo*, 796 F.2d 1230 at 1237 (10th Cir. 1986) (internal citations omitted) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."). It "employ[s] a three-part test to determine whether an affidavit creates a sham fact issue": "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony

reflects confusion which the affidavit attempts to explain." Gabaldon, 139 F.4th at 1211 (internal citation omitted).

The bulk of objected-to claims in the declarations concern the distance of the well site from the camper, the Defendants' parking location from the well site, and where Defendants walked. And most of what is really objected to are characterizations, such as whether the camper was located "several feet from the excavated water well site" or whether Sandoval and Bensman "approached within a few feet of the excavated water well site." Doc. 102 at 3. These are not material factual disputes relevant to whether a constitutional violation occurred. The well site is not within the curtilage of the camper, as discussed above. The remainder of the factual discrepancies, such as dates, are sloppy, but again not relevant to the actual dispute. Each party submitted identical video evidence as part of their motions for summary judgment, and this can be used to resolve claims made in affidavits. *Scott v. Harris* at 380-81 (2007). Whether the characterizations made in the declarations are accurate or not does not affect the outcome of the motions. Some of the more fine-grained, nitpicky arguments over the definition of "few" and "couple" do not need to be resolved for the disposition of this case.

## CONCLUSION

It is ORDERED that:

The Defendants' MOTIONS FOR SUMMARY JUDGMENT (Docs. 68, 70, 74) are GRANTED;

The Plaintiffs' MOTION FOR SUMMARY JUDGMENT (Doc. 72) is DENIED; and

The Defendants' MOTION TO STRIKE SHAM DECLARATIONS (Doc. 102) is DENIED AS MOOT.

DATED: March 25, 2026          BY THE COURT:

_____

Daniel D. Domenico
Chief United States District Judge

- 11 -